1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                         NORTHERN DISTRICT OF CALIFORNIA

10                                  SAN JOSE DIVISION

11

12   WILLIAM PHILIPS et al.,                  Case No. 14-CV-02989-LHK

13                  Plaintiffs,               **ORDER GRANTING IN PART AND
                                              DENYING IN PART MOTION TO**
14         v.                                 **DISMISS**

15   FORD MOTOR COMPANY,

16                  Defendant.

17

18         Plaintiffs William Philips ("Philips"), Jaime Goodman ("Goodman"), Allison Colburn and

19   her son Ian Colburn (collectively, "California Plaintiffs") have brought a putative class action

20   lawsuit against defendant Ford Motor Company ("Ford"), a Delaware corporation with its

21   principal place of business in Dearborn, Michigan.  ECF No. 55, Second Amended Complaint

22   ("SAC") ¶¶ 1, 32-56.  Before the Court is Ford's Motion to Dismiss the SAC's California claims.[1]

23

24         [1] In addition to California Plaintiffs, the SAC includes the same non-California Plaintiffs
     from the First Amended Complaint ("FAC"): Jason Wilkinson, Robert Morris, Victoria Jackson,
25   Johnpaul Fournier, and Ryan and Rebecca Wolf (together, with California Plaintiffs, "Plaintiffs").
     *See* SAC ¶¶ 189-219.  In light of the fact that the 108-page FAC contained fifty-one causes of
26   action, including nationwide class claims and class claims brought under the specific laws of six
     different states, the Court decided to proceed by addressing the California claims first.  *See* ECF
27

28
     Case No. 14-CV-02989-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1    ECF No. 58 ("Mot.").  California Plaintiffs have opposed the motion, ECF No. 63 ("Opp."), and

2    Ford has replied, ECF No. 67 ("Reply").

3        The Court finds this matter suitable for decision without oral argument under Civil Local

4    Rule 7-1(b) and hereby VACATES the motion hearing set for July 9, 2015, at 1:30 p.m.  The case

5    management conference scheduled for that date and time remains as set.  Having considered the

6    submissions of the parties, the relevant law, and the record in this case, the Court hereby

7    GRANTS IN PART and DENIES IN PART Ford's Motion to Dismiss.

8    **I.     BACKGROUND**

9    **A. Factual Allegations**

10       California Plaintiffs are individuals seeking to represent a class of statewide consumers

11   who purchased or leased Ford Fusion vehicles, model years 2010 through 2014, or Ford Focus

12   vehicles, model years 2012 through 2014 (the "Vehicles"),[2] which California Plaintiffs allege are

13   equipped with a defective Electronic Power Assisted Steering ("EPAS") system.  SAC ¶ 1.  The

14   following chart summarizes California Plaintiffs' alleged purchasing information:

United States District Court
Northern District of California

| Plaintiff | Vehicle | Site of Purchase | Date of Purchase |
|---|---|---|---|
| Philips | 2011 Ford Fusion (used) | Salinas Valley Ford (California) | March 2012 |
| Goodman | 2011 Ford Fusion (new) | Future Ford of Clovis (California) | October 13, 2010 |
| Allison Colburn[3] | 2010 Ford Fusion (new) | Galpin Ford (California) | January 12, 2010 |

*Id.* ¶¶ 32-54.

No. 46; ECF No. 54 at 6, 9, 11-12, 37.  To that end, the parties stipulated that "[a]lthough the SAC may contain both California and non-California claims," Ford's second motion to dismiss "shall address only Plaintiffs' California claims."  ECF No. 51.  Accordingly, the Court's order is limited to the four causes of action brought by California Plaintiffs in the SAC.

[2] The SAC specifies further that the "Vehicles include the following models: 2010-2014 Ford Fusion; 2010-2014 Ford Fusion Hybrid; 2013-2014 Ford Fusion Energi; 2012-2014 Ford Focus; and 2012-2014 Ford Focus Electric."  SAC ¶ 69.

[3] There is no allegation that Ian Colburn, Allison Colburn's son, purchased any of the Vehicles.  *See* SAC ¶¶ 51-54.  Rather, Ian Colburn was gifted the 2010 Ford Fusion by his mother.  *Id.* ¶ 51.

2

Case No. 14-CV-02989-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1    Power steering systems supplement the torque that the driver applies to the steering wheel,

2    thus making it easier for the driver to turn the wheel.  SAC ¶ 76.  Ford's EPAS system replaces the

3    traditional hydraulic-assist power steering pump and is comprised of a power steering control

4    motor, electronic control unit, torque sensor, and steering wheel position sensor.  *Id.* ¶ 2.

5    California Plaintiffs allege, however, that Ford's EPAS system suffers from a "systemic defect"

6    that "renders the system prone to sudden and premature failure during ordinary and foreseeable

7    driving situations."  *Id.*  This defect, California Plaintiffs claim, causes drivers of the Vehicles to

8    "experience significantly increased steering effort and an increased risk of losing control of their

9    vehicles when the EPAS system fails" and "defaults to manual steering."  *Id.* ¶¶ 3, 101.

10    In support of this claim, California Plaintiffs rely on three categories of evidence: (1) their

11    own alleged experiences with EPAS failure, SAC ¶¶ 36, 43, 53; (2) the National Highway Traffic

12    Safety Administration's ("NHTSA") investigation into the EPAS system of the Ford Explorer, a

13    vehicle not at issue in this putative class action, *id.* ¶¶ 82-103; and (3) complaints to the NHTSA

14    by Ford owners about power steering failures in the Vehicles, *id.* ¶¶ 104-32.

15    As to the first category, California Plaintiffs allege that the EPAS system in each of their

16    Vehicles[4] has failed.  None of them, however, alleges that any accident has taken place or that they

17    have suffered any physical injury or any property damage as a result of an EPAS failure.

18    Specifically, Philips says he "reviewed Ford's promotional materials and other information," and

19    that he "would not have purchased his 2011 Ford Fusion, or would not have paid the purchase

20    price charged," if he had known of "the EPAS system defects and failures."  SAC ¶ 34.  Philips

21    also says he experienced "intermittent problems with the steering system in his Fusion," which

22    caused "difficulty steering."  *Id.* ¶ 36.  After lodging multiple complaints with Ford, Philips

23    alleges he "was told that it would cost approximately $2,000 to fix the problem."  *Id.*  According

24    to Philips, "Ford offered to pay 50%."  *Id.*

25    Goodman, on the other hand, claims that prior to "purchasing her 2011 Ford Fusion," she

26

27    _____

[4] California Plaintiffs do not allege that any of them purchased a Ford Focus.

28

Case No. 14-CV-02989-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

"(a) viewed television advertisements concerning the vehicles; (b) viewed material concerning the Fusion on Ford's website; (c) reviewed the window sticker on the vehicle she would purchase; and (d) received and reviewed a brochure concerning the Fusion." *Id.* ¶ 40. "The window sticker," Goodman says, "indicated that the vehicle she would purchase was equipped with power steering." *Id.* "Nowhere in these materials did Ford disclose the EPAS system defects and failures," and had Ford done so, Goodman alleges she "would not have purchased her 2011 Ford Fusion, or would not have paid the purchase price charged." *Id.* ¶¶ 40-41. In addition, Goodman claims that "in 2014" she "began having intermittent problems with the steering system in her 2011 Ford Fusion and experienced difficulty steering." *Id.* ¶ 43. "The problems first occurred at low speeds," Goodman says, "when the steering would lock up while she was attempting to park." *Id.* After one attempt at repair, Goodman alleges that she experienced steering difficulties "while she was driving on the road, not just parking." *Id.* Ultimately, Goodman "took the vehicle to a Ford dealership and was told that it would cost $1,800 to fix the problem with the steering system." *Id.*

Prior to "purchasing her 2010 Ford Fusion," Allison Colburn claims that, just like Goodman, she "(a) viewed television advertisements concerning the vehicles; (b) viewed material concerning the Fusion on Ford's website; (c) reviewed the window sticker on the vehicle she would purchase; and (d) received and reviewed a brochure concerning the Fusion," and that "[t]he window sticker indicated that the vehicle she would purchase was equipped with power steering." SAC ¶ 47. Unlike Goodman, however, Allison Colburn alleges that the brochure she read "contained the same 'Drive smart' heading featured in the 'Technology Fact Sheets' available on Ford's website." *Id.* "Nowhere in these materials did Ford disclose the EPAS system defects and failures," and had Ford done so, Allison Colburn alleges she "would not have purchased her 2010 Ford Fusion, or would not have paid the purchase price charged." *Id.* ¶¶ 47-48. Notably, Allison Colburn does not allege she experienced any power steering failures. Instead, her son Ian Colburn alleges that "in October 2014," after his mother had given him the car, "the power steering in the

4

1    2010 Ford Fusion failed." *Id.* ¶¶ 51, 53.  The Ford dealership in San Diego where Ian Colburn

2    took the car for repairs "initially quoted the repair price as $1,756.95, but reduced the price to

3    $990.19." *Id.* ¶ 54.  Allison Colburn says she paid the $990.19 to fix the power steering.  *Id.*

4         As to the second category of evidence, California Plaintiffs emphasize documents

5    produced in connection with the NHTSA's Ford Explorer investigation, which began on June 19,

6    2012.  SAC ¶ 83.  In response to the NHTSA's request for information, Ford "produced a database

7    containing 1,173 complaints" regarding loss of power steering, nine of which allegedly described

8    "incidents that resulted in a crash." *Id.* ¶ 89.  Ford also produced various internal e-mails which,

9    California Plaintiffs allege, reveal that the Vehicles suffer from the same EPAS system defect as

10   the Ford Explorer and that Ford knew about the defect yet never disclosed it to the public or

11   otherwise took corrective action.  *Id.* ¶¶ 90-98.  According to California Plaintiffs, the NHTSA

12   investigation found "fifteen accidents that were caused by a loss of power steering in the

13   Explorer." *Id.* ¶ 99.  However, the NHTSA's Office of Defects Investigation ("ODI"), which

14   published a resume closing the Ford Explorer investigation, was more circumspect: "ODI

15   identified 15 crashes with evidence indicating loss of power steering assist *may* have been a

16   factor." ECF No. 22-4 ("ODI Resume") at 2 (emphasis added).[5]  "All 15 crashes," the ODI

17   Resume continued, "involved low-speed impacts . . . resulting in minor vehicle damage or no

18   damage," with only one reported incident of "minor injuries to the driver that did not require

19   medical treatment." *Id.*

20        As to the third category, California Plaintiffs provide a litany of testimonials by other Ford

21

22   _____

23        [5] The Court GRANTS Ford's Request for Judicial Notice of the ODI Resume closing the
     NHTSA's investigation into the Ford Explorer's EPAS system.  ECF No. 22-3.  Because the SAC
24   "necessarily relies" on this document, and because California Plaintiffs do not contest the
     document's authenticity or relevance, the Court considers it an appropriate subject for judicial
25   notice under "the doctrine of incorporation by reference."  *Coto Settlement v. Eisenberg*, 593 F.3d
     1031, 1038 (9th Cir. 2010); *see also In re Toyota Motor Corp. Hybrid Brake Mktg., Sales,
26   Practices & Prods. Liab. Litig.*, 890 F. Supp. 2d 1210, 1216 n.2 (C.D. Cal. 2011) (taking judicial
     notice of the "NHTSA's ODI resume closing its investigation into Model Year 2010 Prius braking
27   performance").

28   Case No. 14-CV-02989-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

owners complaining to the NHTSA about alleged power steering failures in the Vehicles.  SAC

¶¶ 104-32.  The two dozen complaints California Plaintiffs detail in the SAC are, California

Plaintiffs allege, a mere sampling of the hundreds of complaints the NHTSA has received

concerning EPAS failures in the Vehicles.  *See id.* ¶ 104.  Only two of the examples cited by

California Plaintiffs, however, involved accidents:

> On December 11, 2012, a vehicle owner reported a crash in a 2010 Ford Fusion.
> The Defective Vehicle lost power steering, traction control, and the ability to brake
> upon entering a freeway on ramp.  To stop the vehicle and avoid endangering other
> drivers, the driver was "forced to crash into the concrete wall barrier on the driver's
> side of the ramp."  The driver and one other individual were injured.

> . . . .

> On October 3, 2012, a vehicle owner reported a crash in a 2011 Ford Fusion.  The
> steering wheel seized while the owner was driving at 35 MPH, causing her to crash
> into a curb.  After the initial accident, the steering of the vehicle continued to fail.
> The vehicle was taken to a Ford dealer three times, and the dealer refused to help
> her because the failure could not be replicated.  The vehicle owner notified Ford
> but Ford was unwilling to offer assistance.

*Id.* ¶¶ 110, 112.  The most recent power steering failure cited by California Plaintiffs, mentioned

for the first time in the SAC, took place on March 10, 2015, "very nearly" led to a collision, and

left the driver "quite shaken."  *Id.* ¶ 132.

Based on this evidence, California Plaintiffs allege that Ford fraudulently concealed[6] the

claimed power steering defect: "Ford actively concealed, failed to disclose, and continues to fail to

disclose to consumers of the Defective Vehicles that the uniformly designed EPAS system in the

Defective Vehicles is prone to premature failure during ordinary and foreseeable driving

situations."  SAC ¶ 4.  Despite press releases and web-based "promotional materials" touting

"EPAS as a reliable and beneficial product," Ford, according to California Plaintiffs, knew "as

early as 2010" that the EPAS system was "prone to sudden, premature failure," and yet took no

---

[6] California Plaintiffs no longer allege fraud based on a theory of misrepresentation.  *See*
ECF No. 15 ("FAC") ¶¶ 7-8.  California Plaintiffs instead rely solely on a theory of fraud by
"omission[]," which they also call "fraudulent concealment."  SAC ¶¶ 5, 35.

Case No. 14-CV-02989-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1    remedial action.  *Id.* ¶ 11.  "Ford's omissions," California Plaintiffs say, "are material to

2    consumers because of the significant safety concerns presented as a result of the system's defects

3    and premature failures."  *Id.* ¶ 5.  According to California Plaintiffs, "Ford's failure to disclose to

4    consumers and the public at large the material fact that the EPAS system is prone to premature

5    failure . . . recklessly risked the safety of occupants of the Defective Vehicles and the public at

6    large."  *Id.* ¶ 6.

7         In May 2011, and again in December 2012, Ford allegedly issued technical service

8    bulletins indicating Ford's awareness of EPAS system failures in the Vehicles.  SAC ¶¶ 13 (2012

9    Ford Focus), 19 (2013 Ford Fusion).  California Plaintiffs claim that "Ford concealed the fact that

10   the EPAS system is prone to sudden and premature failure from consumers so that the warranty

11   period on the Defective Vehicles would expire before consumers become aware of the problem."

12   *Id.* ¶ 24.[7]  Had Ford disclosed the alleged defect, California Plaintiffs say they "would not have

13   purchased . . . those vehicles, or would have paid substantially less for the vehicles than they did."

14   *Id.* ¶ 25.

15   **B.  Procedural History**

16        On June 27, 2014, Plaintiffs filed their initial Complaint in federal court.  ECF No. 1.  The

17   Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), is the asserted basis for this Court's

18   subject matter jurisdiction.  SAC ¶ 28.

19        On September 8, 2014, Plaintiffs filed their FAC containing fifty-one causes of action,

20   including forty-nine claims specific to the laws of six states (California, Ohio, Michigan, Georgia,

21   Illinois, and Arizona) and two nationwide claims based on the laws of forty-four additional states.

22

23        [7] The Vehicles were all covered by an express New Vehicle Limited Warranty ("NVLW"),
     which Ford has filed with the Court.  *See* ECF No. 22-2 (containing Ford's NVLWs for 2010,
24   2011, 2012, and 2013).  Because the SAC "necessarily relies" on these documents, and because
     California Plaintiffs do not contest the documents' authenticity or relevance, the Court considers
25   them an appropriate subject for judicial notice under "the doctrine of incorporation by reference."
     *Coto Settlement*, 593 F.3d at 1038; *see Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 850 n.1
26   (N.D. Cal. 2012).  The NVLW covered the Vehicles for the first three years or 36,000 miles
27   driven, whichever came first.  *See, e.g.*, ECF No. 22-2 at 14.

28

Case No. 14-CV-02989-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

*See* FAC ¶¶ 145-645.  On October 24, 2014, Ford moved to dismiss the FAC.  ECF No. 22.

Concurrently with that motion, Ford filed a Request for Judicial Notice, ECF No. 22-3, which the

Court has granted, *see supra* note 5.  Plaintiffs opposed the motion on December 16, 2014, ECF

No. 35, and Ford replied on January 16, 2015, ECF No. 36.  At a hearing held on February 12,

2015, the Court granted Ford's Motion to Dismiss with leave to amend.  ECF Nos. 46, 48.

In light of the unwieldy nature of the FAC, the parties stipulated at a February 18, 2015

case management conference to proceed with the California claims only for Ford's second round

Motion to Dismiss.  ECF No. 51.  If any of the California claims survived the second round

Motion to Dismiss, the parties would continue to litigate those claims to resolution before this

Court.  ECF No. 54 at 9.  If, however, none of the California claims survived, then the Court

would confer with the parties regarding how to proceed with the non-California claims, including

possibly transferring the case to a more appropriate jurisdiction.  *Id.*

With that understanding, California Plaintiffs filed the SAC on March 27, 2015.  The SAC

asserts four causes of action under California law: (1) violation of the unlawful and unfair prongs

of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, SAC ¶¶ 141-49;

(2) violation of the fraudulent prong of the UCL, *id.* ¶¶ 150-59; (3) violation of the Consumer

Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, *id.* ¶¶ 160-71; and (4) common law

fraudulent concealment, *id.* ¶¶ 172-85.  Notably, California Plaintiffs have abandoned their claims

under the False Advertising Law ("FAL"), Cal. Civil Code § 17500, *et seq.*, and Song-Beverly

Consumer Warranty Act, Cal. Civ. Code § 1790 *et seq.*  *See* FAC ¶¶ 181-220.

In the SAC, California Plaintiffs seek to represent the following statewide class of

consumers:

> All current and former owners and lessees of a Defective Vehicle (as defined
> herein) in California

SAC ¶ 133.  Excluded from the class definitions are, inter alia, "any individuals who experienced

physical injuries as a result of the defects at issue in this litigation."  *Id.* ¶ 134.

8

1     On April 30, 2015, Ford filed the instant Motion to Dismiss.  Mot. at 26.  Pursuant to a

2  stipulation approved by the Court, *see* ECF No. 60, California Plaintiffs opposed the motion on

3  May 28, 2015, Opp. at 26.  Ford replied on June 15, 2015.  Reply at 16.

4  **II.      LEGAL STANDARDS**

5         **A.  Rule 12(b)(6) Motion to Dismiss**

6         Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a

7  short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint

8  that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  Rule 8(a) requires a

9  plaintiff to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl.*

10  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff

11  pleads factual content that allows the court to draw the reasonable inference that the defendant is

12  liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility

13  standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a

14  defendant has acted unlawfully."  *Id.* (internal quotation marks omitted).  For purposes of ruling

15  on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and

16  construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St.*

17  *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

18        The Court, however, need not accept as true allegations contradicted by judicially

19  noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look

20  beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6)

21  motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir.

22  1995).  Nor must the Court "assume the truth of legal conclusions merely because they are cast in

23  the form of factual allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per

24  curiam) (internal quotation marks omitted).  Mere "conclusory allegations of law and unwarranted

25  inferences are insufficient to defeat a motion to dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183

26  (9th Cir. 2004).

27

28

Case No. 14-CV-02989-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

### B. Rule 9(b) Pleading Requirements

Claims sounding in fraud are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks omitted); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." (internal quotation marks omitted)). The plaintiff must also set forth "what is false or misleading about a statement, and why it is false." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks omitted).

## III. DISCUSSION

Ford offers several bases in support of its Motion to Dismiss. First, Ford argues that California Plaintiffs have waived or abandoned various claims. Mot. at 7-9. Second, Ford contends that California Plaintiffs' claims are barred by the applicable statutes of limitations. *Id.* at 9-10. Third, Ford says that California Plaintiffs have failed to adequately plead their fraud-based claims. *Id.* at 11-21. Fourth, Ford argues that California Plaintiffs' CLRA claims must fail because they have failed to allege a "transaction" under the meaning of the statute. *Id.* at 21-23. Fifth, Ford contends that California Plaintiffs' equitable claims—i.e., UCL claims and CLRA claims for injunctive relief—must be dismissed because California Plaintiffs have an adequate remedy at law. *Id.* at 23-24. Finally, Ford asks the Court to strike references to "nationwide" claims from the SAC. *Id.* at 25. For the reasons stated below, the Court GRANTS IN PART and

United States District Court
Northern District of California

1    DENIES IN PART Ford's Motion to Dismiss.

2        **A.  Waived or Abandoned Claims**

3        Ford first argues that California Plaintiffs have waived their warranty and FAL claims by

4    failing to replead these claims in the SAC.  Mot. at 7.  The Court agrees.  The warranty and FAL

5    claims were dismissed with leave to amend, and California Plaintiffs have waived the claims by

6    failing to replead them.  *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) ("For

7    claims dismissed with prejudice and without leave to amend, we will not require that they be

8    repled in a subsequent amended complaint to preserve them for appeal.  But for any claims

9    voluntarily dismissed, we will consider those claims to be waived if not repled.").  Accordingly,

10   California Plaintiffs are precluded from reasserting California warranty or FAL claims against

11   Ford.

12       **B.  Standing to Assert Claims for Vehicles Not Purchased**

13       Ford argues that California Plaintiffs lack standing to assert claims based on Vehicles that

14   California Plaintiffs did not purchase—i.e., the 2012-2014 Ford Fusion; 2010-2014 Ford Fusion

15   Hybrid; 2013-2014 Ford Fusion Energi; 2012-2014 Ford Focus; and 2012-2014 Ford Focus

16   Electric.  Specifically, Ford argues that California Plaintiffs fail to adequately allege facts showing

17   substantial similarity between the EPAS systems in the 2010-11 Ford Fusions and those in the

18   other Vehicles.  Mot. at 7-8.  For the reasons stated below, the Court finds that California

19   Plaintiffs have adequately pleaded standing to assert claims against products they did not

20   personally purchase.[8]

21       Article III of the U.S. Constitution requires that a plaintiff plead and prove he or she has

22   suffered sufficient injury to satisfy the "case and controversy" requirement.  *See Clapper v.*

23   *Amnesty Int'l*, 133 S. Ct. 1138, 1146 (2013) ("One element of the case-or-controversy requirement

24   is that plaintiffs 'must establish that they have standing to sue.'" (quoting *Raines v. Byrd*, 521 U.S.

25   _____

26       [8] The Court's ruling is without prejudice to Ford later moving to dismiss for lack of
     standing should a sufficient factual record be developed showing that the products are not
27   substantially similar.

28

11

Case No. 14-CV-02989-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

811, 818 (1997))).  The U.S. Supreme Court has further clarified that standing means a plaintiff must plead and prove (1) injury-in-fact that is concrete and particularized, as well as actual or imminent; (2) that this injury is fairly traceable to the challenged action of the defendant; and (3) that this injury is redressable by a favorable ruling from the court.  *Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2752 (2010).

In food misbranding cases, courts in this district have held that "a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are *substantially similar*."  *E.g.*, *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012) (emphasis added).  In this particular case, the Court finds that California Plaintiffs have adequately alleged that the supposedly defective EPAS system is substantially similar across the Vehicles.  California Plaintiffs cite evidence in the form of internal communications between Ford employees where the power steering systems in different vehicles were commonly referred to as "the EPAS," without any indication that the EPAS system varied across vehicles.  SAC ¶¶ 14-15.  Specifically, a Product Development Engineer wrote that she "[t]alked to the tech below and this loss of assist [in the Explorer] would always occur in low speed parking lot maneuvers similar to the Focus issue."  *Id.* ¶ 14.  Later, an EPAS Steering Engineering employee wrote "Can you tell if the EPAS ribbon cable concern of the Fusion is linked to the Explorer[?]  This concern I believe was resolved at the end of Nov. 2011 for the Fusion vehicle line."  *Id.* ¶ 15.  Plaintiffs contend that these emails show that Ford equated the Focus's EPAS system to the Ford Explorer EPAS system, and the Fusion's EPAS system to the Explorer EPAS system.  At the motion to dismiss stage, the Court must "construe the pleadings in the light most favorable to the nonmoving party."  *Manzarek*, 519 F.3d at 1031.

Moreover, California Plaintiffs allege repeatedly that the EPAS systems in all the vehicles are "uniform," *id.* ¶¶ 1, 4, 21-22, 69, 186, and that the steering defect manifested in similar manners across different models of vehicles, *id.* ¶¶ 107-29.  As the Court must "accept factual

Case No. 14-CV-02989-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party" when ruling on a motion to dismiss, the Court finds these allegations sufficient in this case.  *Manzarek*, 519 F.3d at 1031.  In addition, California Plaintiff have only limited technical information available in the pre-discovery stage.  *See Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001) (holding that plaintiffs are not required to engage in hyper-technical inquiries during the pleading stage), *abrogated on other grounds as recognized by Nordstrom v. Ryan*, 762 F.3d 903 (9th Cir. 2014).  The Court therefore finds that these allegations sufficiently establish substantial similarity between the purchased and unpurchased products.  Accordingly, the Court DENIES Ford's Motion to Dismiss California Plaintiffs' claims as to the following models: 2012-2014 Ford Fusion; 2010-2014 Ford Fusion Hybrid; 2013-2014 Ford Fusion Energi; 2012-2014 Ford Focus; and 2012-2014 Ford Focus Electric.

**C. Statutes of Limitations**

Ford next moves to dismiss California Plaintiffs' claims based on the applicable statutes of limitations.  The UCL contains a statute of limitations that bars claims brought more than four years after the cause of action accrued.  *See* Cal. Bus. & Prof. Code § 17208.  The CLRA's limitations period is three years, *see* Cal. Civ. Code § 1783, as is common law fraud's, *see* Cal. Civ. Code § 338(d).  Because this action was brought in June 2014, and the limitations periods began to run when the California Plaintiffs purchased their vehicles, all UCL, CLRA, and fraudulent concealment claims asserted by California Plaintiffs would be barred except for Philips's claims and Goodman's UCL claim.  In the SAC, however, California Plaintiffs invoke the discovery rule, the doctrine of fraudulent concealment, and equitable estoppel in seeking to toll the limitations period for their claims.  SAC ¶¶ 57-67.  For the reasons stated below, the Court finds that California Plaintiffs' UCL, CLRA, and fraudulent concealment claims are not time-barred.

As an affirmative defense, the statute of limitations promotes diligent assertion of claims and ensures defendants "the opportunity to collect evidence while still fresh, and provide[s] repose

United States District Court
Northern District of California

1   and protection from dilatory suits once excess time has passed." *Aryeh v. Canon Bus. Solutions,*

2   *Inc.*, 292 P.3d 871, 875 (Cal. 2013).  Ordinarily, the statute of limitations runs from the occurrence

3   of the last element essential to a plaintiff's claim—i.e., the "last element" accrual rule.  *El Pollo*

4   *Loco, Inc. v. Hashim*, 316 F.3d 1032 (9th Cir. 2003) (internal citation omitted).  To align the

5   policy goals of the limitations defense with its actual application, courts and legislatures have over

6   time developed certain exceptions to the "last element" rule, including the discovery rule and the

7   doctrine of fraudulent concealment.  *Aryeh*, 292 P.3d at 875.  The discovery rule "postpones

8   accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of

9   action."  *Id.*  Meanwhile, the doctrine of fraudulent concealment "tolls the statute of limitations

10  where a defendant, through deceptive conduct, has caused a claim to grow stale."  *Id.*  The

11  California Supreme Court has held that claims under the UCL are "governed by common law

12  accrual rules," including the discovery rule.  *Id.* at 878; *see Plumlee v. Pfizer, Inc.*, No. 13-CV-

13  00414 LHK, 2014 WL 4275519, at *6 n.5 (N.D. Cal. Aug. 29, 2014).  The discovery rule also

14  applies to CLRA claims.  *See Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1131 (C.D.

15  Cal. 2010).  The doctrine of fraudulent concealment applies to claims under the UCL and the

16  CLRA.  *Id.*

17          Under the discovery rule, a claim accrues and the limitations period begins to run when a

18  plaintiff has information of "circumstances to put [him] on *inquiry* or if [he] ha[s] *the opportunity*

19  *to obtain knowledge* from sources open to [his] supervision."  *Fox v. Ethicon Endo-Surgery, Inc.*,

20  110 P.3d 914, 917 (Cal. 2005).  At that point, a plaintiff must conduct a reasonable investigation

21  about the cause of his injury and is subsequently charged with the presumptive knowledge of the

22  information that would have been revealed by such an investigation.  *Fox*, 110 P.3d at 920.  In

23  order to rebut this presumption and toll the statute of limitations through the discovery rule, a

24  plaintiff must plead facts showing (1) the "time and manner of discovery" and (2) the "inability to

25  have made earlier discovery despite reasonable diligence" in investigating.  *Id.* at 921.  The burden

26  is on the plaintiff to show diligence, and conclusory allegations will not withstand a motion to

27

28

Case No. 14-CV-02989-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1    dismiss. *Plumlee*, 2014 WL 4275519, at *8.  If the discovery rule is invoked, the statute of

2    limitations will be tolled until a reasonable investigation would have revealed the factual basis for

3    that cause of action.  *Fox*, 110 P.3d at 917.

4         Even though Ford is correct that UCL and CLRA claims in consumer cases generally

5    accrue on the date of purchase, California Plaintiffs here were not charged with a duty to

6    reasonably investigate until the alleged steering defect manifested in their vehicles.  *See Plumlee*,

7    2014 WL 4275519, at *7; *Fox*, 110 P.3d at 920 (plaintiffs are not charged with knowledge under

8    the discovery rule until "information of circumstances to put [them] on inquiry or if they have the

9    opportunity to obtain knowledge from sources open to [their] investigation." (citation omitted)).

10   Prior to that point, California Plaintiffs had no reason to suspect wrongdoing, and there was no

11   fact or circumstance to prompt an investigation.  Only when the defect manifested in their vehicles

12   in 2013 and 2014, *see* SAC ¶ 36 (defect in Philips' 2011 Ford Fusion manifested in "fall of

13   2013"); ¶ 43 (defect in Goodman's 2011 Ford Fusion manifested "in 2014"); ¶ 53 (defect in

14   Allison Colburn's 2010 Ford Fusion manifested "in October 2014"), were California Plaintiffs

15   charged with a duty to investigate and presumptive knowledge of the defect.  *Fox*, 110 P.3d at

16   920.  The statute of limitations began to run at that point.  *Id.*  California Plaintiffs, thus, timely

17   filed this action within the limitations periods.

18        Although Ford relies heavily on *Plumlee*, this reliance is misplaced because that case is

19   distinguishable from the instant one.  In *Plumlee*, the plaintiff bought a drug in 2005 and used it

20   for three years.  *Plumlee*, 2014 WL 4275519, at *7.  She then stopped using the drug due to its

21   failure to improve her condition.  *Id.* at *7.  At this point, the plaintiff was charged with a duty to

22   investigate and the statute of limitations began to run, since the lack of improvement in her

23   condition was the "circumstance[]" that should have caused a reasonable person to suspect

24   wrongdoing.  *Id.* at *6.  The plaintiff, however, waited for more than four years—beyond the

25   statute of limitations period under the UCL—before bringing her claim.  *Id.* at *7.  In attempting

26   to invoke the discovery rule, the plaintiff in *Plumlee* failed to plead facts showing that she was

27

28   
Case No. 14-CV-02989-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1    unable to discover the cause of her injury despite her reasonable diligence within those four years.

2    Therefore, the court held that Plumlee's UCL claim was time-barred.  *Id.*

3        Here, in contrast to *Plumlee*, California Plaintiffs' vehicles performed as expected up until

4    their cars' EPAS systems failed.  "Plaintiffs are required to conduct a reasonable investigation

5    *after* becoming aware of an injury," and not before.  *Fox*, 110 P.3d at 920.  Therefore, California

6    Plaintiffs need not allege facts showing diligence prior to the manifestation of the defect, as there

7    was no duty to investigate prior to that point.  Because the statutes of limitation did not begin to

8    run until 2013 and 2014, when the defect manifested, the action was timely filed within the

9    statutory periods provided for the UCL, CLRA, and fraudulent concealment claims.  The Court

10   therefore DENIES Ford's Motion to Dismiss California Plaintiffs' claims on statute of limitations

11   grounds.

12       **D.  Fraudulent Omission Claims**

13       As California Plaintiffs have now abandoned their affirmative misrepresentation claims,

14   the four claims in the SAC all concern fraudulent omissions regarding the EPAS system defect.

15   *See* SAC ¶¶ 144-45 (UCL unfair or unlawful prong); ¶ 154 (UCL fraudulent prong); ¶¶ 162, 164

16   (CLRA); ¶ 174 (fraudulent concealment claim).  Accordingly, the Court addresses the four claims

17   together as the "fraudulent omission" claims.

18       To state a valid claim for a fraudulent omission, California Plaintiffs must allege the

19   "omission of a fact the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co.*,

20   144 Cal. App. 4th 824, 835 (2006).  "California federal courts have generally interpreted

21   *Daugherty* as holding that '[a] manufacturer's duty to consumers is limited to its warranty

22   obligations absent either an affirmative misrepresentation or a safety issue.'"  *Wilson v. Hewlett-*

23   *Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (quoting *Oestreicher v. Alienware Corp.*, 322

24   F. App'x 489, 493 (9th Cir. 2009)).  In addition, "Plaintiffs must sufficiently allege that a

25   defendant was aware of a defect at the time of sale to survive a motion to dismiss." *Id.* at 1145.

26       Ford makes three arguments in support of its Motion to Dismiss the fraudulent omission

16

United States District Court
Northern District of California

claims: (1) California Plaintiffs fail to adequately allege Ford's knowledge of the EPAS system defect at the time of purchase; (2) Ford had no duty to disclose the EPAS system defect because it is not an unreasonable safety hazard; and (3) California Plaintiffs fail to adequately allege an omission.  Ford also argues (4) that Philips's claims "necessarily fail" because his allegations in the SAC are materially indistinguishable from his allegations in the FAC; and (5) that Plaintiff Ian Colburn's claims fail for lack of reliance or injury.  The Court addresses each argument in turn, and finds California Plaintiffs' (except for Ian Colburn's) allegations of fraudulent omission sufficient to survive a motion to dismiss for failure to state a claim.

### 1.  Ford's Knowledge

Ford's first argument is that California Plaintiffs fail to allege that Ford knew of the EPAS system defect when California Plaintiffs purchased their vehicles. Mot. at 11; *Wilson*, 668 F.3d at 1145 ("[P]laintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss.").  The first named plaintiff to purchase one of the Vehicles was Allison Colburn, who purchased her new 2010 Ford Fusion on January 12, 2010.  SAC ¶ 46. Goodman purchased her 2011 Ford Fusion on October 13, 2010.  *Id.* ¶ 38.  Philips purchased his 2011 Ford Fusion in March 2012.  *Id.* ¶ 33.  Accordingly, California Plaintiffs must allege Ford's knowledge prior to January 12, 2010.

California Plaintiffs cite several sources of information supporting their allegation that "Ford has outwardly maintained its commitment to the flawed EPAS system even though it has been aware that the EPAS system installed in the Defective Vehicles is prone to sudden, premature failure since *as early as 2010*."  *Id.* ¶¶ 11, 81 (emphasis added).  Specifically, California Plaintiffs rely on a May 2011 technical service bulletin ("TSB") stating that "[s]ome 2012 Focus vehicles equipped with electric power assisted steering (EPAS) . . . may exhibit a lack of power steering assist on vehicle start up."  SAC ¶ 13.  A second TSB was issued in December 2012, stating that "[s]ome 2013 Fusion vehicles built on or before 11/30/2012 may exhibit a loss of power steering assist."  *Id.* ¶ 19.  California Plaintiffs also cite internal communications among Ford employees,

United States District Court
Northern District of California

1    from June 6, 2011 and March 23, 2012.  *Id.* ¶¶ 14-16; 91-94.  California Plaintiffs further cite the

2    June 2012 NHTSA investigation into the Ford Explorer vehicles as evidence of Ford's knowledge

3    of EPAS system defects.  *Id.* ¶ 83.  Other internal Ford e-mails suggest Ford's awareness of the

4    Explorer issues in January 2011.  *Id.* ¶ 97.  Next, California Plaintiffs cite "hundreds of complaints

5    from owners and lessees about steering problems with the Fusion line."  *Id.* ¶¶ 17, 104-32.  Some

6    of these complaints are dated from 2010, but most are dated from 2012-2014.  *Id.*

7         Ford contends that these allegations are insufficient, especially to show Ford's knowledge

8    in January 2010, the time of Allison Colburn's purchase.  Mot. at 11-12.  Although the Court

9    agrees that California Plaintiffs have not proved Ford's knowledge, they need not do so at the

10   pleading stage.  Rather, California Plaintiffs need only have plausibly alleged that Ford knew

11   about the EPAS system defects "since as early as 2010."  SAC ¶ 11.  The Court finds that

12   California Plaintiffs have done so.

13        The May 2011 TSB, newly alleged in the SAC, is especially relevant.  As other courts

14   have recognized, it is reasonable to infer that "the TSBs . . . were proceeded by an accretion of

15   knowledge by Ford."  *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 958 (N.D. Cal.

16   2014); *see Falco v. Nissan N. Am., Inc.*, No. CV 13-00686 DDP (MANx), 2013 WL 5575065, at

17   *6-7 (C.D. Cal. Oct. 10, 2013) (stating that, where defendant issued the first of several TSBs in

18   July 2007 and further did a redesign in 2006 or 2007, that "permit[s] plausible inferences that

19   [defendant] was aware of the defect at the time they sold the vehicles in 2005 and 2006"); *see also*

20   *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1093 (N.D. Cal. 2014) (identifying "a

21   number of facts" that support plaintiffs' knowledge allegations, including internal data, NHTSA

22   complaints, and TSBs); *Decker v. Mazda Motor of Am., Inc.*, No. SACV 11-0873 AG MLGX,

23   2011 WL 5101705, at *5 (C.D. Cal. Oct. 24, 2011) (finding allegations of internal data and TSBs

24   issued within one of year of purchase sufficient to plead knowledge).  Furthermore, "[o]ne could

25   reasonably infer that the TSB was issued in response to consumer complaints that surfaced

26   immediately after rollout.  That there were such complaints is substantiated by the NHTSA

18

1    complaints identified by Plaintiffs."  *MyFord Touch*, 46 F. Supp. 3d at 958.  As the Court must

2    "accept factual allegations in the complaint as true and construe the pleadings in the light most

3    favorable to the nonmoving party," the Court finds these allegations sufficient at the motion to

4    dismiss stage.  *Manzarek*, 519 F.3d at 1031.

5            The cases cited by Ford are distinguishable.  For example, in *Wilson* the Ninth Circuit

6    rejected allegations of the defendant's knowledge where the plaintiff relied solely on customer

7    complaints, many of which were undated or post-dated the plaintiff's purchase.  *See Wilson*, 668

8    F.3d at 1148 ("Plaintiffs have submitted fourteen customer complaints, but the second amended

9    complaint does not indicate where or how the complaints were made (*e.g.*, via HP's website).

10   Twelve of those complaints are undated.  The two complaints that are dated were made over two

11   years after Plaintiffs purchased the Laptops."); *see also Williams v. Yamaha Motor Corp., U.S.A.*,

12   No. CV 13-05066 BRO, 2015 WL 2375906, at *10 (C.D. Cal. Apr. 29, 2015) (rejecting

13   knowledge allegations in part because plaintiffs "failed to allege even a single complaint that

14   predates the sale of any first-generation motor."); *Callaghan v. BMW of N. Am., LLC*, No. 13-CV-

15   04794-JD, 2014 WL 6629254, at *4 (N.D. Cal. Nov. 21, 2014) (rejecting knowledge based on

16   post-purchase customer complaints).  Other cases cited by Ford rejected the plaintiffs' allegations

17   of knowledge where the plaintiff did not allege knowledge that the defect caused a safety hazard.

18   *See, e.g.*, *Marchante v. Sony Corp. of Am.*, No. 10CV795 JLS RBB, 2011 WL 6027602, at *4

19   (S.D. Cal. Dec. 5, 2011) ("[A]ll of Plaintiffs allegations regarding Sony's knowledge of the

20   alleged defect pertain to Sony's knowledge that the defect causes excess heat that results in the

21   deterioration of the television display, not that the defect poses any safety hazard.").

22           Here, California Plaintiffs' allegations, which include internal testing, dated internal

23   communications, dated customer complaints, and dated TSBs, are sufficient to plausibly allege

24   that Ford had knowledge of the EPAS system defect at the time California Plaintiffs purchased

25   their vehicles.  Indeed, other courts have allowed plaintiffs to proceed past the motion to dismiss

26   on much thinner allegations.  *See, e.g.*, *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 998

27

28

Case No. 14-CV-02989-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1   (N.D. Cal. 2013) ("Plaintiffs claim that Defendants had non-public, internal data about the Class

2   Vehicles' headlamp problems, including 'pre-release testing data, early consumer complaints

3   about the defect to Defendants' dealers who are their agents for vehicle repairs, dealership repair

4   orders, testing conducted in response to those complaints, and other internal sources.'"").

5   Accordingly, the Court will not dismiss the fraudulent omission claims for failure to adequately

6   allege Ford's knowledge.

7           **2.  Ford's Duty to Disclose**

8           Ford's next argument is that Ford did not have a duty to disclose the EPAS system defect,

9   and therefore California Plaintiffs cannot state a fraudulent omission claim under *Daugherty*.  *See*

10  144 Cal. App. 4th at 835 (plaintiffs must allege the "omission of a fact the defendant was obliged

11  to disclose.").  California Plaintiffs argue that Ford was required to disclose the EPAS system

12  defect because the defect constituted a material safety hazard.  *Wilson*, 668 F.3d at 1141; *Smith v.*

13  *Ford Motor Co.*, 749 F.Supp.2d 980, 987–88 (N.D. Cal. 2010).  Ford argues that California

14  Plaintiffs' allegations fail because the risk of EPAS system failure is at most a "safety hazard" and

15  not an "*unreasonable* safety hazard."  Mot. at 19 (emphasis in original); Reply at 12.  Ford's

16  argument is unconvincing.  Whether the alleged defects are an unreasonable safety hazard is a

17  question of fact, and based on the allegations in the SAC, the Court cannot say that California

18  Plaintiffs' allegations in that regard are deficient as a matter of law.

19          In the SAC, California Plaintiffs allege that the EPAS system failure causes "increased risk

20  of losing control of their vehicles when the EPAS system fails."  SAC ¶ 3.  California Plaintiffs

21  also allege that "[w]hen the EPAS system fails while a Defective Vehicle is on the road and the

22  driver's ability to turn the vehicle is greatly reduced, occupants of the Defective Vehicles,

23  occupants of surrounding vehicles, and pedestrians are exposed to the risk of collisions and grave

24  bodily harm."  *Id.* ¶ 5.  The SAC continues in this vein:

25          101. The marked increase in the difficulty of steering that arises when the EPAS
           system fails and the steering system in the Defective Vehicles defaults to manual
26         steering creates an unreasonable safety risk (both in the Ford Explorer and in the
           Defective Vehicles).

27

28  Case No. 14-CV-02989-LHK
    ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1

2

3

102. Although failure of the EPAS system always compromises safety, this is particularly true when a vehicle is traveling at high speeds or on unlevel terrain. The sudden shock of needing to immediately exert great effort to control the vehicle makes the Defective Vehicles extremely susceptible to accidents when the EPAS system fails.

4

5

6

7

103. The danger created by sudden and unexpected failure of the EPAS system is clear from complaints reported to NHTSA about loss of control as a result of failure of the EPAS system.  Moreover, certain complaints made to NHTSA suggest that failure of the EPAS system also may disable the braking system.  One West Virginia owner reported that she rolled down a hill into a wooded area after the EPAS of her vehicle failed.  In addition to losing the ability to steer the vehicle, the braking system failed to engage and the owner "lost complete control of the vehicle."

8   SAC ¶¶ 101-03.  As California Plaintiffs' allegations explain, even if the EPAS only failed "in low

9   speed parking lot maneuvers," *id.* ¶ 14, such a failure could still amount to a material safety

10  hazard.

11          California Plaintiffs also tie the steering incidents they experienced to the EPAS system's

12  alleged defects.  *See, e.g.*, SAC ¶ 80 (listing five alleged defects in the EPAS system and

13  explaining how each could lead to failure).  These allegations distinguish the instant case from

14  *Wilson*, where the plaintiffs' claim was dismissed for failure to link the defect to the safety risk,

15  and not, as Ford argues, *see* Mot. at 21, because a burning laptop is not a safety hazard, *see Wilson*

16  at 1144-45 ("As Plaintiffs do not plead any facts indicating how the alleged design defect, *i.e.*, the

17  loss of the connection between the power jack and the motherboard, causes the Laptops to burst

18  into flames, the District Court did not err in finding that Plaintiffs failed to plausibly allege the

19  existence of an unreasonable safety defect.").

20          Ford's attempt to further parse this argument in its Reply is just as unconvincing.  Ford

21  argues:

22

23

24

25

the risk of injury posed by any vehicle defect would (all else being equal) be greatest when driving at high speed.  But at high speed, a driver rarely if ever *needs* power-assisted steering; in fact, dramatic steering motions at high speed would likely pose a risk of injury themselves.  Power-assisted steering is very helpful at low speeds, by contrast, such as when trying to park, but the risk of injury is correspondingly low.

26  Reply at 12-13 (emphasis in original).  Ford's argument is not persuasive at the motion to dismiss

27  stage, as the materiality of Ford's alleged nondisclosure is a factual question for the jury to decide.

28

21

1    *See, e.g.*, *MyFord Touch*, 46 F. Supp. 3d at 957 (materiality is generally a question of fact); *Blaue*

2    *v. Kissinger*, 2006 WL 2092380, *9 n.6 (N.D. Ill. July 24, 2006) ("[T]he question of whether a

3    defendant's product is unreasonably dangerous for failure to incorporate certain safety devices is a

4    question to be decided by a jury.").  At the very least, it is plausible that a total failure in a

5    vehicle's power steering—at high or low speeds—constitutes an unreasonable safety hazard.  *See*

6    SAC ¶¶ 101-03.  Accordingly, the Court finds that, for purposes of a motion to dismiss, California

7    Plaintiffs have alleged a material safety defect that Ford had a duty to disclose.

8        **3.   Ford's Alleged Omissions**

9        Ford argues that California Plaintiffs' fraudulent omissions claims do not meet Rule 9(b)'s

10   pleading standard.  In *Kearns*, the Ninth Circuit explained that "nondisclosure is a claim for

11   misrepresentation in a cause of action for fraud, [which] (as any other fraud claim) must be

12   pleaded with particularity under Rule 9(b)."  567 F.3d at 1127.  In *Kearns*, the nondisclosure

13   claims failed because they "were couched in general pleadings alleging Ford's intent to conceal

14   from customers that [certified pre-owned] vehicles were essentially the same as ordinary used

15   vehicles.  Such general pleadings do not satisfy the heightened pleading requirements of Rule

16   9(b)."  *Id.*  Ford argues here that California Plaintiffs' claims fail for similar reasons.  Mot. at 12-

17   13.

18       Ford relies in part on *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal.

19   2009), which required the plaintiff to identify "where the omitted information should or could

20   have been revealed, as well as provide representative samples of advertisements, offers, or other

21   representations that plaintiff relied on to make her purchase and that failed to include the allegedly

22   omitted information."  *Marolda* involved an alleged fraudulent omission within a particular

23   advertisement produced by the defendant.  The plaintiff there claimed to know about the

24   advertisement but failed to produce or describe it to the court.  *See id.* at 1001.  As other courts

25   have recognized, however, "the *Marolda* requirements are not necessarily appropriate for all cases

26   alleging a fraudulent omission."  *Velasco v. Chrysler Grp. LLC*, No. CV 13-08080 DDP VBKX,

Case No. 14-CV-02989-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1  2014 WL 4187796, at *4 (C.D. Cal. Aug. 22, 2014) (quoting *Overton v. Bird Brain, Inc.*, 2012

2  WL 909295 (C.D. Cal. Mar. 15, 2012).  In *MacDonald*, moreover, the court found that the

3  plaintiffs satisfied Rule 9(b):

> 4  Plaintiffs adequately allege the "who what when and how," given the inherent
> limitations of an omission claim.  In short, the "who" is Ford, the "what" is its
> 5  knowledge of a defect, the "when" is prior to the sale of Class Vehicles, and the
> "where" is the various channels of information through which Ford sold Class
> 6  Vehicles.

7  *MacDonald*, 37 F. Supp. 3d at 1096.

8  This Court finds *MacDonald* more on point than *Marolda*.  California Plaintiffs allege that

9  Ford's "television advertisements concerning the vehicles," "material concerning the Fusion on

10  Ford's website," "window sticker[s]," and "brochure concerning the Fusion" did not include

11  relevant information about the EPAS system and its possible failures.  SAC ¶ 40.  Ford, not

12  surprisingly, does not argue that it disclosed the EPAS system's alleged failures.

13  As Judge Pregerson recently explained, in applying the reasoning from *MacDonald*:

> 14  Plaintiff has identified the "who" (Chrysler); the "what" (knowing about yet failing
> to disclose to customers, at the point of sale or otherwise, that the TIPM 7 installed
> 15  in Plaintiffs' vehicles was defective and posed a safety hazard); the "when" (from
> the time of the sale of the first Class Vehicle until the present day ); and the
> 16  "where" (the various channels through which Chrysler sold the vehicles, including
> the authorized dealers where Plaintiffs'[sic] purchased their vehicles).  The court
> 17  therefore concludes that Plaintiffs' factual averments are sufficient to allow
> Chrysler to prepare an adequate answer from the allegations.

18  *Velasco*, 2014 WL 4187796, at *5 (citations omitted).  The same analysis applies here: California

19  Plaintiffs have identified the "who" (Ford); the "what" (knowing about yet failing to disclose to

20  customers, at the point of sale or otherwise, that the EPAS system installed in California Plaintiffs

21  vehicles was defective and posed a material safety hazard); the "when" (from the time of the sale

22  of the first vehicle until the present day); and the "where" (the various channels through which

23  Ford sold the vehicles, including the authorized dealers where California Plaintiffs' purchased

24  their vehicles).  Accordingly, the Court finds that California Plaintiffs have sufficiently alleged

25

26

27

28

Case No. 14-CV-02989-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

*United States District Court*
*Northern District of California*

1   that Ford fraudulently omitted information about the EPAS system in the Vehicles.[9]

2   For all these reasons, the Court finds that California Plaintiffs have alleged a fraudulent

3   omission and will not dismiss the SAC on that basis.

4   ### 4. Plaintiff Philips's Allegations

5   Ford also argues that Philips's claims "necessarily fail" because his allegations in the SAC

6   are materially indistinguishable from his allegations in the FAC.  Mot. at 8-9.  The Court does not

7   find this argument persuasive.  The Court's prior ruling focused on the inadequacy of Plaintiffs'

8   affirmative misrepresentation allegations, which California Plaintiffs do not replead.  ECF No. 48

9   at 9:1-23 (explaining that Plaintiffs' affirmative misrepresentation allegations were vague and

10  conclusory).  Considering that the only theory put forth in the SAC is a fraudulent omission

11  theory, the Court finds the allegations relating to Philips sufficient to survive a motion to dismiss.

12  The SAC adds specificity with regard to Ford's allegedly misleading marketing tactics and

13  presents new allegations related to Ford's alleged knowledge of the EPAS system defect.  *See*

14  SAC ¶¶ 9-10 (allegations relating to marketing materials); ¶¶ 81-132 (allegations relating to

15  knowledge).  Accordingly, the Court finds the allegations relating to Philips sufficient at this stage

16  of the litigation.

17  ### 5. Plaintiff Ian Colburn Fails to Allege Reliance or Injury

18  Ford moves to dismiss the fraudulent omission claims brought by Ian Colburn due to his

19  failure to allege reliance and injury, which are required elements of his claims.  For the reasons

20  stated below, the Court finds that Ian Colburn fails to allege actual reliance or injury for all four of

21  his claims and thus dismissed his claims with prejudice.

22  This Court held in *Bruton* that claims brought under the unlawful or unfair prong of the

23  UCL, like claims brought under the UCL's fraud prong, must allege actual reliance and injury,

24  especially if they are based on a defendant's misrepresentations.  *See Bruton v. Berber Products*

25

26  ─────────────────────
    [9] The Court's analysis applies to Allison Colburn, Goodman, and Philips.  As explained in

27  Part III.D.5 *infra*, Ian Colburn's claims fail for lack of reliance and lack of injury.  Those
    omissions apply to all the named plaintiffs except, as explained below, Ian Colburn.

28

24

United States District Court
Northern District of California

1   *Co.*, No. 12-CV-02412-LHK, 2014 WL 172111, at *6 (N.D. Cal. Jan. 15, 2014) (citing *in re*

2   *Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) (holding that Proposition 64 imposes an actual

3   reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud

4   prong)); *see also In re Actimmune Mktg. Litig.*, No. 08-CV-2376, 2010 WL 3463491, at *8 (N.D.

5   Cal. Sept. 1, 2010) (holding "that a plaintiff must plead 'actual reliance,' even if their [sic] claim

6   arises under the unlawful or unfair prongs, so long as the pleadings assert a cause of action

7   grounded in misrepresentation or deception"), *aff'd*, 464 Fed. App'x 651 (9th Cir. 2011).

8   Similarly, the CLRA also requires that a plaintiff plead reliance and injury. *See Durell v. Sharp*

9   *Healthcare*, 193 Cal. App. 4th 1350, 1367 (2010); *Aron v. UHaul Co.*, 143 Cal. App. 4th 796, 802

10  (2006). Finally, a claim for fraudulent concealment under California law requires allegations of

11  (1) knowing concealment or nondisclosure by the defendant (2) with the intent to defraud, which

12  induces (3) actual reliance and (4) causes injury to the plaintiff. *625 3rd St. Assocs., L.P. v. Alliant*

13  *Credit Union*, 623 F. Supp. 2d 1040, 1050 (N.D. Cal. 2009) (citing *Hoey v. Sony Elecs., Inc.*, 515

14  F. Supp. 2d 1099, 1104 (N.D. Cal. 2007)). It is clear from these cases that all four of Ian

15  Colburn's claims require allegations of actual reliance and injury.

16      In the SAC, Ian Colburn alleges that he was given a 2010 Ford Fusion by his mother,

17  Allison Colburn. The steering wheel in his vehicle allegedly failed, causing him to take it to a

18  Ford dealership for repairs. SAC ¶¶ 51-54. Nowhere in the SAC does Ian Colburn allege that he

19  viewed any promotional material or received any representation from Ford with regards to his

20  vehicle. As in *Bruton*, a plaintiff has no standing to assert claims based on statements he did not

21  view. *Bruton*, 2014 WL 172111, at *9 (citing *Kwikset v. Super. Ct.*, 51 Cal. 4th 310, 326 (2011)).

22  Because Ian Colburn does not allege that he viewed any statement from Ford before he came into

23  possession of the vehicle, any fraudulent concealment that may have occurred could not have led

24  to justifiable reliance on his part. What's more, Ian Colburn does not allege in the SAC that he

25  suffered any injury. Because he fails to adequately plead actual reliance or injury with respect to

26  each of his four claims, the Court GRANTS Ford's Motion to Dismiss all of Ian Colburn's claims.

27

28

Case No. 14-CV-02989-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1 The Court does so without leave to amend because the Court, in granting Ford's prior

2 Motion to Dismiss, told Plaintiffs that they must identify "specific materials, like car window

3 stickers and websites, that were reviewed by plaintiffs and contained material omissions" in order

4 to survive a motion to dismiss.  ECF No. 48 at 9:7-10:17.  As Plaintiff Ian Colburn has made no

5 such allegation despite being on notice, the Court finds that allowing further amendment would be

6 futile.  *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 725-26 (9th Cir. 2000) ("A district court

7 acts within its discretion to deny leave to amend when amendment would be futile . . . ."); *see also*

8 *Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("[W]hen a district court has

9 already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend

10 is particularly broad." (internal quotation marks omitted)).

**E.  CLRA Claim: Whether California Plaintiffs Allege a "Transaction"**

12 The CLRA provides that a consumer who suffers damage "as a result of the use or

13 employment by any person of a method, act, or practice declared to be unlawful by Section 1770

14 may bring an action against that person."  Cal. Civ. Code § 1780(a).  Section 1770, in turn, lists

15 certain methods, acts, or practices and declares that they are "unlawful" if "undertaken by any

16 person in *a transaction* intended to result or which results in the sale or lease of goods or services

17 to any consumer."  *Id.* § 1770(a) (emphasis added).  The statute defines "transaction" as "an

18 agreement between a consumer and another person, whether or not the agreement is a contract

19 enforceable by action, and includes the making of, and the performance pursuant to, that

20 agreement."  *Id.* § 1761(e).  Ford argues that although California Plaintiffs allege they purchased

21 their vehicles, "they do not allege this occurred in any 'transaction' with Ford or one of its

22 agents."  Mot. at 22.

23 The Court is not convinced.  California Plaintiffs all allege that they purchased their

24 vehicles directly from Ford dealerships.  *See* SAC ¶ 33 (Philips purchased 2011 Ford Fusion from

25 Salinas Valley Ford); ¶ 38 (Goodman purchased 2011 Ford Fusion from Future Ford of Clovis);

26 ¶ 45 (Allison Colburn purchased 2010 Ford Fusion from Galpin Ford in Granada Hills).

27

28

26

Allegations that vehicles were purchased from an authorized dealership are typically sufficient to state a claim against the vehicle manufacturer under the CLRA. *See, e.g.*, *Chamberlan v. Ford Motor Co.*, No. C 03-2628 CW, 2003 WL 25751413, at *8 (N.D. Cal. Aug. 6, 2003) (finding allegations that vehicles were purchased from "authorized dealerships acting as [Ford's] agents" sufficient to state a claim against Ford under the CLRA). Indeed, a plain reading of the CLRA does not require a direct transaction between a consumer and a manufacturer. Rather, the statute broadly defines transaction as "an agreement between a consumer and *another person*." Cal. Civ. Code § 1761(e) (emphasis added). This broad definition is in keeping with the CLRA's command that the statute be "liberally construed and applied to promote its underlying purposes." *Id.* § 1760.

It comes as no surprise, then, that the vast majority of courts to address the issue have rejected Ford's argument, holding instead that a plaintiff need not allege a direct transaction with the manufacturer. *See, e.g.*, *Falco*, 2015 WL 1534800, at *6 (finding that plaintiffs need not allege a "direct" transaction between a consumer and the manufacturer in order to properly plead a CLRA claim); *Rossi v. Whirlpool Corp.*, No. 2:12-cv-00125, 2013 WL 5781673, at *10 (E.D. Cal. Oct. 25, 2013) (holding that plaintiffs adequately pled their CLRA claim because "where a manufacturer had exclusive knowledge of a defect and the consumer relied upon that defect, the CLRA's protection extends to the manufacturer as well, regardless of whether the consumer dealt directly with the manufacturer"); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1140 (N.D. Cal. 2010) (rejecting defendants' argument that plaintiffs were required to allege a direct transaction to state a claim under the CLRA because "when a plaintiff can demonstrate that the manufacturer had exclusive knowledge of a defect and the consumer relied upon that defect, the CLRA's protection extends to the manufacturer as well, regardless of whether the consumer dealt directly with the manufacturer"); *Keilholtz v. Superior Fireplace Co.*, 2009 WL 839076, at *3-4 (rejecting defendants' argument that a direct transaction must be alleged to state a claim under the CLRA because defendants "fail to cite any authority to support the proposition that a CLRA claim can be

27

United States District Court
Northern District of California

1   asserted only against defendants who sell goods or services directly to consumers").

2          Ford's citations to the contrary are unpersuasive.  In *Green v. Canidae Corp.*, No. CV 09-

3   0486 GAF PLAX, 2009 WL 9421226, at *4 (C.D. Cal. June 9, 2009), the district court dismissed

4   the plaintiffs' CLRA claim against a pet food manufacturer because "the legislation clearly

5   contemplates consumer transactions between a consumer and a retail seller, and does not apply to

6   commercial transactions between a retailer and its vendors to acquire a supply of goods for

7   resale."  Not only does the weight of the persuasive authority fall against *Green*, but *Green*'s

8   analysis is itself cursory.  *Green* concludes summarily that permitting consumers to directly sue

9   the manufacturers would contradict the dual CLRA purposes of consumer protection and

10  efficiency.  But *Green* offers no reason for so concluding.  On the contrary, it seems that

11  preventing consumers from suing manufacturers under the CLRA would require them to resort to

12  less consumer-friendly causes of action for breach of warranty or common law fraud.  *See Gray v.*

13  *BMW of N. Am., LLC*, No. 13-CV-3417-WJM-MF, 2014 WL 4723161, at *6 (D.N.J. Sept. 23,

14  2014) (rejecting *Green* for the same reasons).  In addition, *Green* distinguished *Chamberlan* on

15  grounds that, in *Chamberlan*, "the used car dealers were authorized dealerships acting as agents of

16  Ford."  2009 WL 9421226, at *4.  Here, as in *Chamberlan*, California Plaintiffs all allege that they

17  purchased their vehicles from authorized Ford dealerships.  *See* SAC ¶¶ 33, 38, 45

18         Ford's citations to *Cirulli v. Hyundai Motor Co.*, No. SACV 08-0854 AG, 2009 WL

19  4288367, at *4 (C.D. Cal. Nov. 9, 2009), and *Fulford v. Logitech*, Inc., No. C-08-2041 MMC,

20  2008 WL 4914416, at *1 (N.D. Cal. Nov. 14, 2008), are even less persuasive.  In *Cirulli*, the

21  district court sustained the plaintiffs' CLRA claims against Hyundai Motor America ("HMA"),

22  with whom plaintiffs had a warranty agreement, but dismissed their CLRA claims against

23  Hyundai Motor Company ("HMC"), HMA's parent company, because there was "no comparable

24  transaction" with HMC.  2009 WL 4288367, at *4.  Here, by contrast, there is no dispute that

25  California Plaintiffs all had a warranty agreement with Ford.  *See* ECF No. 22 at 7 (Ford's first

26  round Motion to Dismiss acknowledging that "[e]ach of the plaintiffs' cars was covered by an

27

28

United States District Court
Northern District of California

28

United States District Court
Northern District of California

1    express 'bumper-to-bumper' warranty for the first three years or 36,000 miles driven").  Finally, in

2    *Fulford*, the district court held, without analysis, that the plaintiff had "failed to allege that

3    Logitech engaged in such acts in the course of a transaction with him."  2008 WL 4914416, at *1.

4    In *Fulford*, unlike here and in *Chamberlan*, the products purchased in *Fulford* were not from

5    "authorized dealerships acting as agents" of the manufacturer defendants.  *Id.* at *1 n.2 (ellipsis

6    and internal quotation marks omitted).  Because California Plaintiffs purchased their vehicles from

7    authorized Ford dealers, the instant case is therefore far more like *Chamberlan* than it is like

8    *Green* or *Fulford*.

9          Accordingly, the Court DENIES Ford's Motion to Dismiss California Plaintiffs' CLRA

10   claims for failure to allege a "transaction."

11   **F.  Equitable Relief Claims: UCL Claims and CLRA Injunctive Relief**

12         Ford next argues that the Court should dismiss California Plaintiffs' equitable claims—to

13   wit, their UCL claims and CLRA claims for injunctive relief.  Mot. at 23-24.  The Court should do

14   so, Ford says, because California Plaintiffs have an adequate remedy at law.  *Id.*  For the second

15   time, the Court agrees.  *See* ECF No. 48 at 10:22-11:17 (granting Ford's first round Motion to

16   Dismiss Plaintiffs' equitable claims due to "an adequate remedy at law").

17         Apart from civil penalties, which are not at issue in this case, the UCL provides only the

18   equitable remedies of restitution and injunctive relief.  *See Kor. Supply Co. v. Lockheed Martin

19   Corp.*, 29 Cal. 4th 1134, 1144 (2003); *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 452

20   (2005).  A plaintiff seeking equitable relief in California must establish that there is no adequate

21   remedy at law available.  *See Knox v. Phoenix Leasing, Inc.*, 29 Cal. App. 4th 1357, 1368 (1994).

22   Statutory relief under the UCL "is subject to fundamental equitable principles, including

23   inadequacy of the legal remedy."  *Prudential Home Mortg. Co. v. Super. Ct.*, 66 Cal. App. 4th

24   1236, 1249 (1998).

25         As the UCL provides only equitable remedies, *see* SAC ¶¶ 149, 159 (seeking restitution),

26   and California Plaintiffs have an adequate remedy at law in the form of their claim for fraudulent

27

28

Case No. 14-CV-02989-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1    concealment, the Court dismisses California Plaintiffs' UCL claims.  *See, e.g.*, *Durkee v. Ford*

2    *Motor Co.*, No. C 14-0617 PJH, 2014 WL 4352184, at *3 (N.D. Cal. Sept. 2, 2014) ("Because the

3    UCL provides for only equitable remedies, and plaintiffs have an adequate remedy at law for the

4    alleged Song-Beverly Act violation, plaintiff's UCL claim must be dismissed."); *Gardner v.*

5    *Safeco Ins. Co. of Am.*, No. 14-CV-02024-JCS, 2014 WL 2568895, at *7 (N.D. Cal. June 6, 2014)

6    (dismissing UCL claim where plaintiffs' "claims for breach of contract and breach of the implied

7    covenant of good faith and fair dealing may provide an adequate remedy [at law]"); *Rhynes v.*

8    *Stryker Corp.*, No. 10-5619 SC, 2011 WL 2149095, at *3-4 (N.D. Cal. May 31, 2011) (dismissing

9    plaintiffs' UCL claims because their "products liability claims" afforded them "an adequate

10   remedy at law to redress their alleged injuries").  California Plaintiffs do not attempt to distinguish

11   any of these cases, nor do they argue that their claims for fraudulent concealment are an

12   inadequate remedy at law.  *See* Opp. at 21-22.  Moreover, the cases cited by California Plaintiffs

13   do not even address the issue.  *See, e.g.*, *MyFord Touch*, 46 F. Supp. 3d at 952 (not addressing

14   equitable relief).  Although California Plaintiffs "must establish that there is no adequate remedy

15   at law available," *Durkee*, 2014 WL 4352184, at *2, the SAC contains no allegation of

16   inadequacy.

17        To the extent California Plaintiffs assert a claim for injunctive relief in addition to damages

18   under the CLRA, *see* SAC ¶¶ 169-70 (discussing damages only), that too is dismissed for the same

19   reasons, *see Durkee*, 2014 WL 4352184, at *3 (dismissing entire CLRA claim due to an adequate

20   remedy at law where plaintiffs sought "only injunctive relief" under the CLRA).  Again,

21   California Plaintiffs provide no answer.

22        As a result, the Court GRANTS Ford's Motion to Dismiss California Plaintiffs' UCL

23   claims and CLRA claims for injunctive relief.  The Court does so without leave to amend because

24   the Court has previously dismissed Plaintiffs' equitable claims due to an adequate remedy at law.

25   *See* ECF No. 48 at 10:22-11:17.  The Court therefore finds that allowing further amendment

26   would be futile.  *See Chappel*, 232 F.3d at 725-26 ("A district court acts within its discretion to

27

28

30

Case No. 14-CV-02989-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1    deny leave to amend when amendment would be futile . . . ."); *see also Chodos*, 292 F.3d at 1003

2    ("[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding

3    subsequent motions to amend is particularly broad." (internal quotation marks omitted)).

4    However, as stated *supra* at Part III.D., California Plaintiffs may continue to assert their CLRA

5    claims for damages.

6        **G. Request to Strike Nationwide Claims**

7          Lastly, Ford argues that the Court should strike the "nationwide" class claims that are

8    repled in the SAC.  Mot. at 25 (citing SAC at 39 n.7).  Although the Court explained that Plaintiffs

9    would need to add individuals with standing under the laws of each state in order to reassert

10   Plaintiffs' nationwide claims, *see* ECF No. 48 at 12:3-13:7, the Court accepts Plaintiffs'

11   representation that they have repled these claims in order to preserve tolling and to avoid a

12   possible finding of waiver by an appellate court down the road, *see* SAC at 39 n.7.  In light of

13   Plaintiffs' representation, the Court finds it unnecessary to strike the requested matter from the

14   SAC at the pleading stage.  *See* Fed. R. Civ. P. 12(f).  Accordingly, the Court hereby DENIES

15   Ford's request to strike the nationwide claims from the SAC.

16   **IV.    CONCLUSION**

17         For the foregoing reasons, the Court rules as follows:

18   - The Court GRANTS with prejudice Ford's Motion to Dismiss as to Plaintiff Ian

19       Colburn;

20   - The Court DENIES Ford's Motion to Dismiss at to California Plaintiffs' claims for

21       fraudulent concealment and CLRA claims for damages;

22   - The Court GRANTS with prejudice Ford's Motion to Dismiss as to California

23       Plaintiffs' UCL claims and CLRA claims for injunctive relief; and

24   - The Court DENIES Ford's request to strike the nationwide claims from the SAC.

25

26   **IT IS SO ORDERED.**

27           31

28   Case No. 14-CV-02989-LHK
    ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1

2     Dated: July 7, 2015

3                                                          _____
4                                                          LUCY H. KOH
                                                           United States District Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 14-CV-02989-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS