UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM PHILIPS, et al.,<br>　　　　Plaintiffs,<br>　　v.<br>FORD MOTOR COMPANY,<br>　　　　Defendant. | Case No. 14-cv-02989 LHK   (NC)<br><br>**ORDER TO DEFENDANT TO REPRODUCE DOCUMENTS IN AN UNREDACTED FORM**<br><br>Re: Dkt. No. 122 |

In this putative class action alleging defective electronic power assisted steering, the parties' discovery dispute is whether Ford Motor Company of North America (Ford) must reproduce approximately 3,100 documents in unredacted form that Ford obtained from its wholly-owned German subsidiary, Ford Werke GmbH (Ford Germany). The dispute presents two issues: (1) whether Ford has the power to dictate that Ford Germany produce unredacted documents relevant to this litigation, and (2) what consequences Ford Germany could face under German privacy law if it releases unredacted documents.

The Court conducted a hearing on April 27, 2016, and ordered both parties to submit further briefing. Dkt. No. 131. The Court held a second hearing on May 25, 2016. Dkt. No. 147. Because the Court finds that Ford has control over this set of documents and has not established that production would violate German privacy law, it GRANTS Plaintiffs' motion to compel Ford to reproduce the documents in an unredacted form.

Case No. 14-cv-02989 LHK (NC)

## I. JUDICIAL NOTICE

Ford asks the Court to take judicial notice of its attached Exhibits A and B, which contain the EU Directive on Data Protection, 95/46/EC, 1995 O.J. (L 281), the German Federal Data Protection Act (BDSG), and a decision by the European Court of Justice on October 6, 2015, *Maximillian Schrems v. Data Protection Commissioner/Digital Rights Ireland Ltd.*, No. C-362/14. Dkt. No. 138 at 2. Under Federal Rule of Civil Procedure 44.1, "[i]n determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." *See also McGhee v. Arabian Am. Oil Co.*, 871 F.2d 1412, 1424 n.10 (9th Cir. 1989) (court may take judicial notice of authoritative statement of foreign law); *Securities and Exch. Commission v. Nevatia*, No. 14-cv-05273 JCS, 2015 WL 6912006, at *4 n.4 (N.D. Cal. Oct. 19, 2015) (taking judicial notice of translation found on foreign ministry's official site). The Court accordingly takes notice of the documents.

## II. LEGAL CONTROL

The first question presented is whether Ford has the power to dictate that Ford Germany produce unredacted documents relevant to this litigation.

Under Federal Rule of Civil Procedure 34, Ford's obligation to produce unredacted versions of the documents sought by Plaintiffs turns on whether the documents are in Ford's "possession, custody, or control." *See* Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b) to produce . . . items in the responding party's possession, custody, or control."). Here, Ford identified ten custodians located in Germany who possess documents related to the Ford Fusion and Ford Focus and produced redacted documents in the custodians' possession, collected from Ford Germany, in Germany. Therefore, the question is whether Ford "controls" the documents requested.

Under the Ninth Circuit's "legal control" test, "control" means "the legal right to obtain documents upon demand." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999). In adopting the "legal control" test, the Ninth Circuit has declined "to define

Case No. 14-cv-02989 LHK (NC)            2

'control' in a manner that focuses on the party's practical ability to obtain the requested documents." *Id.* Documents are not discoverable under Rule 34 if the entity that holds them "could legally—and without breaching any contract—continue to refuse to turn over such documents." *Id.* at 1107-08.

On October 22, 2015, Ford represented to District Court Judge Lucy Koh in a joint case management statement that it had "begun collection efforts related to the Focus vehicles included in the subject class" and that "the lead steering engineers for Focus are located in Europe. Accordingly, Ford also expects that it will locate responsive Focus-related documents in Europe." Dkt. 83 at 5.

At a case management conference on October 29, 2015, when Judge Koh asked Ford why it had not gathered and produced the documents before a ruling by the European High Court removing a safe harbor provision in European privacy laws, Ford admitted that although it knew its lead engineer was in Germany throughout the discovery period, its "primary reason" for delay was that it "very strongly believe[d] that the Focus should not be in the class." *Id.* at 5-6. Ford's counsel represented to Judge Koh that it had "initiated the preservation obligations soon after this litigation was filed." *Id.* at 8. Ford would not be able to represent to Judge Koh that it had the power to preserve this set of documents if they were out of Ford's control. Ford stated at the case management conference that it "was just the one isolated [privacy] issue that we're having with the folks that are in Europe." *Id.* at 18-19. It did not state that it did not have possession, custody, or control of the documents.

On February 18, 2016, Ford stated in a joint case management statement that "Ford's collection, review, and production of documents from European custodians has been incredibly time consuming and costly, partly because the EU and Germany in particular have very strict laws and regulations that require Ford to redact the documents," but did not claim that it did not have control over the documents or access to them. Dkt. No. 104 at 5.

As such, Ford has demonstrated control over its ten selected custodians and the

Case No. 14-cv-02989 LHK (NC)    3

1  disputed body of documents that they possess. Ford represented to Judge Koh repeatedly
2  that it would produce these documents, and did indeed produce them. However, the
3  production was inadequate, leading to the present dispute. This Court finds that in the
4  circumstances, Ford has shown control over the documents such that it can be ordered to
5  produce them again, this time without redactions.

### III.  GERMAN DATA-PRIVACY LAWS

The second issue presented is what consequences, if any, Ford Germany faces under German law if it releases unredacted documents, and whether a protective order is sufficient to protect its privacy interests.

In determining whether the documents at issue are protected from disclosure under German and European Union law, "[t]he party relying on foreign law has the burden of showing such law bars production [of documents]." *In re Air Crash at Taipei, Taiwan on Oct. 31, 2000*, 211 F.R.D. 374, 377 (C.D. Cal. 2002) (internal citations omitted). Even if a party identifies such a law, "it is well settled that such [foreign] statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute." *Societe Nationale Industrielle Aerospatiale v. U.S. District Court*, 482 U.S. 522, 544 n. 29 (1987). Courts apply a multi-factor balancing test to evaluate the interests of the United States and the party seeking the discovery against the foreign state's interest in secrecy. *Aerospatiale*, 482 U.S. at 543-44 n. 28. The relevant factors include:

> (1) the importance to the . . . litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Id*. This list of factors is not exhaustive, and includes "the extent and the nature of the hardship that inconsistent enforcement would impose upon the person, . . . [and] the extent to which enforcement by action of either state can reasonably be expected to

Case No. 14-cv-02989 LHK (NC)                4

achieve compliance with the rule prescribed by that state." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992) (internal citations and quotations omitted).

### A.  Importance to the Litigation

Under the first factor, the Court finds that the documents are relevant to the litigation and, as documents in the possession of custodians that Ford selected, weigh in favor of production.

### B.  Specificity of the Request

The second factor considers "how burdensome it will be to respond to th[e] request. Generalized searches for information, the disclosure of which is prohibited under foreign law, are discouraged." *Richmark Corp.*, 959 F.2d at 1475. Here, the request is sufficiently narrow under the second factor because it seeks reproduction of a set of documents Ford has already produced.

### C.  Whether the Information Originated In The United States

With regard to the third factor, "[t]he fact that all the information to be disclosed (and the people who will . . . produce the documents) are located in a foreign country weighs against disclosure, since those people and documents are subject to the law of that country in the ordinary course of business." *Richmark Corp.*, 959 F.2d at 1475. Here, Plaintiffs argue that the engineering work in Germany was done "at the request of and for the benefit of Ford's North American market," resulted in the design of vehicles sold in North America, and did not "remain" in Germany because it was shared with Ford employees around the globe. Dkt. No. 144 at 5. Plaintiffs argue that because Ford has "freely disseminated" the data in its course of business, it cannot characterize it as solely in Germany in the context of this litigation. *Id.* On the other hand, Ford asserts that the information sought originated and remains in Germany, and that therefore this factor weighs against disclosure because the documents are subject to the law of country in which they were made "in the ordinary course of business." Dkt. No. 138 at 3-4. The Court finds that the documents are in Germany at Ford Germany and therefore this factor, while not

Case No. 14-cv-02989 LHK (NC)   5

1   dispositive, weighs against ordering disclosure. *See BrightEdge Techs., Inc. v.*
2   *Searchmetrics, GmbH.*, No. 14-cv-01009 MEJ, 2014 WL 3965062, at *5 (N.D. Cal. Aug.
3   13, 2014) ("To the extent that the database is maintained in Germany, this factor weighs in
4   favor of not ordering disclosure, although it is not determinative.").

### D. Availability of Alternative Means

Plaintiffs argue that there is no practicable means of discovering the redacted names of the custodians, authors, recipients, and cc'd individuals. Ford argues that Plaintiffs can obtain this information elsewhere; "[f]or example, to the extent they seek the names of employees who participated in Focus design decisions, that information likely is already in the 90,000+ unredacted documents Ford has produced." Dkt. No. 138 at 4. However, Ford's argument implies that the information Ford has redacted is duplicative of produced information and therefore is not private. It also means that Ford has access to the information and can produce it without violating German data-protection laws. This factor weighs in favor of requiring production.

### E. Balancing of National Interests

The United States has a substantial interest in "vindicating the rights of American plaintiffs." *In re Air Crash at Taipei*, 211 F.R.D. at 379 (citing *Richmark Corp.*, 959 F.2d at 1477). Ford argues that "[t]his case is distinguishable from *BrightEdge Technologies*, in which the court undervalued the strong German interest embodied in the BDSG." Dkt. No. 138 at 3. In *BrightEdge*, the court held the BDSG was entitled to "less deference" because it is not a substantive rule of law, "but rather one whose primary purpose is to protect its citizens from discovery obligations in foreign courts." *BrightEdge*, No. 14-cv-01009 MEJ, 2014 WL 3965062 at *5. The Court finds the reasoning of *BrightEdge* persuasive and considers this factor to weigh in favor of disclosure.

### F. Hardship And Likelihood of Compliance

"If a foreign company is likely to face criminal prosecution in a foreign country for complying with a United States court order, that is a weighty excuse for nonproduction." *BrightEdge*, No. 14-cv-01009 MEJ, 2014 WL 3965062, at *5 (citing *Aerospatiale*, 357

Case No. 14-cv-02989 LHK (NC)   6

1  U.S. at 211).

2  Confronting the same German data-protection statute at issue here, the *BrightEdge*
3  court found that the BDSG does not prohibit the disclosure of protected information
4  because Part 1 § 4(c) allows for production of personal information for "establishment,
5  exercise or defense of legal claims." *Id.* at *2-3.

6  Ford argues that *BrightEdge* is inapplicable in the analysis of this factor because
7  this safe harbor was invalidated by the European Union in October 2015. Plaintiffs'
8  position is that "Ford's discovery responses were due long before that time and Ford
9  should not be rewarded for intentionally dragging its feet in discovery." Dkt. No. 144 at 4-
10 5. At the case management conference on October 29, 2015, Judge Koh asked Ford why,
11 given that the case was reassigned to her on July 1, 2014, Ford had not produced the
12 documents prior to October. Dkt. No. 144-2 at 5. Ford assured her that it would produce
13 these documents and that it had been preserving and collecting them. *Id.*

14 The *BrightEdge* court also noted that because the party opposing production "has
15 not provided any argument as to whether parties in its position have been fined or
16 prosecuted for disclosing personal data under similar circumstances, this factor weighs in
17 favor of compliance." *BrightEdge*, No. 14-cv-01009 MEJ, 2014 WL 3965062 at *5.
18 Likewise here, although Ford has submitted a declaration by Timothy C. Smith describing
19 the BDSG and its potential penalties, his declaration does not provide any examples of
20 parties in Ford Germany's position that have been fined or prosecuted under the law. *See*
21 Dkt. No. 138-1.

22 Further, the documents will be filed subject to a protective order that will provide
23 German individuals protection from a violation of their privacy rights. This factor weighs
24 in favor of production.

25 **IV. CONCLUSION**

26 Finding that Ford has control over the documents for purposes of discovery
27 production, and having weighed the relevant factors, the Court orders Ford to reproduce
28 the documents to Plaintiffs in an unredacted form within 14 days of this order. Either

party may object to this order within fourteen days.  Fed. R. Civ. P. 72(b).

**IT IS SO ORDERED.**

Dated:  June 10, 2016

_____
NATHANAEL M. COUSINS
United States Magistrate Judge