Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, California  91436
Telephone:     (818) 839-2333
Facsimile:      (818) 986-9698

Niall A. Paul (admitted *pro hac vice*)
npaul@spilmanlaw.com
**SPILMAN THOMAS & BATTLE, PLLC**
300 Kanawha Boulevard, East (25301)
Post Office Box 273
Charleston, West Virginia  25321
Telephone:     (304) 340-3800
Facsimile:      (304) 340-3801

Nathan B. Atkinson (admitted *pro hac vice*)
natkinson@spilmanlaw.com
**SPILMAN THOMAS & BATTLE, PLLC**
110 Oakwood Drive, Suite 500
Winston-Salem, North Carolina 27103
Telephone:     (336) 725-4710
Facsimile:      (336) 725-4476

Adam J. Levitt (admitted *pro hac vice*)
alevitt@gelaw.com
John E. Tangren (admitted *pro hac vice*)
jtangren@gelaw.com
**GRANT & EISENHOFER P.A.**
30 N. LaSalle Street, Suite 2350
Chicago, Illinois  60602
Telephone:     (312) 214-0000
Facsimile:      (312) 214-0001

Mary S. Thomas (SBN 175110)
mthomas@gelaw.com
**GRANT & EISENHOFER P.A.**
123 Justison Street
Wilmington, Delaware 19801
Telephone:     (302) 622-7000
Facsimile:      (302) 622-7100

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| WILLIAM PHILIPS, JAIME GOODMAN, ALISON COLBURN, IAN COLBURN, JASON WILKINSON, ROBERT MORRIS, VICTORIA JACKSON, JOHNPAUL FOURNIER, RYAN WOLF, AND REBECCA WOLF, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | Case No. 5:14-cv-02989-LHK<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Judge:  Hon. Lucy H. Koh<br>Hearing Date: December 8, 2016<br>Time of Hearing: 1:30 pm |

## <u>REDACTED VERSION OF DOCUMENT</u>
## <u>SOUGHT TO BE SEALED</u>

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 8, 2016, at 1:30 pm, or as soon thereafter as the matter may be heard by the Honorable Lucy H. Koh in Courtroom 8, 4th Floor, United States District Court for the Northern District of California – San Jose Courthouse, Robert F. Peckham Federal Building, 280 1st Street, San Jose, California 95113, Plaintiffs William Philips, Jaime Goodman, and Alison Colburn (hereinafter, "Plaintiffs")[1] shall and hereby do move for class certification pursuant to Federal Rule of Civil Procedure 23.

## ISSUES TO BE DECIDED

Whether Plaintiffs satisfy the requirements of Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) by showing that (1) the proposed classes are so numerous that joinder of all class members is impracticable; (2) there are questions of law or fact common to the proposed classes; (3) Plaintiffs' claims are typical of the claims of the other members of the proposed classes; (4) Plaintiffs and their counsel will fairly and adequately protect the interests of the proposed classes; (5) Ford has acted or refused to act on grounds that apply generally to the proposed classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the proposed classes as a whole; (6) the questions of law or fact common to the members of the proposed classes predominate over any questions affecting only individual members; and (7) class treatment is superior to other available methods for fairly and efficiently adjudicating the controversy.

## RELIEF REQUESTED

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek an order certifying the following classes (the "Classes" or, collectively, the "Class") and appointing Plaintiffs as Class representatives:

---

[1] Consistent with the Court's February 18, 2015 Case Management Order (Dkt. No. 51), Plaintiffs presently seek class certification with respect to the claims of the three California Plaintiffs only without prejudice to seeking class certification with respect to the claims of the other Plaintiffs in the future as this Court directs.

(1)   <u>New Vehicle Class</u>

All residents of California who, at any time, purchased or leased a new 2010-2012 Ford Fusion or 2012-2014 Ford Focus vehicle from Ford Motor Company or through a Ford Motor Company dealership.

(2)   <u>Out-of-Pocket Class</u>

All residents of California who incurred expenses in connection with the diagnosis, repair, or replacement of the Electronic Power Assisted Steering system in a 2010-2012 Ford Fusion or 2012-2014 Ford Focus vehicle.

(3)   <u>Current Owner/Lessee Class</u>

All residents of California who currently own or lease a 2010-2012 Ford Fusion or 2012-2014 Ford Focus vehicle.

Plaintiffs also move under Fed. R. Civ. P. 23(g) for the appointment of the following law firms as Class Counsel: Baron & Budd, P.C., Grant & Eisenhofer P.A., and Spilman Thomas & Battle PLLC.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and the Declaration of Mark Pifko in Support of Plaintiffs' Motion for Class Certification and exhibits thereto.

Dated: July 29, 2016                          Respectfully submitted,

                                              /s/ Mark Pifko
                            By:               Mark Pifko

                                              Roland Tellis (SBN 186269)
                                              rtellis@baronbudd.com
                                              Mark Pifko (SBN 228412)
                                              mpifko@baronbudd.com
                                              **BARON & BUDD, P.C.**
                                              15910 Ventura Boulevard, Suite 1600
                                              Encino, California  91436
                                              Telephone:      (818) 839-2333
                                              Facsimile:      (818) 986-9698

1

Adam J. Levitt (admitted *pro hac vice*)
alevitt@gelaw.com

2

John E. Tangren (admitted *pro hac vice*)
jtangren@gelaw.com

3

**GRANT & EISENHOFER P.A.**
30 North LaSalle Street, Suite 2350

4

Chicago, Illinois  60602
Telephone:      (312) 214-0000

5

Facsimile:      (312) 214-0001

6

Mary S. Thomas (SBN 175110)
mthomas@gelaw.com

7

**GRANT & EISENHOFER P.A.**
123 Justison Street

8

Wilmington, Delaware  19801
Telephone:      (302) 622-7000

9

Facsimile:      (302) 622-7100

10

Niall A. Paul (admitted *pro hac vice*)
npaul@spilmanlaw.com

11

**SPILMAN THOMAS & BATTLE, PLLC**
300 Kanawha Boulevard, East (25301)

12

Post Office Box 273
Charleston, West Virginia  25321

13

Telephone:      (304) 340-3800
Facsimile:      (304) 340-3801

14

Nathan B. Atkinson (admitted *pro hac vice*)

15

natkinson@spilmanlaw.com
**SPILMAN THOMAS & BATTLE, PLLC**

16

110 Oakwood Drive, Suite 500
Winston-Salem, North Carolina  27103

17

Telephone:      (336) 725-4710
Facsimile:      (336) 725-4476

18

***Counsel for Plaintiffs***

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

PAGE

I.    INTRODUCTION ...................................................................................................... 1

II.   SUMMARY OF CLASS-WIDE EVIDENCE ESTABLISHING CLAIMS ................... 1

    A.   The EPAS System ............................................................................................ 1

    B.   Ford Knew the EPAS System in All the Class Vehicles Was Fundamentally
        Defective .......................................................................................................... 2

    C.   Relay Failures in the Class Vehicles Present a Safety Concern ......................... 7

    D.   Ford Profited by Overcharging Consumers for a Replacement EPAS System ..... 8

    E.   Ford Believed there Were Feasible Alternative Designs that Do Not Use the
        Defective Relays .............................................................................................. 9

    F.   The Class Representatives Had the Same Experiences with the EPAS System in
        their Class Vehicles as the Other Class Members ............................................. 9

III.  ARGUMENT ......................................................................................................... 10

    A.   The Classes Are Ascertainable ........................................................................ 10

    B.   Plaintiffs Satisfy the Rule 23(a) Requirements ............................................... 12

        1.    The Classes Are Sufficiently Numerous ............................................... 12

        2.    Plaintiffs' and Class Members' Claims Share Common Questions of Fact
            and Law ............................................................................................... 12

        3.    Plaintiffs' Claims Are Typical of the Claims of the Other Class Members .......... 14

        4.    Plaintiffs Will Adequately Represent the Classes ................................. 15

    C.   Plaintiffs Satisfy the Rule 23(b)(3) Requirements ........................................... 15

        1.    Common Questions of Law and Fact Concerning Liability Predominate
            over Questions Affecting Only Individual Members of the Classes ................... 16

            a.    Common Questions Predominate Plaintiffs' Implied Warranty
                Claims ....................................................................................... 17

            b.    Common Questions Predominate Plaintiffs' CLRA claims ...................... 18

            c.    Common Questions Predominate Plaintiffs' Fraudulent
                Concealment Claims .................................................................... 21

NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

2.   Common Questions of Law and Fact Concerning Damages Predominate over Questions Affecting only Individual Members of the Classes ......................21

3.   A Class Action Is the Superior Method for Adjudication of this Case.................23

D.   Plaintiffs Satisfy the Rule 23(b)(2) Requirements.............................................................24

IV.   CONCLUSION..............................................................................................................................25

NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

# TABLE OF AUTHORITIES

CASES                                                                                 PAGE(S)

*Alcantar v. Hobart Serv.*,
  800 F.3d 1047 (9th Cir. 2015) ............................................................................ 12

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)................................................................................... 15, 24

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  133 S. Ct. 1184 (2013)............................................................................... 10, 16

*Banks v. Nissan North Am., Inc.*,
  301 F.R.D. 327 (N.D. Cal. 2013)............................................... 10, 11, 13, 17

*Brand v. Hyundai Motor Am.*,
  226 Cal. App. 4th 1538 (2014) ...................................................................... 18

*Chamberlan v. Ford Motor Co.*,
  402 F.3d 952 (9th Cir. 2005) .................................................................. *passim*

*Cholakyan v. Mercedes-Benz USA, LLC*,
  796 F. Supp. 2d 1220 (C.D. Cal. 2011) ......................................................... 19

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013).................................................................... 21, 22, 23

*Daniel v. Ford Motor Co.*,
  806 F.3d 1217 (9th Cir. 2015) ................................................................ 17, 20

*Daugherty v. Am. Honda Motor Co.*,
  144 Cal. App. 4th 824 (2006) ........................................................................ 19

*Delagarza v. Tesoro Ref. & Mktg. Co.*,
  2011 WL 4017967 (N.D. Cal. Sept. 8, 2011) ............................................... 16

*Doyle v. Chrysler Group LLC*,
  2014 WL 7690155 (C.D. Cal. Oct. 9, 2014)................................................... 14

*Edwards* v. *City of Long Beach*,
  467 F. Supp. 2d 986 (C.D. Cal. 2006) ........................................................... 23

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ......................................................................... 10

*In re Facebook, Inc. PPC Adv. Litig.*,
  282 F.R.D. 446 (N.D. Cal. 2012)................................................................... 12

*Falco v. Nissan North America, Inc.*,
    2016 WL 1327474 (C.D. Cal. April 5, 2016) .................................................. 20, 21

*Guido v. L'Oreal USA, Inc.*,
    2013 WL 3353857 (C.D. Cal. July 1, 2013) ........................................................ 16

*Hambrick v. Healthcare Partners Med. Grp., Inc.*,
    238 Cal. App. 4th 124 (2015) ............................................................................ 21

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................. 14, 16, 24

*Keegan v. Am. Honda Motor Co.*,
    284 F.R.D. 504 (C.D. Cal. 2012) ................................................................. *passim*

*Leyva v. Medline Indus., Inc.*,
    716 F.3d 510 (9th Cir. 2013) ............................................................................. 22

*Lindell v. Synthes USA*,
    2014 WL 841738 (E.D. Cal. Mar. 4, 2014) .................................................. 21, 22

*Mass. Mutual Life Ins. Co. v. Superior Court*,
    97 Cal. App. 4th 1282 (2002) ........................................................................... 20

*McCabe v. Daimler AG*,
    948 F. Supp. 2d 1347 (N.D. Ga. 2013) ............................................................. 22

*Melgar v. CSK Auto, Inc.*,
    2015 WL 9303977 (N.D. Cal. Dec. 22, 2015) ................................................... 11

*Mexia v. Rinker Boat Co.*,
    174 Cal. App. 4th 1297 (2009) ......................................................................... 17

*Miller v. Fuhu*,
    2015 WL 7776794 (C.D. Cal. Dec. 1, 2015) ..................................................... 14

*In re MyFord Touch Consumer Litig.*,
    46 F. Supp. 3d 936, 980 (N.D. Cal. 2014) ........................................................ 17

*Newton v. Am. Debt Serv., Inc.*,
    2015 WL 3614197 (N.D. Cal. June 9, 2015) ............................................... 11, 12

*Parkinson v. Hyundai Motor Am.*,
    258 F.R.D. 580 (C.D. Cal. 2008) ...................................................... 11, 12, 13

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ............................................................................. 25

*Perez-Olano v. Gonzalez*,
    248 F.R.D. 248 (C.D. Cal. 2008) ...................................................................... 12

NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

*Pha v. Yang,*
    2014 WL 654559 (E.D. Cal. Feb. 19, 2014) ................................................................. 14

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985) ........................................................................................................ 10

*In re Porsche Cars N. Am. Inc. Plastic Coolant Tubes Prods. Liab. Litig,*
    880 F. Supp. 2d 801 (S.D. Ohio 2012) ....................................................................... 19

*Pulaski & Middleman, LLC v. Google, Inc.,*
    802 F.3d 979 (9th Cir. 2015) ......................................................................................... 22

*Ries v. Ariz. Beverages USA LLC,*
    287 F.R.D. 523 (N.D. Cal. 2012) .................................................................................. 13

*Rodriguez v. Hayes,*
    591 F.3d 1105 (9th Cir. 2010) ................................................................................. 24, 25

*Sibert v. TV Magic, Inc.,*
    2012 WL 3589795 (C.D. Cal. Aug. 21, 2012) ............................................................ 12

*Smith v. Ford Motor Co.,*
    749 F. Supp. 2d 980 (N.D. Cal. 2010) ......................................................................... 19

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ......................................................................................... 15

*In re Tobacco II Cases,*
    46 Cal. 4th 298 (2009) .................................................................................................... 21

*In re Toyota Motor Corp.,*
    790 F. Supp. 2d 1152 (C.D. Cal. 2011) ................................................................. 21, 22

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods Liab. Litig.,*
    2012 WL 7802852 (C.D. Cal. Dec. 28, 2012) ............................................................. 14

*Vaccarino v. Midland Nat'l Life Ins. Co.,*
    2014 WL 572365 (C.D. Cal. Feb. 3, 2014) ................................................................. 21

*Valentino v. Carter-Wallace, Inc.,*
    97 F.3d 1227 (9th Cir. 1996) ......................................................................................... 23

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (U.S. 2011) ............................................................................... 12, 24, 25

*Walters v. Reno,*
    145 F.3d 1032 (9th Cir. 1998) ....................................................................................... 25

*Wang v. Chinese Daily News,*
    231 F.R.D. 602 (C.D. Cal. 2005) .................................................................................. 12

NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ................................................................................................*passim*

*Wolph v. Acer Am. Corp.*,
    272 F.R.D. 477 (N.D. Cal. 2011) ........................................................................................... 10

*Xavier v. Philip Morris USA Inc.*,
    787 F. Supp. 2d 1075 (N.D. Cal. 2011) .................................................................................. 10

*In re Yahoo Mail Litig.*,
    308 F.R.D. 577 (N.D. Cal. 2015) ..................................................................................... 24, 25

*Yokoyama v. Midland Nat. Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) ............................................................................................... 22

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ............................................................................................... 10

**Statutes**

Cal. Civ. Code §§ 1750 *et seq.*.................................................................................................*passim*

Cal. Civ. Code § 1770 ................................................................................................................... 18

Cal. Civ. Code §§ 1790 *et seq.* ............................................................................................... 17, 23

Cal. Commerical Code § 2314 ...................................................................................................... 17

Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* .......................................................... 17

**Other Authorities**

Fed. R. Civ. P. 23 ....................................................................................................................*passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This case centers on what Ford's own engineers admit to be the "poor design" of the electronic power assisted steering ("EPAS") systems in all of the 2010-2012 model-year Fusion and 2012-2014 model-year Focus vehicles at issue here.  The evidence shows that, refusing to take steps to correct the heart of the problem, Ford spent nearly a decade chasing ideas to address recurring problems with electromechanical relays that Ford knew were ill-equipped for automotive use and unsafe for consumers.  Internally, Ford's engineers admitted that the "[r]elays [were] not fit for use for such a complex steering system and they need[ed] to be deleted from the design urgently."  From the beginning, Ford believed there were feasible alternatives, and its engineers repeatedly talked about their "plan [] to ensure all next generation systems be without mechanical relays," but despite repeatedly discussing proposals to do so, it never changed the design in these vehicles.  Moreover, Ford was aware of the safety concerns presented by the failures -- "It was a loss of assist that caused the accident, so they say," its 30(b)(6) witness testified.  Notwithstanding this knowledge, Ford hid the problem from the public, for no better reason than this:  profits.  Indeed, Ford's pricing division refused to "adjust pricing to 'mask the cost of poor quality,'" because "[s]uppressing pricing for the sake of warranty takes away from company profits."

In sum, internal Ford documents and deposition testimony confirm the allegations in Plaintiffs' pleadings and incontrovertibly establish that Ford knew the defective relays in its EPAS systems, which are common to each of the 2010-2012 Ford Fusion and 2012-2014 Ford Focus vehicles ("Class Vehicles"), were prone to failure, causing a sudden, unexpected, dangerous loss of power steering.  Nevertheless, Ford concealed its knowledge of this grave safety issue because it could not fix the defects without sacrificing its profits.  Under the circumstances, class certification is appropriate.  Accordingly, Plaintiffs request that the Court certify Plaintiffs' claims and appoint Plaintiffs' counsel as class counsel.

### II.    SUMMARY OF CLASS-WIDE EVIDENCE ESTABLISHING CLAIMS

#### A.    The EPAS System

████████████████████████████████████████████████████████.

(Declaration of Mark Pifko in Support of Plaintiffs' Motion for Class Certification ("Pifko Decl.") ¶ 2, Ex. 1 at P. 3.) ████████████████████████████████████████



(*Id.* ¶ 3, Ex. 2 at PP. 8-9.)

. (*Id.* ¶ 3, Ex. 2 at P. 8.)

. (*Id.* ¶ 4, Ex. 3 at P. 54.)

(*Id.* ¶ 4, Ex. 3 at PP. 55-58.)

(*Id.* ¶ 3, Ex. 2 at P. 9.)

. (*Id.* ¶ 5, Ex. 4 at P. 62

).)[2]

**B.      Ford Knew the EPAS System in All the Class Vehicles Was Fundamentally Defective**

. (Pifko Decl. ¶ 6, Ex. 5 at P. 68.)

. (*Id.* ¶ 7, Ex. 6 at P. 72.)

(*Id.* ¶ 7, Ex. 6 at P. 71.)

(*Id.* ¶ 8, Ex. 7 at P. 74; *id.* ¶ 9, Ex. 8 at P. 78.)

_____

[2]                                                                          . (Pifko Decl. ¶ 3, Ex. 2 at P. 8



*(Id.* ¶ 6, Ex. 5 at P. 68.)

*(Id; id.* ¶ 40, Ex. 39)

. *(Id.* ¶ 9, Ex. 8 at PP. 77-80.)

*(Id.*

¶ 10, Ex. 9 at PP. 81-82.)

*(Id.*

¶ 10, Ex. 9 at P. 82.)

*(Id.* ¶ 11, Ex. 10 at P. 99.)

*(Id.* ¶ 12, Ex. 11 at P. 101.)

[3] *(Id.)*

[4] *(Id.* ¶ 13, Ex. 12 at P. 103.)

*(Id.* ¶ 13, Ex. 12 at PP. 103-104.)

*(Id.* ¶ 13, Ex. 12

---

[3] "FET" refers to Field Effect Transistor.

[4] "PVT" refers to Plant Vehicle Team.



at P. 103.)

(*Id.* ¶ 13, Ex. 12 at P. 102.)

(*Id.* ¶ 14, Ex. 13 at P. 108.)

[7] (*Id.* ¶ 16, Ex. 15 at PP. 114-115.)

(*Id.* ¶ 16, Ex. 15 at P. 114 (emphasis added).)

[8] (*Id.* (emphasis added).)

(*Id.* ¶ 17, Ex. 16 at P. 122.)

(*id.* ¶ 17, Ex. 16 at P. 127),

(*id.* ¶ 17, Ex. 16 at P. 128).

---

[5] "HSAP" refers to Hermosillo Stamping & Assembly Plant.

[6] (Pifko Decl. at ¶ 15, Ex. 14 at 112.)

[7] DV plan refers to Design Verification/Development Validation.

[8] "DPR" refers to Design Prerequisites.



(*See id.* ¶ 18, Ex. 17 at P. 130; *see also id.* ¶ 19, Ex. 18 at PP. 131-132)

.)[9]

(*Id.* ¶ 18, Ex. 17 at P. 130.)

. (*Id.* ¶ 5, Ex. 4 at P. 63.)

. (*Id.* ¶ 8, Ex. 7 at P. 75.)

. (*Id.*)

. (*Id.*)

(*Id.* ¶ 21, Ex. 20 at P. 142.)

. (*Id.* ¶ 22, Ex. 21 at PP. 149-150.)

(*Id.* ¶ 11, Ex. 10 at P. 99.)

(*Id.* ¶ 23, Ex. 22 at P. 152.)  Ford failed to inform consumers about the relay issues.

---

[9]                                                            . (Pifko Decl. ¶ 3, Ex. 2 at P. 12.)



(*Id.* ¶ 5, Ex. 4 at P. 67.)

(*Id.* ¶ 24, Ex. 23 at P. 153.)

(*Id.* ¶ 5, Ex. 4 at P. 64.)

(*Id.* ¶ 5, Ex. 4 at P. 63.)

(*Id.* ¶ 5, Ex. 4 at PP. 62-63 (emphasis added).)

(*Id.* ¶ 25, Ex. 24 at P. 155.)

.” (*Id.* (emphasis added).)

. (*Id.*)

---

[10] “FQRs” refers to Field Quality Reviews.



(*Id.* ¶ 19, Ex. 18 at PP. 131-132.)

" (*Id.* ¶ 26, Ex. 25 at P. 157.)

" (*Id.* ¶ 27, Ex. 26 at P. 158 (emphasis added).))

**C.    Relay Failures in the Class Vehicles Present a Safety Concern**

. (*Id.* ¶ 2, Ex. 1 at P. 2.)

. (*Id.* ¶ 28, Ex. 27 at P. 164.)

. (*Id.* ¶ 3, Ex. 2 at PP. 34-35.)

. (*Id.* ¶ 3, Ex. 2 at PP. 35-36)

(*Id.*)

(*Id.*)

(*Id.*)

(*Id.* ¶ 3, Ex. 2 at P. 37.)

(*Id.* ¶ 3, Ex. 2 at PP. 38-39.)

**D.    Ford Profited by Overcharging Consumers for a Replacement EPAS System**

. (Pifko Decl. ¶ 29, Ex. 28 at P. 166.)  According to internal Ford documents,

. (*Id.* ¶ 29, Ex. 28 at P. 167.)  In fact,

. (*Id.*

); (*id.* ¶ 29, Ex. 28 at P. 168 (

.)

Some Ford employees expressed concern that there was a

(*Id.* ¶ 30, Ex. 29 at P. 184; *see also id.* ¶ 31, Ex. 30 at PP. 186-187

(*Id.* ¶ 29, Ex. 28 at P. 166.)  For Ford,

(*Id.* ¶ 29, Ex. 28 at P. 167.)  To the contrary,

(*Id.* (

) (emphasis added).)

NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

**E.     Ford Believed there Were Feasible Alternative Designs that Do Not Use the Defective Relays**



(Pifko Decl. ¶ 7, Ex. 6 at PP. 71-72 *id.* ¶ 4, Ex. 3 at P. 57.) . (*Id.* ¶ 3, Ex. 2 at PP. 27-33 (*Id.* ¶ 5, Ex. 4 at P. 63 (*Id.* ¶ 19, Ex. 18 at PP. 131-132; *id.* ¶ 3, Ex. 2 at PP. 27-33.)

**F.     The Class Representatives Had the Same Experiences with the EPAS System in their Class Vehicles as the Other Class Members**

The EPAS system in each of Plaintiffs' Class Vehicles failed suddenly, and without any warning, while the vehicles were in motion, which created a significant safety hazard.  (Pifko Decl. ¶ 32, Ex. 31 at PP. 189-191; *id.* ¶ 33, Ex. 32 at PP. 201-202; *id.* ¶ 34, Ex. 33 at PP. 210-211.)  Thereafter, Plaintiffs received estimates from their local Ford dealerships of between $1,700.00 and $2,000.00 to replace the EPAS system in their Class Vehicles.  (*Id.* ¶ 32, Ex. 31 at PP. 192-194; *id.* ¶ 33, Ex. 32 at P. 200; *id.* ¶ 35, Ex. 34 at P. 214.)  Because Plaintiffs Goodman and Philips were unable to afford the steep repair costs, they were forced to continue driving their Class Vehicles, even though they thought that the EPAS system failures were a safety issue.  (*Id.* ¶ 32, Ex. 31 at PP. 194-195; *id.* ¶ 33, Ex. 32 at PP. 198-199, 203-207.)  The EPAS systems in their Class Vehicles were ultimately replaced at a Ford dealership as part of a recall.  (*Id.* ¶ 36, Ex. 35 at PP. 219-220; *id.* ¶ 37, Ex. 36 at PP. 221-222.)  After receiving a quote of $1,900, Plaintiff Colburn eventually spent $990.19 to have a new EPAS system installed in her Class Vehicle.  (*Id.* ¶ 38, Ex. 37 at PP. 224-227.)  In each instance, rather than actually fix the problem, the Ford dealership simply installed another defective EPAS system in Plaintiffs' Class Vehicles.  As such, Plaintiffs have been unable to get any relief.

III.   **ARGUMENT**

Class actions "permit the plaintiffs to pool claims which would be uneconomical to litigate individually" and ensure that plaintiffs have a right to redress wrongs that would otherwise "have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).  Plaintiffs must demonstrate that "each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)" have been met. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  This Court ultimately has "broad discretion" over whether to certify a class. *Zinser*, 253 F.3d at 1186.  Moreover, "[a]ny doubts regarding the propriety of class certification generally should be resolved in favor of certification." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 481 (N.D. Cal. 2011).

Although the Court's "class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of [P]laintiff's underlying claim,' . . . Rule 23 grants no license to engage in free-ranging merits inquiries at the class certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013).  So "[m]erits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195; *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011) (it is inappropriate to "determine whether class members could actually prevail on the merits of their claims").

As discussed below, Plaintiffs have met their burden of demonstrating Rule 23's requirements. Indeed, the Ninth Circuit has repeatedly held that automotive defect actions like this one are suitable for class certification. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) (reversing denial of class certification in automotive defect action); *Chamberlan v. Ford Motor Co.*, 402 F.3d 952 (9th Cir. 2005) (affirming grant of class certification in automotive defect action); *see also Banks v. Nissan North Am., Inc.*, 301 F.R.D. 327 (N.D. Cal. 2013) (certifying auto defect class); *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504 (C.D. Cal. 2012) (same).

A.     **The Classes Are Ascertainable**

Although not mentioned in Rule 23, some courts have found an "implied prerequisite" of ascertainability. *See Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011).

1   "To be ascertainable, the description of the class must be 'definite enough so that it is administratively

2   feasible for the court to ascertain whether an individual is a member' before trial, and by reference to

3   'objective criteria.'" *Newton v. Am. Debt Serv., Inc.*, 2015 WL 3614197, at *5 (N.D. Cal. June 9, 2015)

4   (citation omitted).  The Classes are ascertainable even if some Class members cannot be identified by

5   records.  "[C]ourts in this circuit ha[ve] found proposed classes ascertainable even when the only way to

6   determine class membership is with self-identification through affidavits.'" *Melgar v. CSK Auto, Inc.*,

7   2015 WL 9303977, at *8 (N.D. Cal. Dec. 22, 2015) (citation omitted).

8          In this case, there is a single objective criterion that determines whether an individual is a member

9   of the Classes:  whether they purchased or leased a Class Vehicle.  As such, Class members are readily

10   ascertainable through, among other things, Ford's records and dealership records.  Courts regularly find

11   classes of car purchasers and lessees ascertainable from manufacturer records.  *See Banks*, 301 F.R.D. at

12   335 ("As to ascertainability, *Chamberlan* involved a class of both current and former owners, and any

13   former owners can self-identify"); *Keegan*, 284 F.R.D. at 521-22 (auto defect class is ascertainable,

14   because "Plaintiffs' class definitions rely on objective criteria that are verifiable through documentation

15   of a purchase or lease of a class vehicle.") (citing *Keilholtz v. Lennox Hearth Prods., Inc.*, 268 F.R.D.

16   330, 336 (N.D. Cal. 2010)); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 594 (C.D. Cal. 2008)

17   (current or former owners or lessees of class vehicles who paid for a clutch flywheel assembly

18   replacement were ascertainable).



23   . (Pifko Decl. ¶ 39, Ex. 38 at PP. 229-230.)

26   . (*Id.* ¶ 39, Ex. 38 at PP. 231-233, 236.)

28   . (*Id.* ¶ 39, Ex. 38

at PP. 233-235.)  Thus, the Classes are ascertainable.

**B.     Plaintiffs Satisfy the Rule 23(a) Requirements**

**1.     The Classes Are Sufficiently Numerous**

The numerosity requirement is easily satisfied for each of the Classes.  Numerosity requires that the proposed classes be "so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1).  "In order to satisfy this requirement, [P]laintiffs need not state the exact number of potential class members, nor is there a specific number that is required." *In re Facebook, Inc. PPC Adv. Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012); *Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 256 (C.D. Cal. 2008) ("[W]here the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.").  However, courts generally hold that a class of forty or more members is sufficient. *See Sibert v. TV Magic, Inc.*, 2012 WL 3589795, at *1-2 (C.D. Cal. Aug. 21, 2012).  Here, each of the Classes include far more than forty members. (Pifko Decl. ¶ 41.)  In general, California has more vehicle sales than any other state, but even if California only consisted of 0.5% of total vehicle sales, numerosity would be satisfied. *See Newton*, 2015 WL 3614197, at *6 (finding a proposed class of 385 members sufficient to satisfy numerosity); *Wang v. Chinese Daily News*, 231 F.R.D. 602, 607 (C.D. Cal. 2005) (recognizing there is a presumption of numerosity where proposed class contains 100 or more members), *reversed on other grounds by* 737 F.3d 538 (9th Cir. 2013).

**2.     Plaintiffs' and Class Members' Claims Share Common Questions of Fact and Law**

Commonality requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  For purposes of this requirement, "'[e]ven a single [common] question' will do." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (U.S. 2011).  As the Ninth Circuit recently explained, the "common contention need not be one that 'will be answered, on the merits, in favor of the class.'" *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015) (quoting *Amgen*, 133 S. Ct. at 1191). Rather, "[i]t only 'must be of such a nature that it is capable of classwide *resolution*.'" *Id.* (citing *Wal-Mart*, 131 S. Ct. at 2551; *see also Parkinson*, 258 F.R.D. at 588 ("[T]he inquiry is qualitative, not quantitative, and one significant issue may warrant certification.").

In *Wolin*, where the Ninth Circuit addressed the certification of a class of purchasers of vehicles with an alignment defect, the court found that the plaintiffs "easily satisfy the commonality requirement,"

because all of their claims "involve[d]," *inter alia*, "the same alleged defect," which was "found in vehicles of the same make and model." *Wolin*, 617 F.3d at 1172. Such is the case here. Importantly, "variation among class members in their motivation for purchasing the product, the factual circumstances behind their purchase, or the price that they paid does not defeat the relatively 'minimal' showing required to establish commonality." *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Plaintiffs' claims involve a number of questions that are common with the other members of the Classes, including whether the EPAS system in the Class Vehicles was defective. *See Parkinson*, 258 F.R.D. at 588 ("In automobile defect cases, commonality is often found when the most significant question concerns the existence of a defect."). Additional common questions include: (1) whether that systemic defect is responsible, as was represented in the recall, for increasing the risk of a vehicle crash; (2) whether Ford had knowledge that the Class Vehicles were equipped with a defectively designed EPAS system; (3) whether Ford had a duty to disclose the existence of the defect and/or its knowledge thereof; (4) whether Ford adequately disclosed the existence of the defect and/or its knowledge thereof; (5) whether the facts not disclosed by Ford were material; (6) whether Plaintiffs and other members of the Classes were injured as a result of Ford's failure to disclose the defect; and (7) whether the members of the Classes are entitled to damages and/or other relief as a result. *See Chamberlan*, 402 F.3d at 962 (holding that district court's "examples" of common issues, including "(1) whether the design of the plastic intake manifold was defective; (2) whether Ford was aware of alleged design defects; (3) whether Ford had a duty to disclose its knowledge; (4) whether it failed to do so; (5) whether the facts that Ford allegedly failed to disclose were material; and (6) whether the alleged failure to disclose violated the CLRA," were adequate to uphold order certifying class); *see also Banks*, 301 F.R.D. at 332-33 (relying on *Wolin* and *Chamberlan* to find commonality satisfied in automobile defect case turning on same questions concerning existence of defect, defendant's knowledge and duty to disclose).

All of these common questions will be resolved with generalized, class-wide evidence rather than any evidence specific to individual Class members. As such, the commonality requirement is satisfied.

### 3. Plaintiffs' Claims Are Typical of the Claims of the Other Class Members

Typicality requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  The typicality requirement is a "permissive standard[]" and "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  In most cases, "a finding of commonality will ordinarily support a finding of typicality." *Pha v. Yang*, 2014 WL 654559, at *3 (E.D. Cal. Feb. 19, 2014) (quoting *Barefield v. Chevron U.S.A. Inc.*, 1987 WL 65054, at *5 (N.D. Cal. Sept. 9, 1987)).

Typicality is readily satisfied in cases like this one, where "all class members are alleged to have suffered injury as a result of the same conduct by [Ford]." *Doyle v. Chrysler Group LLC*, 2014 WL 7690155, at *7 (C.D. Cal. Oct. 9, 2014); *see also Wolin*, 617 F.3d at 1175 (typicality satisfied where "Gable and Wolin allege that they, like all prospective class members, were injured by a defective alignment geometry in the vehicles [and the plaintiffs] and the class seek to recover pursuant to the same legal theories: violation of consumer protection laws, breach of warranty, and unjust enrichment"); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods Liab. Litig.*, 2012 WL 7802852, at *3 (C.D. Cal. Dec. 28, 2012) ("all the class members allege they have suffered the same injuries based on a common course of Toyota's conduct . . . [and] [t]he Class Representatives' claims are thus typical of the class").

Here, Plaintiffs allege that the EPAS system installed in *all* Class Vehicles was materially defective and prone to sudden failure, causing a dangerous loss of power steering.  Plaintiffs further allege that Ford knew about the defect, and even considered redesigning the mechanical relays used in the EPAS system, but ultimately chose to conceal the known defect and manufacture the Class Vehicles using the original design.  As a result of Ford's common course of conduct, Plaintiffs and all Class Members allegedly suffered the same injury, entitling them to relief under the same legal theories, "regardless of the manifestation of the [EPAS system] defect." *Wolin*, 617 F.3d at 1175 (noting that "[t]ypicality can be satisfied despite different factual circumstances surrounding the manifestation of the defect," and finding the typicality requirement met where, as here, the plaintiffs alleged they and all class members were harmed by a design defect common to all class vehicles); *see also Miller v. Fuhu*, 2015

WL 7776794, at *12-13 (C.D. Cal. Dec. 1, 2015) ("[T]he Ninth Circuit has on multiple occasions held that, in design defect cases, 'proof of the manifestation of a defect is not a prerequisite to class certification.'"). Accordingly, typicality is established.

### 4.    Plaintiffs Will Adequately Represent the Classes

The Ninth Circuit has established a two-prong test for determining if the adequacy requirement is met:  (1) whether Plaintiffs and their counsel "have any conflicts of interest with other class members"; and (2) whether Plaintiffs and their counsel will "prosecute the action vigorously on behalf of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).  Both of those prerequisites are met in this case.

Plaintiffs' interests do not conflict with the interests of putative class members.  Indeed, Plaintiffs and Class Members – all of whom purchased or leased a Class Vehicle with a defective EPAS system – share an interest in obtaining relief from Ford.  Moreover, Plaintiffs have demonstrated their adequacy to represent the class through their diligent participation in this litigation, including by providing documents, written discovery responses, and making themselves available for deposition and vehicle inspections.

In evaluating the adequacy of counsel, the Court "must consider" the following factors:  "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]" Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).  Here, Plaintiffs have retained highly qualified and competent counsel with significant experience prosecuting class actions involving complex product defects and consumer fraud claims such as those at issue in this case.  (Pifko Decl. ¶ 41, Ex. 40; *id.* ¶ 42, Ex. 41; *id.* ¶ 43, Ex. 42.)  Additionally, from the very outset of this case, Plaintiffs' counsel have vigorously prosecuted this action, including opposing multiple motions to dismiss, litigating discovery-related issues, and deposing Ford's Rule 30(b)(6) and fact witnesses and experts.  As such, Plaintiffs' counsel satisfy the adequacy requirement.

### C.    Plaintiffs Satisfy the Rule 23(b)(3) Requirements

In addition to satisfying the Rule 23(a) requirements, plaintiffs must demonstrate the action may be maintained under Rule 23(b)(1), (2), or (3).  *Amchem Prods. v. Windsor,* 521 U.S. 591, 623-24 (1997).

1    Certification pursuant to Rule 23(b)(3) is appropriate when the interests of the parties can best be served

2    by resolving differences in a single action. *See Hanlon*, 150 F.3d at 1022. This analysis focuses on the

3    relationship between common and individualized issues in the case. *Id.* Certification is appropriate

4    where the common factual and legal issues predominate. *Id.* (holding that if common questions "present

5    a significant aspect of the case and they can be resolved for all members of the class in a single

6    adjudication . . . there is clear justification for handling the dispute on a representative rather than on an

7    individual basis" and the predominance test is satisfied).

8        Rule 23(b)(3) does not require Plaintiffs to prove the common questions will be answered in their

9    favor. *Amgen*, 133 S. Ct. at 1191 (movant must show "that *questions* common to the class predominate,

10   not that those questions will be answered, on the merits, in favor of the class") (emphasis in original).

11   Minor variations among the claims of class members are insufficient to defeat predominance where all of

12   the claims arise out of the defendant's generalized conduct. *See Delagarza v. Tesoro Ref. & Mktg. Co.*,

13   2011 WL 4017967, at *11 (N.D. Cal. Sept. 8, 2011) ("While there may be some variation within the

14   [defendant's] refinery with respect to the amount of downtime per shift or number of times per week that

15   employees leave the premises, such variation does not 'present sufficient evidence that individual

16   questions predominate over Plaintiffs' actual theory, which is based on [defendant's] purported general

17   policies.'") (internal citations omitted). Predominance also does not "constitute a uniformity

18   requirement, such that a single exception would defeat class certification." *Id.* at *12.

19   **1.    Common Questions of Law and Fact Concerning Liability Predominate over
          Questions Affecting Only Individual Members of the Classes**

20

21   Predominance is satisfied "when one or more of the central issues in the action are common to the

22   class and can be said to predominate." *Guido v. L'Oreal USA, Inc.*, 2013 WL 3353857, at *9 (C.D. Cal.

23   July 1, 2013) (citing *Gartin v. S&M NuTec LLC*, 245 F.R.D. 429, 435 (C.D. Cal. 2007)). In automotive

24   defect cases involving factual and legal issues similar to those raised here, courts regularly certify

25   statewide classes. *See, e.g.*, *Wolin*, 617 F.3d at 1176 (reversing denial of certification of class of vehicle

26   owners alleging Land Rover's LR3 vehicles suffered from alignment geometry defect that caused tires to

27   wear prematurely); *Chamberlan*, 402 F.3d at 962 (denying Ford's Rule 23(f) petition for interlocutory

28   review of district court's order certifying statewide class alleging Ford knowingly manufactured, sold,

and distributed vehicles containing a defective engine part); *Banks*, 301 F.R.D. at 336 (certifying class of vehicle owners asserting claims against Nissan under California's UCL and CLRA based on alleged defects in an electronic component for the antilock braking system in their Nissan vehicles); *Keegan*, 284 F.R.D. 504 (certifying class alleging consumer protection and warranty claims against Honda based on suspension defect in 2006 through 2008 Honda Civic Hybrid vehicles).

Here, the Classes assert four claims against Ford:  (1) Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* ("Magnuson-Moss"); 2) Violation of the Song-Beverly Consumer Warranty Act for Breach of Implied Warranty, Cal. Civ. Code §§ 1790 *et seq.* ("Song-Beverly"); 3) Violation of the California Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; and 4) Fraudulent Concealment.  (*See* Dkt. No. 114, Pls.' 3d Am. Compl. ¶¶ 140-196.)  Common questions predominate with respect to each of these claims.

> **a.     Common Questions Predominate Plaintiffs' Implied Warranty Claims**

Plaintiffs' Magnuson-Moss and Song-Beverly claims are both governed by California Commercial Code § 2314, which describes the implied warranty of merchantability.[11]  As the Ninth Circuit has repeatedly held, implied warranty claims are readily certifiable in design defect cases such as this one.  *See, e.g., Wolin*, 617 F.3d at 1173 ("[Plaintiff] alleges breach of implied warranty because the vehicles were defective and not of merchantable quality at the time they left [defendant's] possession. Common issues predominate such as whether [defendant] was aware of the existence of the alleged defect, [and] whether [defendant] had a duty to disclose its knowledge.") (citing *Chamberlan*, 402 F.3d at 962).

Plaintiffs will use class-wide evidence to demonstrate that the Class Vehicles were not of merchantable quality at the time they left Ford's possession.  To be merchantable, goods must be "fit for the ordinary purposes for which such goods are used." *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1303 (2009).  An automobile's ordinary purpose "is not just to provide transportation but rather safe, reliable transportation." *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 980 (N.D. Cal.

---

[11] The implied warranty claims under the Magnuson-Moss Warranty Act are derivative of the implied warranty law of California. "Claims under the Magnuson-Moss Warranty Act 'stand or fall with . . . express and implied warranty claims under state law.'" *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1227 (9th Cir. 2015) (*quoting Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008)).

2014) (citing *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 297 (4th Cir. 1989)).  The ordinary purpose of the EPAS system in the Class Vehicles is to provide assistance to the driver on certain steering maneuvers. ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████ (Pifko Decl. ¶ 3, Ex. 2 at PP. 34-39.)  Because this renders the EPAS system unfit for its ordinary purpose, and undermines the ability of the Class Vehicles to provide "safe, reliable transportation," Ford breached the implied warranty of merchantability.  *See Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th 1538, 1547 (2014) (reversing nonsuit for defendant where car's sunroof spontaneously opened and closed while driving, because a reasonable jury "could infer a multitude of similar unsafe scenarios: a driver suddenly distracted, buffeted, or even incapacitated by unexpected incoming rain, sleet, snow, dust, or blinding sun").  This showing does not require individualized inquiry of any kind, and, therefore, supports a finding of predominance.

### b.      Common Questions Predominate Plaintiffs' CLRA claims

The CLRA prohibits unfair methods of competition and unfair or deceptive acts or practices in a transaction intended to result or which result in the sale or lease of goods or services to a consumer.  Cal. Civ. Code § 1770(a).  Plaintiffs' CLRA claims are also well-suited for class certification.

In *Chamberlan*, the Ninth Circuit upheld class certification where plaintiffs demonstrated that Ford's failure to disclose a defect in certain Ford vehicles in violation of the CLRA was an issue common to the class.  *Chamberlan*, 402 F.3d at 962.  In response to Ford's argument that the district court "dispensed with Rule 23(b)(3)'s predominance requirement," the Ninth Circuit found that:

> Although the district court was succinct, it provided detailed, substantive examples of common issues: (1) whether the design of the plastic intake manifold was defective; (2) whether Ford was aware of alleged design defects; (3) whether Ford had a duty to disclose its knowledge; (4) whether it failed to do so; (5) whether the facts that Ford allegedly failed to disclose were material; and (6) whether the alleged failures to disclose violated the CLRA.  The common issues here are plain enough that no further explanation is required to justify the district court's decision.

*Id.*

In *Wolin*, the Ninth Circuit again found the class appropriately certified as all of the plaintiffs' claims "involve[d] the same alleged defect, covered by the same warranty, and found in vehicles of the same make and model."  617 F.3d at 1172.  Again, the Court provided the following list of common

issues to determine whether Land Rover breached its express warranty, violated the Florida Deceptive and Unfair Trade Practices Act and/or was unjustly enriched:

> 1) whether the LR3's alignment geometry was defective; 2) whether Land Rover was aware of this defect; 3) whether Land Rover concealed the nature of the defect; 4) whether Land Rover's conduct violated the Michigan Consumer Protection Act or the Florida Deceptive and Unfair Trade Practices Act; and 5) whether Land Rover was obligated to pay for or repair the alleged defect pursuant to the express or implied terms of its warranties.

*Id.*

The common issues here are analogous to *Chamberlan* and *Wolin* and satisfy predominance. These common issues include:

1. Whether the EPAS system in the Class Vehicles was defective;

2. Whether Ford had a duty to disclose the defect;

3. Whether Ford failed to disclose the defect to each Class member; and

4. Whether Plaintiffs were injured by Ford's failure to disclose.

*First*, Plaintiffs' CLRA claim is premised on an alleged defect -- the reliance on unreliable mechanical relays in the EPAS system -- that is universal to the Class Vehicles. Any attempt by Ford to identify other differences in the EPAS systems in different Class Vehicles is immaterial. (Pifko Decl. ¶ 3, Ex. 2 at PP. 22-27) (███████████████████████████████████████ ██████████████████████████). Each EPAS system incorporated mechanical relays that, as detailed above, were known by Ford engineers to be defective and unsuitable for the Class Vehicles.

*Second*, the issue of whether Ford had a duty to disclose the defect under the CLRA is common to each of the members of the Classes. A consumer expects a manufacturer will guarantee its product against unreasonable safety risks, both within and outside the warranty period. *In re Porsche Cars N. Am. Inc. Plastic Coolant Tubes Prods. Liab. Litig,* 880 F. Supp. 2d 801, 827 (S.D. Ohio 2012). Thus, a defect that poses an objective, identifiable safety risk to consumers will trigger a duty to disclose under the CLRA. *Id.; see also Daugherty v. Am. Honda Motor Co.,* 144 Cal. App. 4th 824 (2006); *Cholakyan v. Mercedes-Benz USA, LLC,* 796 F. Supp. 2d 1220, 1236-37 (C.D. Cal. 2011); *Smith v. Ford Motor Co.,* 749 F. Supp. 2d 980, 989 (N.D. Cal. 2010).

1 ████████████████████████████████████████████████████

2 ███████████████████████████████████████████. (Pifko

3 Decl. ¶ 3, Ex. 2 at PP. 34-39.)  Plaintiffs further contend that Ford had knowledge of these safety risks,

4 and Plaintiffs will demonstrate that knowledge through common evidence, ████████████████

5 ███████████████████████. (*Id.*)

6     ***Third***, Plaintiffs will show that all members of the Classes were exposed to Ford's material

7 omissions.  The Ninth Circuit recently held that consumers may establish exposure to omissions relating

8 to automobile defects by showing that where, as here, the manufacturer communicates with consumers

9 indirectly through its dealerships, the manufacturer failed to cause its dealerships to disclose the omitted

10 information.  *Daniel*, 806 F.3d at 1226-27 ("There are, of course, various ways in which a plaintiff can

11 demonstrate that she would have been aware of a defect, had disclosure been made.  Here, Plaintiffs

12 chose to do so by showing that they would have been aware of the defect had Ford disclosed it to its

13 dealerships.  . . . [] Plaintiffs presented evidence that they interacted with and received information from

14 sales representatives at authorized Ford dealerships prior to purchasing their Focuses.  This is sufficient

15 to sustain a factual finding that [p]laintiffs would have been aware of the disclosure if it had been made

16 through Ford's authorized dealerships."); *see also Falco v. Nissan North America, Inc.*, 2016 WL

17 1327474 at *8 (C.D. Cal. April 5, 2016) ("Common proof can be used to establish the elements of the

18 CLRA claim, such as whether Nissan had a duty to disclose the alleged defect, whether there was an

19 unreasonable safety risk, and whether consumers would find such omission material in their transaction.

20 The actual proof of common defect, or Defendants' knowledge and subsequent actions, go to the merits

21 of the claim, but common evidence will be used to prove the claim either way.")

22     ***Fourth***, the inquiry regarding whether Class members were harmed by the omission can also be

23 resolved on a class-wide basis.  California courts hold causation on a class-wide basis may be established

24 by materiality.  *Keegan*, 284 F.R.D. at 529 (citing *Stearns v. Ticketmaster Corp.* 655 F.3d 1013 (9th Cir.

25 2011)); *Mass. Mutual Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1292-94 (2002).  "A

26 misrepresentation or omission is material under California law 'if a reasonable man would attach

27 importance to the existence or nonexistence in determining his choice of action in the transaction in

28 question.'"  *Keegan*, 284 F.R.D. at 529 (citing *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157

1   (2010)).  However, materiality need not be proven at class certification to establish predominance as it is

2   generally a question of fact unless "the fact misrepresented is so obviously unimportant that a jury could

3   not reasonably find that a reasonable man could have been influenced by it."  *In re Tobacco II Cases,* 46

4   Cal. 4th 298, 327 (2009).  Further, Plaintiffs need not show that the omission "was the only,

5   predominant, or even decisive factor in influencing their conduct, [only] that it 'played a substantial part,

6   and so had been a substantial factor' in influencing the decision."  *In re Toyota Motor Corp.*, 790 F.

7   Supp. 2d 1152, 1169 (C.D. Cal. 2011) (quoting *In re Tobacco II Cases,* 46 Cal. 3th at 326).

8             **c.**     **Common Questions Predominate Plaintiffs' Fraudulent Concealment**
9                    **Claims**

10          To prove their fraudulent concealment claims, Plaintiffs will show that Ford intentionally

11   concealed a material fact that it had a duty to disclose to Plaintiffs and the other members of the Classes,

12   resulting in damages.  *See Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 162

13   (2015).  These claims are amenable to class certification because they require no individual inquiries into

14   particular consumers' reliance or decision-making processes.  Instead, as with the CLRA claims, the

15   causal element of Plaintiffs' fraudulent concealment claims will be satisfied through common evidence

16   demonstrating that Ford possessed material information confirming the existence of the EPAS system

17   defect and had a duty to disclose it, but failed to disclose it, to the quantifiable detriment of all members

18   of the Classes.  *See, e.g., Falco,* 2016 WL 1327474 at *8, *11.

19             **2.**     **Common Questions of Law and Fact Concerning Damages Predominate over**
                    **Questions Affecting only Individual Members of the Classes**

20          Here, "damages are capable of measurement on a classwide basis."  *Comcast Corp. v. Behrend*,

21   133 S. Ct. 1426, 1433 (2013).  Moreover, Plaintiffs' damages theory is tied to their theory of liability.

22   *See Lindell v. Synthes USA*, 2014 WL 841738, at *14 (E.D. Cal. Mar. 4, 2014) ("[Comcast] reiterated a

23   fundamental focus of the Rule 23 analysis: The damages model must be capable of determination by

24   tracing the damages to the plaintiff's theory of liability.")  But, Plaintiffs' damages models need not be

25   perfect and they need not be "precisely correct."  *See Vaccarino v. Midland Nat'l Life Ins. Co.*, 2014 WL

26   572365, at *10-13 (C.D. Cal. Feb. 3, 2014) ("Comcast requires that courts determine whether damages

27   are susceptible of classwide measurement, not whether that measurement is precisely correct.").

28   Moreover, "so long as the damages can be . . . attributed to [Plaintiffs'] theory of liability, damage

1  calculations for individual class members do not defeat certification." *Lindell*, 2014 WL 841738, at *14

2  (noting that "[p]ost Comcast, the Ninth Circuit has reiterated this black letter rule"); *Leyva v. Medline*

3  *Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) ("[T]he amount of damages is invariably an individual

4  question and does not defeat class action treatment."); *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d

5  1087, 1089 (9th Cir. 2010) ("The potential existence of individualized damage assessments . . . does not

6  detract from the action's suitability for class certification.")

7      Plaintiffs' damages models that can be used to calculate, on a class-wide basis, the economic

8  impact sustained by Class members as a result of Ford's misconduct. *See Comcast*, 133 S. Ct. at 1435

9  ("The first step in a damages study is the translation of the legal theory of the harmful event into an

10  analysis of the economic impact of that event.")

11      Plaintiffs' expert Dr. Jonathan I. Arnold presents a methodology for measuring the economic

12  impact on members of the New Vehicle Class by

13                                                                                        . (Pifko Decl. at ¶ 44, Ex. 43

14  at PP. 298-301.)  As Dr. Arnold explains in his report,

15

16                                                                                (Pifko Decl. at ¶

17  44, Ex. 43 at P. 293.)

18                                                                                (Pifko Decl. at ¶

19  44, Ex. 43 at P. 297.)  Under these circumstances, members of the New Vehicle Class are entitled to

20  damages in

21              (Pifko Decl. at ¶ 44, Ex. 43 at P. 293.)

22

23

24  (Id.)  *See Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) (damages are

25  "based on what a purchaser would have paid at the time of purchase had the purchaser received all the

26  information" and "need not account for benefits received after purchase"); *see also In re Toyota Motor*

27  *Corp.*, 790 F. Supp. 2d 1152, 1163 (C.D. Cal. 2011) ("[a] vehicle with a defect is worth less than one

28  without a defect"); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1369 (N.D. Ga. 2013) (plaintiffs

adequately alleged injury in that "they expected to receive vehicles free from design or manufacturing defects and that they would not have purchased their vehicles had they known of the defect" and they "'received [vehicles] that [have] a diminished value for what [they] believed he had paid for and purchased'").

Second, under the CLRA, Magnuson-Moss, and Song-Beverly claims, members of the Out-of-Pocket Class are entitled to receive restitution in an amount that corresponds to the money they expended to diagnose and/or repair the defective EPAS system. *See Keegan*, 284 F.R.D. at 510-11. This model complies with *Comcast* because it is consistent with Plaintiffs' theory

. (Pifko Decl. ¶ 44, Ex. 43.)

### 3. A Class Action Is the Superior Method for Adjudication of this Case

The superiority requirement of Rule 23(b)(3) is also met here. "Where class-wide litigation and common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). In *Edwards* v. *City of Long Beach*, 467 F. Supp. 2d 986 (C.D. Cal. 2006), the court held that to evaluate this requirement:

> the court must evaluate whether a class action is superior by examining four factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in a particular forum; and (4) the difficulties likely to be encountered in the management of a class action.

*Id.* at 992 (quoting *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 469 (N.D. Cal. 2004)).

Here, class-wide resolution undoubtedly will reduce litigation costs and promote efficiency. As set forth above, Plaintiffs have demonstrated that common issues predominate over individual issues affecting their claims. The interest in class members individually controlling separate actions is minimal. Given the expense of securing counsel and pursuing individual claims separately, class members have

1   little interest in maintaining individual actions. *Hanlon*, 150 F.3d at 1023. Courts have held the

2   superiority requirement is met "[w]here recovery on an individual basis would be dwarfed by the cost of

3   litigating on an individual basis." *Wolin*, 617 F.3d at 1175. While Plaintiffs' individual claims are not

4   trivial, they are small in comparison to the cost of unlimited civil litigation against Ford and extensive

5   expert opinions necessary to establish Ford's wrongful conduct. Thus, "[t]he policy at the very core of

6   the class action mechanism," to vindicate the rights of people who individually would be without

7   effective strength to bring their opponent to court, is furthered through certification of the Classes.

8   *Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

9   Few of the present members of the Classes could afford to undertake individual litigation against Ford.

10  As such, in the event the class is not certified, members of the Classes would have no meaningful redress

11  against Ford, and economic injustice would result.

12          **D.      Plaintiffs Satisfy the Rule 23(b)(2) Requirements**

13          An injunctive relief class can be certified under Rule 23(b)(2) where "the party opposing the class

14  has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or

15  corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2);

16  *see also Wal-Mart*, 131 S. Ct. at 2557 (holding that certification under Rule 23(b)(2) is appropriate

17  "when a single injunction or declaratory judgment would provide relief to each member of the class").

18  As the Supreme Court has explained, "[t]he key to the (b)(2) class is 'the indivisible nature of the

19  injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or

20  declared unlawful only as to all the class members or as to none of them.'" *Wal-Mart*, 131 S. Ct. at

21  2557.

22          "Unlike Rule 23(b)(3), a plaintiff does not need to show predominance of common issues or

23  superiority of class adjudication to certify a Rule 23(b)(2) class." *In re Yahoo Mail Litig.*, 308 F.R.D.

24  577, 598 (N.D. Cal. 2015) (Koh, J.). Additionally, "questions of manageability and judicial economy are

25  . . . irrelevant to 23(b)(2) class actions." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010).

26  "Rather, '[i]t is sufficient if class members complain of a pattern or practice that is generally applicable

27  to the class as a whole." *In re Yahoo Mail Litig.*, 308 F.R.D. at 598 (quoting *Walters v. Reno*, 145 F.3d

28  1032, 1047 (9th Cir. 1998)).

1       Moreover, the Rule 23(b)(2) inquiry "does not require a finding that all members of the class have

2 suffered identical injuries." *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014). Therefore, "[t]he fact

3 that some class members may have suffered no injury or different injuries from the challenged practice

4 does not prevent the class from meeting the requirements of Rule 23(b)(2)." *Rodriguez*, 591 F.3d at

5 1125; *Walters*, 145 F.3d at 1047 (quoting Wright, Miller & Kane, 7AA Fed. Prac. & Proc. Civ. § 1775

6 (3d ed.)) ("All the class members need not be aggrieved by or desire to challenge defendant's conduct in

7 order for some of them to seek relief under Rule 23(b)(2).").

8       In this case, all members of the Current Owner/Lessee Class continue to suffer harm because they

9 own and/or are leasing a Class Vehicle equipped with an EPAS system Ford knew was prone to sudden,

10 dangerous failure. By installing the defective EPAS system in each of the Class Vehicles and concealing

11 the known defect from consumers (███████████████████████████████████████████████████

12 ████████████████████████████████████████████), Ford engaged in a uniform, unlawful

13 "practice that is generally applicable to the class as a whole." *In re Yahoo Mail Litig.*, 308 F.R.D. at 598.

14       To alleviate the harm caused by Ford's generally applicable practice, Plaintiffs seek a mandatory

15 injunction requiring Ford to uniformly repair and/or replace the defective EPAS system in each of the

16 Class Vehicles of the Current Owner/Lessee Class. This type of "indivisible injunction benefitting all

17 [class] members at once" conforms to Rule 23(b)(2)'s requirement that "final injunctive relief or

18 corresponding declaratory relief is appropriate respecting the class as a whole." *See Wal-Mart,* 131 S.Ct.

19 at 2557-2558 (stating that Rule 23(b)(2) "does not authorize class certification when each individual

20 class member would be entitled to a different injunction or declaratory judgment against the defendant").

21 As such, Rule 23(b)(2) is unquestionably satisfied in this case. *See Rodriguez*, 591 F.3d at 1125 (Rule

22 23(b)(2) "does not require [the Court] to examine the viability or bases of class members' claims for

23 declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a

24 practice applicable to all of them").

25 **IV.    CONCLUSION**

26       For the reasons set forth above, as well as in the supporting materials filed contemporaneously

27 herewith, Plaintiffs respectfully request that this Court certify the three proposed Classes pursuant to Fed.

28 R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) and appoint Plaintiffs' counsel as Class Counsel.

Dated: July 29, 2016

Respectfully submitted,

/s/ Mark Pifko

By:    Mark Pifko

Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, California  91436
Telephone:    (818) 839-2333
Facsimile:    (818) 986-9698

Adam J. Levitt (admitted *pro hac vice*)
alevitt@gelaw.com
John E. Tangren (admitted *pro hac vice*)
jtangren@gelaw.com
**GRANT & EISENHOFER P.A.**
30 North LaSalle Street, Suite 2350
Chicago, Illinois  60602
Telephone:    (312) 214-0000
Facsimile:    (312) 214-0001

Mary S. Thomas (SBN 175110)
mthomas@gelaw.com
**GRANT & EISENHOFER P.A.**
123 Justison Street
Wilmington, Delaware  19801
Telephone:    (302) 622-7000
Facsimile:    (302) 622-7100

Niall A. Paul (admitted *pro hac vice*)
npaul@spilmanlaw.com
**SPILMAN THOMAS & BATTLE, PLLC**
300 Kanawha Boulevard, East (25301)
Post Office Box 273
Charleston, West Virginia  25321
Telephone:    (304) 340-3800
Facsimile:    (304) 340-3801

Nathan B. Atkinson (admitted *pro hac vice*)
natkinson@spilmanlaw.com
**SPILMAN THOMAS & BATTLE, PLLC**
110 Oakwood Drive, Suite 500
Winston-Salem, North Carolina  27103
Telephone:    (336) 725-4710
Facsimile:    (336) 725-4476

***Counsel for Plaintiffs***