Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, California  91436
Telephone:      (818) 839-2333

Niall A. Paul (admitted *pro hac vice*)
npaul@spilmanlaw.com
**SPILMAN THOMAS & BATTLE, PLLC**
300 Kanawha Boulevard, East (25301)
Post Office Box 273
Charleston, West Virginia  25321
Telephone:      (304) 340-3800

Nathan B. Atkinson (admitted *pro hac vice*)
natkinson@spilmanlaw.com
**SPILMAN THOMAS & BATTLE, PLLC**
110 Oakwood Drive, Suite 500
Winston-Salem, North Carolina  27103
Telephone:      (336) 725-4710

Adam J. Levitt (admitted *pro hac vice*)
alevitt@gelaw.com
John E. Tangren (admitted *pro hac vice*)
jtangren@gelaw.com
**GRANT & EISENHOFER P.A.**
30 N. LaSalle Street, Suite 2350
Chicago, Illinois  60602
Telephone:      (312) 214-0000

Mary S. Thomas (SBN 175110)
mthomas@gelaw.com
**GRANT & EISENHOFER P.A.**
123 Justison Street
Wilmington, Delaware  19801
Telephone:      (302) 622-7000

Attorneys for Plaintiffs

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM PHILIPS, et al., individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | Case No.:  5:14-cv-02989-LHK<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OF CLASS CERTIFICATION ORDER, OR, IN THE ALTERNATIVE, FOR LEAVE TO FILE A RENEWED MOTION FOR CLASS CERTIFICATION WITH AN AMENDED DAMAGES MODEL**<br><br>Judge: Hon. Lucy H. Koh<br>Hearing Date:  February 23, 2017<br>Time of Hearing: 1:30 p.m.<br>Location:  Courtroom 8, 4th Floor |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Thursday, February 23, 2017, at 1:30 p.m., or as soon thereafter as the matter may be heard by the Honorable Lucy H. Koh in Courtroom 8, 4th Floor, United States District Court for the Northern District of California – San Jose Courthouse, Robert F. Peckman Federal Building, 280 1st Street, San Jose, California, 95113, Plaintiffs will and hereby do move, under Civil Local Rule 7-9, for leave to file a motion for reconsideration of this Court's order denying Plaintiffs' Motion for Class Certification and granting Defendant Ford Motor Company's *Daubert* motion concerning Plaintiffs' economic expert, Dr. Jonathan Arnold (the "Order") (Dkt. 224), or, in the alternative, for leave to file a renewed motion for class certification supported by an amended damages model.  This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in Support thereof, and all other pleadings and papers on file in this action and such argument as may be presented to the Court at the time of the hearing.

Dated:  January 4, 2017                      Respectfully submitted,

                              By:       */s/* Mark Pifko
                                        Mark Pifko

                                        Roland Tellis (SBN 186269)
                                        rtellis@baronbudd.com
                                        Mark Pifko (SBN 228412)
                                        mpifko@baronbudd.com
                                        **BARON & BUDD, P.C.**
                                        15910 Ventura Boulevard, Suite 1600
                                        Encino, California  91436
                                        Telephone:     (818) 839-2333
                                        Facsimile:     (818) 986-9698

                                        Adam J. Levitt (admitted *pro hac vice*)
                                        alevitt@gelaw.com
                                        John E. Tangren (admitted *pro hac vice*)
                                        jtangren@gelaw.com
                                        **GRANT & EISENHOFER P.A.**
                                        30 North LaSalle Street, Suite 2350
                                        Chicago, Illinois  60602
                                        Telephone:     (312) 214-0000
                                        Facsimile:     (312) 214-0001

Case No. 5:14-cv-02989-LHK

MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION, OR, IN THE ALTERNATIVE,
A RENEWED MOTION FOR CLASS CERTIFICATION, WITH AN AMENDED DAMAGES MODEL

Mary S. Thomas (SBN 175110)
mthomas@gelaw.com
**GRANT & EISENHOFER P.A.**
123 Justison Street
Wilmington, Delaware  19801
Telephone:      (302) 622-7000
Facsimile:      (302) 622-7100

Niall A. Paul (admitted *pro hac vice*)
npaul@spilmanlaw.com
**SPILMAN THOMAS & BATTLE, PLLC**
300 Kanawha Boulevard, East (25301)
Post Office Box 273
Charleston, West Virginia  25321
Telephone:      (304) 340-3800
Facsimile:      (304) 340-3801

Nathan B. Atkinson (admitted *pro hac vice*)
natkinson@spilmanlaw.com
**SPILMAN THOMAS & BATTLE, PLLC**
110 Oakwood Drive, Suite 500
Winston-Salem, North Carolina  27103
Telephone:      (336) 725-4710
Facsimile:      (336) 725-4476

***Counsel for Plaintiffs***

Case No. 5:14-cv-02989-LHK

MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION, OR, IN THE ALTERNATIVE,
A RENEWED MOTION FOR CLASS CERTIFICATION, WITH AN AMENDED DAMAGES MODEL

# **TABLE OF CONTENTS**

PAGE

I.    INTRODUCTION ..................................................................................................1

II.   DISCUSSION ........................................................................................................1

      A.    The Court Overlooked Portions of Plaintiffs' Damages Model ..........................1

      B.    In the Alternative, Plaintiffs Request Leave to File a Renewed Motion for Class
            Certification Supported by an Amended Damages Model ..................................4

      C.    The Court Should Reconsider its Reliance Findings ..........................................6

      D.    The Court Ignored Portions of Plaintiffs' Out-of-Pocket Damages with Regard to
            Expected Utility and the Predominance Requirement .......................................8

III.  CONCLUSION......................................................................................................9

MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION, OR, IN THE ALTERNATIVE,
A RENEWED MOTION FOR CLASS CERTIFICATION, WITH AN AMENDED DAMAGES MODEL

## <u>TABLE OF AUTHORITIES</u>

PAGE(S)

*Asghari v. Volkswagen Group of Am.*,
    42 F. Supp. 3d 1306, 1327 ..............................................................................................6, 7

*Brazil v. Dole Packaged Foods, LLC*,
    2014 WL 246659 (N.D. Cal. May 30, 2014) ...........................................................3, 4, 7

*In re ConAgra Foods, Inc.*,
    302 F.R.D. 537 (C.D. Cal. 2015) ..............................................................................5

*In re Dial Complete Mktg. and Sales Practices Litig.*,
    312 F.R.D. 36 (D.N.H. 2015) .................................................................................5

*Herron v. Best Buy Stores, LP*,
    2016 WL 1572909 (E.D. Cal. Apr. 19, 2016)...........................................................5

*In re High-Tech Employee Antitrust Litig.*,
    289 F.R.D. 555 (N.D. Cal. 2013) ............................................................................5

*Marsh v. First Bank of Delaware*,
    2014 WL 554553 (N.D. Cal. Feb. 7, 2014) .............................................................5

*McKinnon v. Dollar Thrifty Automotive Group, Inc.*,
    2015 WL 4537957 (N.D. Cal. July 27, 2015)..........................................................5

*In re MyFord Touch Consumer Litig.*,
    Case No. 3:13-cv-03072-EMC, Dkt. 202 (N.D. Cal. Jan. 28, 2016).......................4

*In re MyFord Touch Consumer Litig.*,
    Case No. 3:13-cv-03072-EMC, Dkt. 279 (N.D. Cal. Sept. 14, 2016) ....................4

*Tait v. BSH Home Appliances Corp.*,
    2011 WL 3941387 (C.D. Cal. Aug. 31, 2011)..........................................................7

*Tourgeman v. Collins Financial Services, Inc.*,
    2011 WL 5025152 (S.D. Cal. Oct. 21, 2011) ..........................................................5

ii          Case No. 5:14-cv-02989-LHK

MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION, OR, IN THE ALTERNATIVE,
A RENEWED MOTION FOR CLASS CERTIFICATION, WITH AN AMENDED DAMAGES MODEL

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On December 22, 2014, this Court denied Plaintiffs' Motion for Class Certification and granted Defendant Ford Motor Company's *Daubert* motion concerning Plaintiffs' economic expert, Dr. Jonathan Arnold[1] (the "Order") (Dkt. 224).  In so ruling, the Court concluded that "although Plaintiffs have satisfied all of the requirements of Rule 23(a), Plaintiffs have not satisfied . . . the requirements of Rule 23(b)(3) with respect to the Proposed New Vehicle Class or the proposed Out-of-Pocket Class."  (*Id.* at 30:13-17.)

Under Civil Local Rule 7-9, Plaintiffs respectfully request that the Court grant them leave to file a motion for reconsideration of the Court's Order.  Local Rule 7-9(b)(3) permits a motion for reconsideration based upon a "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order."  Plaintiffs submit that the Court's Order overlooked portions of Plaintiffs' damage model, as presented by Dr. Arnold, and failed to consider other facts and dispositive legal arguments concerning the ability to demonstrate reliance and out-of-pocket damages on a classwide basis.

### II.   DISCUSSION

#### A.   The Court Overlooked Portions of Plaintiffs' Damages Model

Plaintiffs' economic expert Dr. Arnold offered an "expected utility" damage model.  In particular, as the Court observed, "Dr. Arnold states that '[f]rom an economics perspective, [members of the New Vehicle Class] were injured at the time of purchase because they were not informed about the known defects in the accused EPAS system,' and therefore are entitled 'to the amount they paid for a defective EPAS system, as a component of the overall price of a Class vehicle.'"  (Order at 38:1-8.)  In this regard, this Court "f[ound] that the 'expected utility' model that Dr. Arnold describes is economically sound."  (Order at 49:3-4.)

---

[1] Dr. Jonathan Arnold is a highly qualified and respected economist.  As the Court noted "Dr. Arnold's expert report contains a list of his qualifications, which include a Ph.D., M.B.A., and B.A. from the University of Chicago, as well as a long career in economic analysis."  (Order at 49 n.13.)

Nevertheless, "the Court agree[d] with Ford that after describing an economically sound 'expected utility' model, Dr. Arnold offers an analysis that does not apply this model." (*Id.* at 49:4-6.) Specifically, the Court found that Plaintiffs' damage model failed to satisfy Rule 23(b)(3)'s predominance requirement based on the following reasoning:

> Dr. Arnold's calculation of damages relies on the assumption that the true value of the EPAS systems was $0. However, Dr. Arnold never even states, let alone justifies, the conclusion that this assumption is correct.

(*Id.* at 40:25-27.) The Court's perceived shortcomings in Dr. Arnold's opinion, however, are incorrect. Dr. Arnold's opinion is, in fact, based on the grounded assumption that the EPAS systems were worth $0 to consumers at the time of purchase, and he provides ample economic justification for that assumption.

Although Dr. Arnold's report does not explicitly state that "the true value of the EPAS systems to consumers was $0," his entire damage calculation is based on the economically sound and factually supported assumption that the EPAS systems were worth $0 to consumers at the time of purchase. As the Court noted, Dr. Arnold offered the illustration that "if consumers know that a product is 60% likely to fail, then consumers will discount the amount they would be willing to pay for the product if it were certain not to fail by 60%. An 'expected utility' framework measures consumers' perceptions of the risk of failure and calculates consumers' willingness to pay based on these measurements." (Order at 38:13-17.) However, after offering an illustration based on a perceived 40% failure rate, Dr. Arnold's report explained in the following paragraphs that the circumstances here justified a departure from the ordinary failure calculation:

> The discussion so far has not touched on one additional, important aspect of the decision the consumers are facing -- that there is an explicit element of risk built into this potential purchase. Although the expected value expressed in dollar terms may be $40 (assuming, of course, that consumers are aware of the defect), there is a risk that a particular consumer will end up with one of the malfunctioning products and will actually receive $0 enjoyment. Therefore, consumers' attitudes toward risk play an important role in such purchasing decisions.
>
> In this case, *a defective accused Ford EPAS confers disutility (i.e. danger)*. In other words, the risk of malfunction that a consumer faces is related to more than simply the failure to receive the value the consumer places on the product. Indeed, a malfunctioning accused EPAS system would generally confer *negative value* to the consumer in the form of

reduced safety.  ***Thus, the utility of an EPAS system that fails in the field is not zero dollars, but rather some negative amount.***

(Dkt. 173 ("Mot.") Ex. 43 at 8-9.)[2]

The Court noted that "Ford agrees that calculating damages based on expected utility and disutility because of safety concerns and risk aversion is economically sound."  (Order at 39:5-6.)  However, the Court apparently was troubled by Ford's argument that Dr. Arnold testified in deposition "I'm not calculating the expected value."  (*Id.* at 39:8-9.)  But, that statement did not mean that Dr. Arnold's analysis departed from sound economic theory.  On the contrary, because of the danger associated with the concealed defect at issue in this case, it meant that Dr. Arnold did not calculate the discount a class member would place on the purchase as a result of an ordinary product failure from a known defect.

In other words, in evaluating Dr. Arnold's testimony, the Court overlooked Dr. Arnold's opinion that the ***dangerous*** risk of failure, and Ford's concealment thereof, facing a class member here implicates more than the typical failure to receive the value an informed class member would place on the EPAS system.  Thus, Dr. Arnold did not simply discount the price of the EPAS system by a class member's perceived risk of ordinary failure, but, rather, as a result of the disutility, Dr. Arnold placed a value of $0 on the EPAS system.  And, although the disutility of the EPAS system means it actually has ***negative*** value, Dr. Arnold nonetheless conservatively applied a $0 value to the EPAS system for purposes of calculating damages here.[3]

Notwithstanding the above, in reaching its findings, the Court noted that a "similar situation" was presented in *Brazil v. Dole Packaged Foods, LLC*, 2014 WL 246659 (N.D. Cal. May 30, 2014).  (Order at 40:6-7.)  In *Brazil*, the plaintiffs sought a full refund for mislabeled mixed fruit and fruit juice products.  (*Id.*)  The Court explained that, fatal to their damages model, the plaintiffs in *Brazil* had given no reason to believe that the assumption that consumers received no benefit from the mislabeled food products was correct.  The Ninth Circuit affirmed this aspect of the *Brazil* decision, noting correctly that

---

[2] All emphasis added, unless otherwise noted.

[3] Dr. Arnold relied upon the expert report of Dr. Marthinus C. van Schoor, which contains an analysis of the defect in the EPAS system and the safety concerns presented by such defect.  (Mot. Ex. 43 at 5-6.)

"[a] plaintiff cannot be awarded a full refund unless the product she purchased was worthless." (*Id.* at 40:17-20.)  But, in drawing an analogy to *Brazil*, this Court appears to have overlooked that *Brazil* **did not** concern a defective and *dangerous* product.  Here, Plaintiffs' theory is that as a result of the dangerous design defect in the EPAS system, which causes a sudden, unexpected loss of power steering, the product confers a disutility and thus, has no value to class members.  In contrast, cases like *Brazil* involving mislabeled (but not dangerous) food products are readily distinguishable because food products have some inherent nutritional value.  After all, whether mislabeled or not, the consumers in *Brazil* nevertheless received and consumed otherwise safe mixed fruit and fruit juice, albeit not "All Natural Fruit."

Finally, with respect to Dr. Arnold's model, Plaintiffs note that although his model was recently accepted by another court in this District in other case pending against Ford, the Court erroneously distinguished that case based on a misunderstanding of the models at issue in the *MyFord Touch* case. (Order at 41-42 (citing *In re MyFord Touch Consumer Litig.*, Case No. 3:13-cv-03072-EMC, Dkt. 279 at 8 (N.D. Cal. Sept. 14, 2016).)  Specifically, the Court held that "the *MyFord Touch* court only accepted Dr. Arnold's report in conjunction with a second report by another expert that faithfully measured class members' expected utility." (*Id.* at 41:10-14.)  That is incorrect.  In *MyFord Touch*, the two damages reports were not submitted in conjunction with each other, but rather, "Plaintiffs propose[d] two *alternative* damages models that can be used to calculate, on a classwide basis, the economic impact sustained by Class members as a result of Ford's misconduct." *In re MyFord Touch Consumer Litig.*, Case No. 3:13-cv-03072-EMC, Dkt. 202 at 47:23-24 (N.D. Cal. Jan. 28, 2016).[4]

### B.    In the Alternative, Plaintiffs Request Leave to File a Renewed Motion for Class Certification Supported by an Amended Damages Model

In the alternative, Plaintiffs request leave to file a renewed motion for class certification supported by an amended damages model.  As discussed above, in denying Plaintiffs' class certification motion, the Court ruled that "Dr. Arnold never attempts to quantify any of [the price discount] factors --

---

[4] Indeed, the *MyFord Touch* court explained that the two damages models potentially were "inconsistent" with each other, but still refused to exclude Dr. Arnold's model. *In re MyFord Touch Consumer Litig.*, Case No. 3:13-cv-03072-EMC, Dkt. 279 at 8:3-4 (N.D. Cal. Sept. 14, 2016).

4                                    Case No. 5:14-cv-02989-LHK

MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION, OR, IN THE ALTERNATIVE,
A RENEWED MOTION FOR CLASS CERTIFICATION, WITH AN AMENDED DAMAGES MODEL

the risk of failure or the disutility associated with safety concerns -- and never concludes that discounting the price of an EPAS system for all of those reasons yields a value of $0."  (Order at 39:21-24.) However, the Court also noted that "Dr. Arnold's report itself accurately describes what such a theory might look like.  As Dr. Arnold states, a damages model consistent with Plaintiffs' theory of harm in the instant case would attempt to measure the expected utility of a defective EPAS system, as well as the disutility that an average consumer attributes to safety issues and risk aversion."  (Order at 41:23-27.)

Accordingly, if, irrespective of the above discussion, the Court maintains its finding that the damages model originally submitted by Dr. Arnold is deficient, Plaintiffs request leave to submit an amended model to address the deficiencies that this Court identified in the Order.  The amended damages model would show how damages can be calculated on a classwide basis -- through a conjoint analysis methodology -- and provide the Court with the precise type of detail with respect to that methodology identified by this Court in the Order.

Where, as here, class certification is denied, district courts have the power to grant the plaintiff leave to supplement the record and file an amended motion for class certification.  *See, e.g.*, *In re High-Tech Employee Antitrust Litig.*, 289 F.R.D. 555, 585 (N.D. Cal. 2013) (denying certification, but granting plaintiffs leave to amend their motion for class certification to demonstrate that common issues predominate with respect to the injury element for one or both of the proposed classes); *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 581 (C.D. Cal. 2015) (denying motion for class certification without prejudice and inviting an amended motion for class certification); *McKinnon v. Dollar Thrifty Automotive Group, Inc.*, 2015 WL 4537957, at *12 (N.D. Cal. July 27, 2015) (granting plaintiffs leave to "file a new motion for class certification with a revised class definition"); *Marsh v. First Bank of Delaware*, 2014 WL 554553, at *16 (N.D. Cal. Feb. 7, 2014) (providing for a renewed motion for class certification); *Herron v. Best Buy Stores, LP*, 2016 WL 1572909, at *11 (E.D. Cal. Apr. 19, 2016) (denying motion for class certification, but granting leave to file an amended motion for class certification to address deficiencies identified in the order); *In re Dial Complete Mktg. and Sales Practices Litig.*, 312 F.R.D. 36, 80 (D.N.H. 2015) (permitting amended motion for class certification "addressing those deficiencies discussed in this order" relating to the need for an expanded damages

model); *Tourgeman v. Collins Financial Services, Inc.*, 2011 WL 5025152, at *18 (S.D. Cal. Oct. 21, 2011) (denying class certification, but giving plaintiff leave to "file an amended motion for class certification curing the aforementioned defects"). Consistent with this precedent, and heeding this Court's analysis in its class certification ruling, in the alternative to the foregoing, Plaintiffs request leave to file a renewed motion with an amended damages model, which would satisfy the issues this Court identified in the Order.

### C. The Court Should Reconsider its Reliance Findings

This Court also held that individual issues concerning reliance defeated predominance under Rule 23(b)(3). (Order at 29:5-32:14.) The Court's holding relies on its finding that the owner's manuals for the Class Vehicles include warnings about the possibility of the EPAS system to fail. (*Id.* at 30:21-31:15.) This Court concluded that, in light of these warnings, "[a] class member who read the owner's manuals may therefore have no damages." (*Id.* at 31:14-15.) However, for the same reasons discussed in Section II, *supra*, the Court's conclusion also overlooks portions of Dr. Arnold's damages analysis, and Plaintiffs should be permitted to seek reconsideration of this holding as well.

This Court's analysis of the reliance issue focused on the following warning included in the Class Vehicles' owners' manuals:

> The EPS has diagnostics checks that continuously monitor the EPS to ensure proper operation of the electronic system. When an electronic error is detected, the message POWER STEERING ASSIST FAULT will be displayed in the message center. If this happens, stop the vehicle in a safe place, and turn off the engine. . . . If your vehicle loses electrical power while you are driving . . ., you can steer the vehicle manually, but it takes more effort. Extreme continuous steering may increase the effort it takes for you to steer.

(*Id.* at 30-31 (quoting Ex. Q to Opp., at 5-6).) Critically, however, this generic warning, at most, only reminds consumers that no automotive system is perfect and that it is possible for the EPAS system to fail. Nothing in the warning discloses that ***this particular*** EPAS system is subject to malfunctioning ***because of a specific design defect that is <u>known</u> to Ford***. See, *e.g.*, *Asghari v. Volkswagen Group of Am.*, 42 F. Supp. 3d 1306, 1327 n.74 (C.D. Cal. Nov. 4, 2013) ("Defendants . . . do not contend that the owner's manuals state that the class vehicles have a high rate of oil consumption due to an engine defect.

The owner's manuals do not, therefore, disprove plaintiffs' allegations that defendants omitted and/or concealed information about the oil consumption defect prior to plaintiffs' purchases of their vehicles.").

Plaintiffs previously discussed this crucial distinction in their class certification reply, as this Court noted.  (Order at 31 ("Plaintiff argues that these disclosures were insufficient because they did not specifically warn that the EPAS systems in Class Vehicles were defective for including electro-mechanical relays.") (quoting Reply at 9).)  But, after noting Plaintiffs' argument, the Court improperly conflated the overall risk that the EPAS system would fail for any reason with the increased risk that the EPAS system would fail due to a known, yet undisclosed defect.  The Court's framing of Plaintiffs' allegation of harm -- basing it on the knowledge "that the EPAS systems posed a danger because they might fail suddenly" (Order at 31) -- focuses on the overall risk.  But Plaintiffs' actual allegation of harm is different.  Instead, as defined in the quotation provided in the Order from Dr. Arnold's damages report, Plaintiffs' case focuses on the increased risk of harm from the ***known***, yet undisclosed defect:  (*Id.* ("Ford failed to disclose ***known*** defects . . . which put their safety at risk") (quoting Mot. Ex. 43 at 293).)  Here, because it is undisputed that the electro-mechanical relay defect, and the corresponding increased risk of EPAS failure known to exist by Ford, uniformly were not disclosed in the owners' manual or in any other disclosure to any class member, there is no individualized issue concerning the class members' reliance. (*See* Mot. at 20-21; Reply at 9-11.)

Moreover, Ford's reliance on purported disclosures of the alleged defect in the owners' manuals fails for the additional reason that Ford has not shown that any class member consulted or discussed the owners' manual with anyone ***prior*** to purchase.  "[R]estitution is based on what a purchaser would have paid ***at the time of purchase*** had the purchaser received all the information."  *Pulaski & Middleman, LLC*, 802 F.3d 979, 989 (9th Cir. 2015).  Owners' manuals are not typically available to the consumer until after purchase and Ford presented no evidence of any different practice in its sales of the Class Vehicles.  See *Asghari*, 42 F. Supp. 3d 1327 n.74 (declining to consider owners' manual where there was no showing "that plaintiffs received owners' manuals from defendants or otherwise had access to them prior to purchasing their vehicles"); *Tait v. BSH Home Appliances Corp.*, 2011 WL 3941387 at *3 (C.D. Cal. Aug. 31, 2011) ("Defendant's attempt to rebut this allegation by arguing that Defendant provided

information . . . in its Use and Care Manual . . . is unavailing.  The Use and Care Manuals were available to consumers only after they bought the machines.").

For these reasons, Plaintiffs seek leave to move for reconsideration of this Court's holding with respect to reliance, or, in the alternative, to allow Plaintiffs to submit an amended model that addresses -- with a conjoint analysis -- the harm due to the specific, known, yet undisclosed defect in the Class Vehicles.

### D.   The Court Ignored Portions of Plaintiffs' Out-of-Pocket Damages with Regard to Expected Utility and the Predominance Requirement

As the Court noted, Plaintiffs' proposed Out-of-Pocket Class seeks reimbursement of the full amount paid by consumers for out-of-pocket costs incurred replacing or repairing the defective EPAS systems.  (Order at 42:16-18.)  The Out-of-Pocket Class offers a damages model for this class that directly aligns with Plaintiffs' liability theory.  Members of this class are consumers who had to come out-of-pocket to "repair" or "replace" their EPAS system, notwithstanding the fact that they bought a new car from Ford.  The remedies sought by the Out-of-Pocket Class seek redress for the cost of any such procedure, which bestowed no value on the consumer.  Instead, at best, the repairs put them in the position they should have been in when the bought their cars, and at worst, the repairs were a complete waste because they did not repair the defect.  But, either way, the outcome is the same and the law requires that they be reimbursed for the amounts they paid.

The damages model on which the Out-of-Pocket Class relies does not have the same concerns this Court identified with the New Vehicle Class.  It is self-evident that consumers should not have to pay money to attempt to obtain what they should have received when they purchased their car new, and moreover, "not a single class member receives any benefit" from paying multiple times for the same defective system, or paying for 'repairs' to the system that simply leave the consumer with the same defective system.  (Order at 42:22-24 (citing *Caldera v. J.M. Smucker Co.*, 2014 WL 1477400, at *4 (C.D. Cal. Apr. 15, 2014)).  Here, adding insult to injury, rather than get anything of value with the replacement system that the consumer purchased, each class member that paid out-of-pocket for a duplicate, equally defective EPAS system (after already paying for it once at the time the car was purchased new) is no better off for receiving the replacement system that contains the same defective

relays.  Indeed, any payment would have been made without knowledge that the consumer was purchasing an equally defective product, because Ford concealed that information from each and every consumer who paid out-of-pocket for the replacement system which was equally defective.  Ford receives a "double-dip" profit -- revenue from the new car purchase, and revenue from the replacement part -- while the consumer pays double (or more) for a defective system that Ford never revealed to be plagued with problems.

Of course, Ford knew all along that this would be the case.  Discovery revealed that Ford's engineers expressed concern that there would be a "backlash" from customers for the high EPAS replacement costs, while its pricing division refused to adjust prices because in its view, Ford's "customers have no choice but to go to a Ford dealer, so their [sic] is no competitive pressure to lower the price."  Ford knew it would benefit from concealing the problem and forcing consumers to repurchase the same defective EPAS at inflated Ford prices.  (See Mot. at 8.)  It cannot reasonably be disputed that under the law, Ford should not be permitted to retain that benefit.

Additionally, there is not the same need for the damages model for the Out-of-Pocket Class as this Court identified for the New Vehicle Class to measure the expected utility of repair or replacement.  There can be no expected utility value of a replacement EPAS system when paying to replace a defective system with the same defective system results in no net benefit to the purchaser.  Any positive benefit (although Plaintiffs still maintain there is none) would come with the first system, not the second defective system.

The damages model for the money spent on "repairs" or "replacements" is completely aligned with Plaintiffs' claims:  the consumer should not be the party that incurs the costs of attempts to repair when Ford is both the party that designed the faulty system and is the only party with full knowledge that these repairs are useless and will not correct the problems with the faulty relays.  Thus, Plaintiffs seek leave to move this Court to reconsider its holding that out-of-pocket damages are not available to the Out-of-Pocket Class.

### III. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court grant this motion.

Dated:  January 4, 2017                    Respectfully submitted,

                             By:     */s/* Mark Pifko
                                     Mark Pifko

                                     Roland Tellis (SBN 186269)
                                     rtellis@baronbudd.com
                                     Mark Pifko (SBN 228412)
                                     mpifko@baronbudd.com
                                     **BARON & BUDD, P.C.**
                                     15910 Ventura Boulevard, Suite 1600
                                     Encino, California  91436
                                     Telephone:     (818) 839-2333
                                     Facsimile:     (818) 986-9698

                                     Adam J. Levitt (admitted *pro hac vice*)
                                     alevitt@gelaw.com
                                     John E. Tangren (admitted *pro hac vice*)
                                     jtangren@gelaw.com
                                     **GRANT & EISENHOFER P.A.**
                                     30 North LaSalle Street, Suite 2350
                                     Chicago, Illinois  60602
                                     Telephone:     (312) 214-0000
                                     Facsimile:     (312) 214-0001

                                     Mary S. Thomas (SBN 175110)
                                     mthomas@gelaw.com
                                     **GRANT & EISENHOFER P.A.**
                                     123 Justison Street
                                     Wilmington, Delaware  19801
                                     Telephone:     (302) 622-7000
                                     Facsimile:     (302) 622-7100

                                     Niall A. Paul (admitted *pro hac vice*)
                                     npaul@spilmanlaw.com
                                     **SPILMAN THOMAS & BATTLE, PLLC**
                                     300 Kanawha Boulevard, East (25301)
                                     Post Office Box 273
                                     Charleston, West Virginia  25321
                                     Telephone:     (304) 340-3800
                                     Facsimile:     (304) 340-3801

                                     Nathan B. Atkinson (admitted *pro hac vice*)
                                     natkinson@spilmanlaw.com
                                     **SPILMAN THOMAS & BATTLE, PLLC**
                                     110 Oakwood Drive, Suite 500
                                     Winston-Salem, North Carolina  27103
                                     Telephone:     (336) 725-4710
                                     Facsimile:     (336) 725-4476

                                     ***Counsel for Plaintiffs***

10                          Case No. 5:14-cv-02989-LHK

MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION, OR, IN THE ALTERNATIVE,
A RENEWED MOTION FOR CLASS CERTIFICATION, WITH AN AMENDED DAMAGES MODEL