1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

WILLIAM PHILIPS, et al.,

    Plaintiffs,

    v.

FORD MOTOR COMPANY,

    Defendant.

Case No. 14-cv-02989-LHK

**ORDER GRANTING SUMMARY JUDGMENT AND DENYING MOTION TO EXCLUDE TESTIMONY AS MOOT**

Re: Dkt. No. 228

Before the Court is Defendant Ford Motor Company's ("Ford's") Motion for Summary Judgment on the Individual Claims of William Philips,[1] Jaime Goodman, and Alison Colburn, ECF No. 228 ("Mot."), and Motion to Exclude the Report and Testimony of Dr. Allise Wachs, ECF No. 227 (Mot. to Exclude). The Court finds that the instant motions are suitable for resolution without oral argument and therefore VACATES the hearing scheduled for February 23, 2017. Having considered the submissions of the parties, the relevant law, and the record in this

---

[1] In the Court's December 22, 2016 order denying class certification, the Court found that Plaintiff Philips was not a member of any of the proposed classes and therefore dismissed Plaintiff Philips from the action. However, the Court address Plaintiff Philips's claims for the sake of completion and because the briefing from both parties addressed Plaintiff Philips's claims.

1

case, the Court hereby GRANTS Defendant's motion for summary judgment and DENIES

Defendant's motion to exclude testimony as moot.

I.      BACKGROUND

A.   Factual Background

The following facts are from Plaintiffs' Third Amended Complaint ("TAC"). The

following chart summarizes the named Plaintiffs' purchasing information:

| Plaintiff | Vehicle | Site of Purchase | Date of Purchase |
|---|---|---|---|
| William Philips | 2011 Ford Fusion (used) | Salinas Valley Ford | March 2012 |
| Jaime Goodman | 2011 Ford Fusion (new) | Future Ford of Clovis | October 2010 |
| Alison Colburn | 2010 Ford Fusion (new) | Galpin Ford | January 2010 |

*Id.* ¶¶ 32–53. Power steering systems supplement the torque that the driver must apply to the

steering wheel, thus making it easier for the driver to turn the wheel. *Id.* ¶ 75. Instead of using a

traditional power steering pump, Ford's EPAS system uses a power steering control motor,

electronic control unit, torque sensor, and steering wheel position sensor. *Id.* ¶ 2. Plaintiffs allege,

however, that Ford's EPAS system suffers from a "systemic defect" that "renders the system

prone to sudden and premature failure during ordinary and foreseeable driving situations." *Id.*

Specifically, Plaintiffs claim that "[w]hen developing the requirements for its EPAS system, Ford .

. . ignored sound engineering judgment by incorporating unreliable electromechanical relays,

which are foreseeably prone to failure, into the design." Mot. at 1–2. This defect, Plaintiffs

contend, causes drivers of the Class Vehicles to "experience significantly increased steering effort

and an increased risk of losing control of their vehicles when the EPAS system fails" and "defaults

to manual steering." *Id.* ¶¶ 3, 100.

**1. Plaintiffs' Personal Experiences with EPAS Failure**

**i. Plaintiff Philips**

In their Third Amended Complaint, Plaintiffs allege that they paid more for their vehicles

than they would have if Ford has disclosed that their vehicles' EPAS systems were defective.

Specifically, William Philips ("Philips") states that he "reviewed Ford's promotional materials and

2

other information" and that he "would not have purchased his 2011 Ford Fusion, or would not have paid the purchase price charged" had Ford "disclosed the EPAS system defects and failures." *Id.* ¶ 34. Philips also alleges that he experienced "problems with the steering system in his Fusion." *Id.* ¶ 36. After lodging multiple complaints with Ford, Plaintiff Philips was informed during a dealership visit in 2013 "that it would cost approximately $2,000 to fix the problem," through an EPAS system replacement. *Id.* Plaintiff Philips declined to repair his vehicle at that time. In July 2015, Plaintiff Philips received a notice from Ford that alerted him that his "vehicle [was] subject to a safety recall," and asked Plaintiff Philips to bring his vehicle to a dealership for further inspection. ECF No. 97-5 at 192. After receiving this notice, Plaintiff Philips brought his vehicle in for an inspection, at which time Ford replaced the EPAS system in Plaintiff Philips's vehicle.

### ii. Plaintiff Goodman

Jaime Goodman ("Goodman") claims that, prior to "purchasing her 2011 Ford Fusion," she "(a) viewed television advertisements concerning the vehicles; (b) viewed material concerning the Fusion on Ford's website; (c) reviewed the window sticker on the vehicle she would purchase; and (d) received and reviewed a brochure concerning the Fusion." TAC ¶ 40. "The window sticker," Plaintiff Goodman says, "indicated that the vehicle she would purchase was equipped with power steering." *Id.* "Nowhere in these materials did Ford disclose the EPAS system defects and failures," and had Ford done so, Plaintiff Goodman alleges that she "would not have purchased her 2011 Ford Fusion, or would not have paid the purchase price charged." *Id.* ¶¶ 40–41. In addition, Plaintiff Goodman claims that in 2014 she "began having intermittent problems with the steering system in her 2011 Ford Fusion and experienced difficulty steering." *Id.* ¶ 43.

Ultimately, Plaintiff Goodman "took [her] vehicle to a Ford dealership [in December 2014] and was told that it would cost $1,800 to fix the problem with the steering system." *Id*. As with Plaintiff Philips, the dealership recommended that the EPAS system in Plaintiff Goodman's vehicle be replaced. Although Plaintiff Goodman contended that her power steering problems

Case No. 14-cv-02989-LHK
ORDER GRANTING SUMMARY JUDGMENT AND DENYING MOTION TO EXCLUDE TESTIMONY AS MOOT

1    were a safety issue, Ford refused to defray the cost of an EPAS system replacement. ECF No. 94-8

2    at 47. Citing financial hardship, Plaintiff Goodman declined to undertake any repairs to her vehicle

3    at this time and continued to experience problems with her vehicle.

4    In July 2015, Plaintiff Goodman received "a letter from Ford Motor Company concerning

5    the 2011 Fusion and a recall for the [Fusion's] EPAS [system]." *Id.* at 49. Pursuant to this letter,

6    Plaintiff Goodman took her vehicle to a Ford dealership in August 2015 with the expectation that

7    Ford would replace the EPAS system in her vehicle free of charge. During this August 2015 visit,

8    however, the dealership declined to perform a system replacement and instead simply

9    reprogrammed the computer in Plaintiff Goodman's vehicle.

10   In October 2015, Plaintiff Goodman once again experienced problems with her vehicle's

11   power steering. "On November 2, 2015, Ford's counsel contacted Plaintiffs' counsel to inform

12   them that based on a review of the attached service records . . . , it appears that Jaime Goodman is

13   eligible for a steering gear replacement." ECF No. 94-6 at 10. Plaintiff Goodman thereafter

14   scheduled an appointment to replace her vehicle's EPAS system on November 12, 2015. "A few

15   hours after dropping off [her] vehicle" on November 12, 2015, however, Plaintiff Goodman

16   "received a call from a service associate . . . and was informed that . . . [her vehicle] was no longer

17   eligible for a free replacement under Ford's recall program." ECF No. 95-4 at 2. After "Ford

18   refused to replace [Goodman's] EPAS system," Plaintiffs' counsel once again reached out to Ford.

19   *Id.* at 3. On November 24, 2015, Ford finally replaced the EPAS system in Plaintiff Goodman's

20   vehicle.

21           **iii. Plaintiff Colburn**

22   Prior to "purchasing her 2010 Ford Fusion," Alison Colburn ("Colburn") claims that, like

23   Plaintiff Goodman, she "(a) viewed television advertisements concerning the vehicles; (b) viewed

24   material concerning the Fusion on Ford's website; (c) reviewed the window sticker on the vehicle

25   she would purchase; and (d) received and reviewed a brochure concerning the Fusion," and that

26   "[t]he window sticker indicated that the vehicle she would purchase was equipped with power

27

4

28   Case No. 14-cv-02989-LHK
     ORDER GRANTING SUMMARY JUDGMENT AND DENYING MOTION TO EXCLUDE TESTIMONY AS
     MOOT

United States District Court
Northern District of California

steering." TAC ¶ 47. "Nowhere in these materials did Ford disclose the EPAS system defects and failures." *Id.* Had Ford done so, Plaintiff Colburn alleges that she "would not have purchased her 2010 Ford Fusion, or would not have paid the purchase price charged." *Id.* ¶ 48. Plaintiff Colburn alleges that the power steering in her vehicle failed in October 2014. *Id.* ¶ 52. Later that month, she took her vehicle to a Ford dealership and paid $990.19 to replace her vehicle's EPAS system. *Id.* ¶ 53.

### 2. The Nature of the Alleged Defect

In the TAC, Plaintiffs point to various possible defects in EPAS systems in Ford vehicles: problems with the EPAS system's conformal coating, misalignment of ribbon cable pins, design defects in the contact plating used in the EPAS system, problems with the EPAS system's sensors, and defects in the gear assembly. *Id.* ¶ 79. Plaintiffs allege that "[t]hese defects, individually and/or collectively, render the EPAS System prone to failure." *Id.* However, after considerable discovery, Plaintiffs narrowed their theory of defect. As relevant to the instant motion, Plaintiffs assert that the EPAS systems in 2010–2012 Fusion vehicles and 2012–2014 Focus vehicles are defective because the EPAS systems contain unreliable electro-mechanical relays.

Ford began to use electro-mechanical relays in EPAS systems in 2009 to produce the 2010 Fusion. Pascarella Rpt., Ex. A to Mot., at 3. The EPAS system is manufactured by a Ford supplier called TRW and includes two electro-mechanical relays: a "link relay" and a "star point" relay. Arora Rpt., Ex. E to Mot., at 28. The link relay controls power to the EPAS system, and the star point relay controls power to the steering motor. *Id.* at 36, 40. These relays control power through a circuit that is completed when two metal plates in the relays make contact. Ex. 31 to Opp., at 6–9. When the metal plates are in contact, the circuit is closed, and power is engaged. *Id.* When the metal plates are separated, the circuit is opened, and power is cut off. *Id.* Occasionally, these relays experience "faults," meaning the circuits open and power is cut off at unexpected times. When a fault occurs, power steering is cut off and the vehicle reverts to manual steering. Ex. E to Mot., at 36–40. These faults are indicated by "diagnostic trouble codes" to assist in diagnosis and

Case No. 14-cv-02989-LHK
ORDER GRANTING SUMMARY JUDGMENT AND DENYING MOTION TO EXCLUDE TESTIMONY AS MOOT

repair. A code number B43 indicates a fault in the link relay, and a code number B3A indicates a fault in the star point relay. *Id.* at 40.

Plaintiffs claim that Ford knew as early as 2007 that electro-mechanical relays were unfit for use in EPAS systems. ECF No. 225, at 2. Plaintiffs point to Ford emails suggesting that Ford employees believed that electro-mechanical relays were subject to issues such as thermal expansion and sensitivity to variations in manufacturing. *Id.* at 4. Other internal Ford emails suggested that Ford hoped to "remove electro-mechanical relays out of EPS products." Ex. 31 to Opp., at 26. Nevertheless, Plaintiffs claim that because of budgetary issues, Ford decided not to change the design to omit electro-mechanical relays. ECF No. 225, at 5.

Ford continually diagnosed and assessed relay problems, and Ford began to make some changes to the EPAS systems in 2011. ECF No. 225, at 5. However, according to Plaintiffs, none of these changes addressed the ultimate cause of the EPAS system's unusually high failure rates: inclusion of unreliable electro-mechanical relays. During this time, Ford also received an unusual number of complaints regarding sudden and unexpected failures of power steering systems. Ex. E at 48–49. At the time, Ford concluded that there were several causes for the power steering issues, but the main cause was the fact that "ribbon cables" in the EPAS systems were sometimes damaged during assembly. *Id.* After the National Highway Transportation Safety Administration (NHTSA) opened an investigation into reports of power steering failures in Fusion vehicles, Ford began a recall of certain Fusion vehicles based on the ribbon-cable issues. *Id.* However, according to Plaintiffs, this recall does not address their concerns because even after replacement, the EPAS systems are still defective because they incorporate unreliable electro-mechanical relays. Plaintiffs claim that Ford knew that inclusion of the unreliable relays posed safety concerns and that other feasible alternative designs would not pose the same dangers. ECF No. 225, at 7–9.

Based on the evidence outlined above, Plaintiffs allege that Ford fraudulently concealed the alleged defect in the EPAS systems. Despite press releases and web-based "promotional materials" touting "EPAS as a reliable and beneficial product," Ford knew as early as 2007 that

Case No. 14-cv-02989-LHK
ORDER GRANTING SUMMARY JUDGMENT AND DENYING MOTION TO EXCLUDE TESTIMONY AS MOOT

United States District Court
Northern District of California

United States District Court
Northern District of California

1   the EPAS system was "prone to sudden, premature failure," and yet took no remedial action. TAC

2   ¶ 11. Plaintiffs further claim that "Ford concealed the fact that the EPAS system [was] prone to

3   sudden and premature failure from consumers so that the warranty period on the Defective

4   Vehicles would expire before consumers became aware of the problem." *Id.* ¶ 24. Had Ford

5   disclosed the alleged defect, Plaintiffs "would not have purchased . . . th[e] vehicles, or would

6   have paid substantially less for the vehicles than they did." *Id.* ¶ 25. Moreover, "Ford's failure to

7   disclose to consumers and the public at large the material fact that the EPAS system is prone to

8   premature failure . . . recklessly risked the safety of occupants of the Defective Vehicles and the

9   public at large." *Id.* ¶ 6.

10   **B.  Procedural History**

11         On June 27, 2014, Plaintiffs filed the original complaint in this putative class action. ECF

12   No. 1. Plaintiffs filed the first amended complaint ("FAC") on September 8, 2014. ECF No. 15

13   ("FAC"). Plaintiffs' FAC was 108 pages long and asserted 51 causes of action, including 49

14   claims specific to the laws of six states and two nationwide claims based on the laws of 44

15   additional states. ECF No. 15.

16         On October 24, 2014, Ford filed a motion to dismiss all 51 causes of action. ECF No. 22.

17   At a hearing on February 12, 2015, the Court granted Ford's motion to dismiss the FAC with leave

18   to amend. ECF No. 46. Specifically, as to Plaintiffs' implied warranty claims, brought under

19   California's Song-Beverly Consumer Warranty Act ("Song-Beverly Act") and the Magnuson-

20   Moss Warranty Act ("Magnuson-Moss Act"), the Court found "that Plaintiffs ha[d] sufficiently

21   alleged that the EPAS system defect made the [Vehicles] unfit for their ordinary purpose." ECF

22   No. 48, at 5. However, the Court also found that an "implied warranty claim is [also] limited in

23   duration . . . and Plaintiffs [had] not allege[d] a defect within the warranty period." *Id.* In reaching

24   this decision, the Court declined to follow the California Court of Appeal's decision in *Mexia v.*

25   *Rinker Boat Co., Inc.*, 95 Cal. Rptr. 3d 285 (Ct. App. 2009), which the Court characterized as

26   being an "outlier." ECF No. 48, at 5. The Court instead found more persuasive several federal

27

28   Case No. 14-cv-02989-LHK
     ORDER GRANTING SUMMARY JUDGMENT AND DENYING MOTION TO EXCLUDE TESTIMONY AS
     MOOT

1    district court decisions, including *Daniel v. Ford Motor Company*, 2013 WL 2474934 (E.D. Cal.

2    June 7, 2013). The Court granted Plaintiffs leave to amend their implied warranty claims because

3    "there [we]re factual allegations that the Plaintiffs could allege that could cure th[e] deficienc[ies]

4    [identified]." ECF No. 48, at 10.

5         In light of the unwieldy nature of the FAC and the first motion to dismiss, the parties

6    agreed at the February 18, 2015 case management conference to move forward only on the

7    California claims for any subsequent motions to dismiss. ECF No. 51. If any of the California

8    claims survived, the parties would continue to litigate those claims to resolution before this Court.

9    ECF No. 54 at 9. If none of the California claims survived, then the Court would confer with the

10   parties regarding how to proceed on the remaining claims, with the possibility of transferring this

11   action to a more appropriate jurisdiction. *Id.*

12        With this understanding in mind, Plaintiffs filed a second amended complaint ("SAC") on

13   March 27, 2015. The SAC asserted four causes of action under California law: (1) violation of the

14   unlawful and unfair prongs of California's Unfair Competition Law ("UCL"); (2) violation of the

15   fraud prong of the UCL; (3) violation of California's Consumer Legal Remedies Act ("CLRA");

16   and (4) common law fraudulent concealment. The SAC did not assert a claim under the Song-

17   Beverly Act or under the Magnuson-Moss Act.

18        On April 30, 2015, Ford moved to dismiss the SAC, ECF No. 58, which the Court granted

19   in part and denied in part, ECF No. 69. Specifically, the Court granted with prejudice Ford's

20   motion to dismiss Plaintiffs' UCL claims and Plaintiffs' CLRA claim for injunctive relief, holding

21   that Plaintiffs were not entitled to equitable relief because they had an adequate remedy at law. *Id.*

22   at 30. The Court also granted with prejudice Ford's motion to dismiss Ian Colburn, the son of

23   Alison Colburn, as a named Plaintiff. *Id.* at 31. Two claims—the common law fraudulent

24   concealment claim and the CLRA claim for damages—survived Ford's second round motion to

25   dismiss. *Id.* Ford answered the SAC on August 6, 2015. ECF No. 78.

26        On October 28, 2015, Ford filed a second motion to dismiss the SAC. ECF No. 84. In this

27

28   Case No. 14-cv-02989-LHK
     ORDER GRANTING SUMMARY JUDGMENT AND DENYING MOTION TO EXCLUDE TESTIMONY AS
     MOOT

United States District Court
Northern District of California

8

1   motion, Ford argued for dismissal under the prudential mootness and primary jurisdiction

2   doctrines based on Ford's safety recall of the vehicles at issue. ECF No. 105 at 8. Ford also argued

3   that Plaintiffs lacked "standing to pursue their claims as to the 2012–2014 Focus and 2013–2014

4   Fusion." *Id.* at 9. The Court denied this motion in its entirety. *Id.* at 25.

5        On February 18, 2016, the parties filed a joint case management statement in advance of

6   the February 25, 2016 case management conference. ECF No. 104. In this statement, Plaintiffs

7   stated their intent to file a "motion for leave to amend to reassert their claims for breach of

8   [implied] warranty." *Id.* at 2. According to Plaintiffs, in light of the Ninth Circuit's December 2,

9   2015 decision in *Daniel v. Ford Motor Company*, 806 F.3d 1217 (9th Cir. 2015), the Court had

10  erred in dismissing Plaintiffs' implied warranty claims on February 12, 2015. After reviewing the

11  *Daniel* decision, the Court agreed with Plaintiffs, and granted Plaintiffs leave to amend at the

12  February 25, 2016 case management conference. ECF No. 108.

13       Plaintiffs filed the TAC on March 4, 2016. The TAC includes two new claims: an implied

14  warranty claim asserted under the Song-Beverly Act, TAC ¶¶ 154–170, and an implied warranty

15  claim asserted under the Magnuson-Moss Act, *id.* ¶¶ 140–153. On March 24, 2016, Ford moved to

16  dismiss these implied warranty claims. On May 3, 2016, the Court denied Ford's motion to

17  dismiss. ECF No. 134. The Court held that under the Ninth Circuit's recent decision in *Daniel v.*

18  *Ford Motor Company*, 806 F.3d 1217 (9th Cir. 2015), Plaintiffs had stated a claim for relief under

19  the Song-Beverly Act and the Magnuson-Moss Act for breach of implied warranty. *Id.* at 16. The

20  Court also found that Plaintiffs had not waived these claims by failing to replead the claims in the

21  SAC, *id.* at 20, and that Plaintiff Colburn's claims fell within the applicable four year statute of

22  limitations because Plaintiff Colburn had sufficiently alleged tolling of the statute of limitations

23  because of fraudulent concealment, *id.* at 26.

24       On July 29, 2016, Plaintiffs filed a motion for class certification under Federal Rule of

25  Procedure ("Rule") 23. ECF No. 173. Ford filed an opposition to the motion for class certification

26  on September 19, 2016. ECF No. 194. On September 26, 2016, Ford filed a motion to exclude the

27

28  Case No. 14-cv-02989-LHK
    ORDER GRANTING SUMMARY JUDGMENT AND DENYING MOTION TO EXCLUDE TESTIMONY AS
    MOOT

*United States District Court*
*Northern District of California*

9

1  expert report of Dr. Jonathan Arnold, ECF No. 196, and a motion to exclude the expert report of

2  Dr. Marthinius van Schoor, ECF No. 197. On December 8, 2016, the Court held a hearing on

3  Plaintiffs' motion for class certification and on Ford's motions to exclude. ECF No. 219.

4         On December 22, 2016, the Court denied Plaintiffs' motion for class certification. ECF No.

5  225. The Court found that Plaintiffs had not submitted a damages model that was consistent with

6  Plaintiffs' theory of liability, as required by *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432

7  (2013). *Id.* at 37–43. The Court also found that because Ford had made certain disclosures in its

8  owner's manuals, the Court could not determine under *Mazza v. American Honda Motor*

9  *Company*, 666 F.3d 581 (9th Cir. 2012), on a classwide basis whether class members relied on

10  Ford's alleged failure to disclose the alleged defect. ECF No. 225, at 29–32. Thus, the Court

11  determined that common issues did not predominate and that class certification was inappropriate

12  under Federal Rule of Civil Procedure ("Rule") 23(b)(3). The Court found that certifying an

13  injunctive class under Rule 23(b)(2) was inappropriate because Plaintiffs had an adequate remedy

14  at law. *Id.* at 44–48.

15         In the December 22, 2016 order, the Court also granted Ford's motion to exclude the

16  testimony of Dr. Arnold and denied Ford's motion to exclude the testimony of Dr. van Schoor. *Id.*

17  at 48–50. The Court found that Dr. Arnold's damages report did not reliably measure damages

18  attributable to Plaintiffs' theory of liability. ECF No. 225, at 49. Specifically, Plaintiffs' theory of

19  damages was that Plaintiffs had overpaid for their vehicles because if Plaintiffs had known that the

20  EPAS systems in the vehicles had defects, Plaintiffs would not have paid full price for the EPAS

21  systems or the vehicles. *Id.* at 38. However, Dr. Arnold made no attempt to measure what a

22  reasonable consumer would have been willing to pay for a defective EPAS system. *Id.* at 39.

23  Instead, Dr. Arnold assumed, without any justification, that the EPAS systems had no value at all.

24  *Id.* Therefore, the Court held that Dr. Arnold's report did not reliably apply the "expected utility"

25  theory that Dr. Arnold advocated, and thus the Court excluded Dr. Arnold's report under *Daubert*

26  and Federal Rule of Evidence 702. *Id.* at 49. However, the Court found that the report of Dr. van

27

28

10

Case No. 14-cv-02989-LHK
ORDER GRANTING SUMMARY JUDGMENT AND DENYING MOTION TO EXCLUDE TESTIMONY AS
MOOT

United States District Court
Northern District of California

1    Schoor was reliable and aided the Court in understanding Plaintiffs' theory of defect, and therefore

2    the report met the standard of *Daubert* and Rule 702. *Id.* at 49–50.

3          Plaintiffs never sought review of the Court's class certification decision under Federal

4    Rule of Procedure 23(f). Instead, on January 1, 2017, Plaintiffs filed a Motion for Leave to File

5    Motion for Reconsideration of Class Certification Order, or in the Alternative, for Leave to File a

6    Renewed Motion for Class Certification. ECF No. 226. On January 16, 2017, the Court denied the

7    motion for leave to file a motion for reconsideration because the motion repeated Plaintiffs'

8    arguments in their motion for class certification. ECF No. 230.

9          In the alternative, Plaintiffs' motion sought leave to file a renewed motion for class

10   certification with an amended damages report. ECF No. 226, at 4–6. However, as the Court

11   explained in denying this motion, the Court's denial of class certification was based on more than

12   the deficient damages model. ECF No. 230, at 3. The Court also denied class certification on the

13   ground that individual issues of reliance would predominate because the class members were not

14   exposed to uniform representations. *Id.* Thus, in the January 16, 2017 order, the Court denied

15   Plaintiffs' request in the alternative to file an amended motion for class certification because "even

16   if Plaintiffs filed an amended damages report, a renewed motion for class certification would be

17   futile." *Id.*

18         After the Court denied Plaintiffs' motion for leave to file either a motion for

19   reconsideration or a renewed motion for class certification, the Court held a case management

20   conference on January 18, 2017. ECF No. 232. On the morning before the case management

21   conference, Plaintiffs filed a notice of voluntary dismissal of all of the Plaintiffs outside

22   California. ECF No. 231. At the case management conference, Plaintiffs offered to stipulate to

23   entry of summary judgment in favor of Ford on the grounds that Plaintiffs had no admissible

24   evidence of damages. Specifically, Plaintiffs argued that when the Court denied Plaintiffs' motion

25   to submit a renewed motion for class certification with an amended damages model, this ruling

26   "effectively result[ed] in entry of judgment on Ford's motion for summary judgment on grounds

27

28   Case No. 14-cv-02989-LHK
     ORDER GRANTING SUMMARY JUDGMENT AND DENYING MOTION TO EXCLUDE TESTIMONY AS
     MOOT

11

United States District Court
Northern District of California

1    that plaintiffs cannot prove damages, thereby obviating the need for any further briefing on the

2    motion for summary judgment or the motion to exclude Dr. Allise Wachs." ECF No. 229 at 4.

3              As discussed further below, this statement is inaccurate. The Court's ruling on the motion

4    for leave did not render Plaintiffs unable to oppose summary judgment. Plaintiffs were free to

5    pursue their individual claims. The Court denied Plaintiffs leave to file a renewed motion for class

6    certification, but Plaintiffs never requested leave to introduce any further evidence of damages at

7    the summary judgment stage. Thus, it was Plaintiffs' own choice to concede the issue of damages

8    and to offer to stipulate to summary judgment on that basis. Plaintiffs' choice forfeits relief on

9    Plaintiffs' individual claims.

10             If Plaintiffs had requested leave to present a new expert damages report on Plaintiffs'

11   individual claims, or if Plaintiffs had cited any non-expert evidence demonstrating damages on

12   Plaintiffs' individual claims, Plaintiffs would likely have been able to survive summary judgment.

13   Instead, Plaintiffs offered to stipulate to summary judgment on the basis of Plaintiffs' inability to

14   prove damages. Ford declined to accept such a stipulation unless Plaintiffs were willing to

15   stipulate to all the grounds on which Ford moved for summary judgment. Plaintiffs did not agree

16   to this broader stipulation.

17             Ford filed the instant motion for summary judgment on January 9, 2017. ECF No. 228.

18   After the parties failed to reach a stipulation regarding the motion for summary judgment,

19   Plaintiffs filed an opposition to the motion on January 30, 2017. ECF No. 235. Ford replied on

20   February 9, 2017. ECF No. 240. On January 9, 2017, Ford also filed the instant motion to exclude

21   the testimony of Dr. Allise Wachs. ECF No. 227. Plaintiffs filed an opposition to the motion on

22   January 30, 2017. ECF No. 234. Ford filed a reply on February 9, 2017. ECF No. 239.

23   **II.    LEGAL STANDARD**

24             Summary judgment is appropriate if, viewing the evidence and drawing all reasonable

25   inferences in the light most favorable to the nonmoving party, "there is no genuine dispute as to

26   any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

27

28   Case No. 14-cv-02989-LHK
     ORDER GRANTING SUMMARY JUDGMENT AND DENYING MOTION TO EXCLUDE TESTIMONY AS
     MOOT

United States District Court
Northern District of California

1    *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). At the summary judgment stage, the Court

2    "does not assess credibility or weigh the evidence, but simply determines whether there is a

3    genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006). A fact is "material" if

4    it "might affect the outcome of the suit under the governing law," and a dispute as to a material

5    fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of

6    the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence

7    is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at

8    249–50 (citations omitted).

9         Additionally, "the plain language of Rule 56(c) mandates the entry of summary judgment,

10    after adequate time for discovery and upon motion, against a party who fails to make a showing

11    sufficient to establish the existence of an element essential to that party's case, and on which that

12    party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

13    Thus, if a party bears the burden of proof on an essential element of its claim and makes no

14    showing to establish that element, summary judgment is warranted even if there are genuine issues

15    of fact regarding other elements of the party's claim.

16         The moving party bears the initial burden of identifying those portions of the pleadings,

17    discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*

18    *Corp.*, 477 U.S. at 323. Where the party opposing summary judgment will have the burden of

19    proof at trial, the party moving for summary judgment need only point out "that there is an

20    absence of evidence to support the nonmoving party's case." *Id.* at 325; *accord Soremekun v.*

21    *Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the moving party meets its initial

22    burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56,

23    "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

24    **III.    DISCUSSION**

25         Ford offers several arguments in support of its motion for summary judgment. First, Ford

26    argues that Plaintiffs have no admissible evidence to prove damages for any of their claims.

27                                                            13

28    Case No. 14-cv-02989-LHK
      ORDER GRANTING SUMMARY JUDGMENT AND DENYING MOTION TO EXCLUDE TESTIMONY AS
      MOOT

*United States District Court*
*Northern District of California*

1
2
3
4
5
6
7

Second, Ford argues that all three individual Plaintiffs' claims are at least partially moot because their EPAS systems were replaced. Third, Ford argues that Plaintiffs have failed to produce evidence showing the alleged defect has caused or will cause their EPAS systems to fail. Fourth, Ford argues that Plaintiffs have not produced any evidence that Ford breached a duty to disclose a material fact for the purposes of Plaintiffs' fraudulent concealment or CLRA claims. The Court finds that Ford's first argument is sufficient to warrant granting Ford's motion for summary judgment in its entirety, and therefore the Court need not consider Ford's remaining arguments.

8

### A.  Plaintiffs' Concessions

9
10
11
12

Plaintiffs' FAC was 108 pages long and asserted 51 causes of action, including 49 claims specific to the laws of six states and two nationwide claims based on the laws of 44 additional states. ECF No. 15. Defendants filed a motion to dismiss all 51 causes of action, which the Court granted with leave to amend. ECF No. 46.

13
14
15
16
17
18

In light of the unwieldy nature of the FAC and the first motion to dismiss, the parties stipulated that the SAC could include both California and non-California claims, but that subsequent motions to dismiss would address only the California claims. ECF No. 51, at 1. The SAC was filed on March 27, 2015. ECF No. 55. The TAC was filed on March 4, 2016. ECF No. 114. After three more rounds of motions to dismiss, Plaintiffs moved for class certification on their California and federal claims on July 29, 2016. ECF No. 172.

19
20
21
22

As discussed above, the Court denied Plaintiffs' motion for class certification in part because Plaintiffs failed to offer a damages model that was consistent with Plaintiffs' theory of liability. ECF No. 225, at 39. Plaintiffs offered two theories of damages: benefit-of-the-bargain damages and out-of-pocket damages.

23
24
25
26

The benefit-of-the-bargain damages theory of Plaintiffs' expert, Dr. Jonathan Arnold, was that Plaintiffs had overpaid for their vehicles because if Plaintiffs had known that the EPAS systems in the vehicles had defects, Plaintiffs would not have paid full price for the EPAS systems or the vehicles. *Id.* at 38. However, Dr. Arnold made no attempt to measure what a reasonable

27
28

United States District Court
Northern District of California

14

Case No. 14-cv-02989-LHK
ORDER GRANTING SUMMARY JUDGMENT AND DENYING MOTION TO EXCLUDE TESTIMONY AS MOOT

1     consumer would have been willing to pay for an EPAS system if the consumer knew of the

2     alleged defects, which is called an expected utility theory. *Id.* at 39. Instead, Dr. Arnold assumed,

3     without justification or even explicitly stating the assumption, that the EPAS systems had no value

4     at all, and that a reasonable consumer would have paid $0 for the EPAS system. *Id.* Therefore, the

5     Court held that Dr. Arnold's report did not reliably apply the expected utility theory that Dr.

6     Arnold advocated, and thus the Court excluded Dr. Arnold's report under *Daubert* and Federal

7     Rule of Evidence 702. *Id.* at 49.

8          Additionally, the Court found that similar concerns made class certification inappropriate

9     for Plaintiffs' alleged out-of-pocket damages. ECF No. 225, at 42. Specifically, Plaintiffs

10    requested full compensation for all repairs or replacements of the EPAS systems in class

11    members' vehicles. However, this theory of liability assumed that "the replacement EPAS systems

12    or the repairs were completely valueless," and Plaintiffs provided "no support, either in Dr.

13    Arnold's report or elsewhere, for the unstated assumption that no class member received any

14    benefit from the replacements or repairs." *Id.* For example, Plaintiffs did not take account of the

15    fact that some class members might have repaired or replaced their EPAS systems for reasons

16    totally unrelated to the alleged defect – such as damage from a collision – for which Ford could

17    not be held responsible. Therefore, the Court found that Plaintiffs had failed to offer a damages

18    model consistent with their theory of liability for out-of-pocket damages, and the Court denied

19    class certification partly on this basis. *Id.* at 41–42.

20         On January 1, 2017, Plaintiffs filed a Motion for Leave to File Motion for Reconsideration

21    of Class Certification Order, or in the Alternative, for Leave to File a Renewed Motion for Class

22    Certification ("motion for leave"). ECF No. 226. The motion for leave repeated Plaintiffs'

23    arguments for class certification. For example, the motion for leave argued that the Court had

24    overlooked the fact that Dr. Arnold adequately justified the conclusion that a reasonable consumer

25    would value the EPAS systems at $0. *Id.* at 2–3. In ruling on the motion for leave, the Court

26    reiterated that Dr. Arnold had never even stated such an assumption, let alone justified the

27

28    Case No. 14-cv-02989-LHK
      ORDER GRANTING SUMMARY JUDGMENT AND DENYING MOTION TO EXCLUDE TESTIMONY AS
      MOOT

United States District Court
Northern District of California

15

assumption. Thus, the Court denied the motion for leave to file a motion for reconsideration on January 16, 2017. ECF No. 230.

In the alternative, Plaintiffs' motion for leave sought leave to file a renewed motion for class certification with an amended damages report. ECF No. 226, at 4–6. However, as the Court explained in denying this motion, the Court's denial of class certification was based on more than the deficient damages model alone. ECF No. 230, at 3. The Court also denied class certification on the ground that individual issues of reliance would predominate because the class members were not exposed to uniform representations. *Id.* Specifically, in denying class certification, the Court found that under *Mazza v. American Honda Motor Company*, 666 F.3d 581 (9th Cir. 2012), the Court could not determine on a classwide basis whether class members relied on the alleged omissions. ECF No. 225, at 30. A warning about sudden EPAS system failure was present in the owner's manuals for all class vehicles, and it would require extensive individualized inquiries to know which class members had the opportunity to read these portions of the owner's manuals before purchasing their vehicles. *Id.* As in *Mazza*, a class member who was exposed to this warning would know that limitations existed in the EPAS systems; thus, the information to which class members were exposed was not uniform. *Id.* Therefore, the Court found that it could not determine reliance on a classwide basis. *Id.* Thus, in the January 16, 2017 order, the Court denied Plaintiffs' request in the alternative to file an amended motion for class certification because "even if Plaintiffs filed an amended damages report, a renewed motion for class certification would be futile." *Id.*

After the Court denied Plaintiffs' motion for leave to file a motion for reconsideration or a renewed motion for class certification, the Court held a case management conference on January 18, 2017. ECF No. 232. At the case management conference, Plaintiffs offered to stipulate to entry of summary judgment on the grounds that Plaintiffs had no admissible evidence of damages. Specifically, Plaintiffs argued that when the Court denied Plaintiffs' motion to submit a renewed motion for class certification with an amended damages model, this ruling "effectively result[ed]

Case No. 14-cv-02989-LHK
ORDER GRANTING SUMMARY JUDGMENT AND DENYING MOTION TO EXCLUDE TESTIMONY AS MOOT

1    in entry of judgment on Ford's motion for summary judgment on grounds that plaintiffs cannot

2    prove damages, thereby obviating the need for any further briefing on the motion for summary

3    judgment or the motion to exclude Dr. Allise Wachs." ECF No. 229 at 4. As discussed above,

4    Ford declined to accept a limited stipulation and therefore the parties briefed the motion for

5    summary judgment.

6         Plaintiffs are incorrect when they claim that the Court "effectively entered judgment on

7    Ford's motion for summary judgment" by denying Plaintiffs' motion for leave to file a renewed

8    motion for class certification. Opp. at 1. Plaintiffs moved only to submit an amended damages

9    report as part of a renewed motion for class certification. ECF No. 226. As discussed above, the

10   Court denied that motion because class certification would have been inappropriate even with an

11   amended damages report. ECF No. 230, at 2. However, Plaintiffs never moved to submit an

12   amended damages report to support the individual claims of Plaintiffs Philips, Goodman, and

13   Colburn. Additionally, Plaintiffs did not cite any non-expert evidence demonstrating damages for

14   the individual Plaintiffs. Plaintiffs chose to forfeit any relief on their individual claims. Indeed, on

15   January 18, 2017, Plaintiffs also voluntarily dismissed the claims of all individual non-California

16   Plaintiffs. ECF No. 231.

17        In short, it is clear that Plaintiffs are most concerned with class claims in their TAC. After

18   the motion for class certification was denied, Plaintiffs made no attempt to defend the claims of

19   any of the individual Plaintiffs. If Plaintiffs had submitted any evidence of damages, either by

20   requesting leave to file an amended damages report or by citing non-expert evidence, the Court

21   likely would have denied Ford's motion for summary judgment. Plaintiffs evidently would prefer

22   to appeal the Court's grant of summary judgment rather than either file a motion for Rule 23(f)

23   review of the class certification order or litigate Plaintiffs' individual claims. The Court's order

24   denying the motion for leave to file a renewed class certification motion did not compel Plaintiffs

25   to concede the issue of damages. It was Plaintiffs' decision to concede the issue of damages on

26   summary judgment and to forfeit their individual claims.

27

28   Case No. 14-cv-02989-LHK
     ORDER GRANTING SUMMARY JUDGMENT AND DENYING MOTION TO EXCLUDE TESTIMONY AS
     MOOT

United States District Court
Northern District of California

17

### B. Plaintiffs' Concession on the Issue of Damages Warrants Granting Ford's Motion for Summary Judgment

Ford argues that summary judgment is warranted because Plaintiffs have no admissible evidence to prove damages. Damages are an essential element of each of Plaintiffs' claims. TAC ¶¶ 140–96. [2] Plaintiffs will have the burden of proof at trial on the issue of damages. *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 808 (9th Cir. 1988) (holding that plaintiffs bore the burden to prove damages for breach of contract and tortious interference claims). Under United States Supreme Court precedent, a district court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Therefore, in order to meet the initial burden in moving for summary judgment, Ford need only point out "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *accord Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If Ford meets this initial burden, Plaintiffs must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

Plaintiffs have conceded that they have no admissible evidence to prove damages. *See* Opp. at 1. Additionally, because damages are an essential element of each of Plaintiffs' claims, Plaintiffs also concede that the damages issue alone is sufficient to justify granting the motion for summary judgment in its entirety. *See id.* (conceding that in light of the damages issue, "any additional briefing on the motion for summary judgment [is] futile."). Thus, Plaintiffs have not set forth any "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. Therefore, if Ford has met its initial burden of pointing out "that there is an absence of evidence to

---

[2] As both sides appear to agree, there are no claims for injunctive relief at issue in the instant motion for summary judgment. On February 12, 2016, the Court dismissed Plaintiffs' claims for injunctive relief because Plaintiffs had an "adequate remedy at law." ECF No. 48, at 10. The Court reiterated this ruling when the Court denied Plaintiffs' motion for class certification. ECF No. 225, at 45.

Case No. 14-cv-02989-LHK
ORDER GRANTING SUMMARY JUDGMENT AND DENYING MOTION TO EXCLUDE TESTIMONY AS MOOT

United States District Court
Northern District of California

1   support the nonmoving party's case," *Celotex*, 477 U.S. at 325, then the Court will grant Ford's

2   motion for summary judgment in its entirety.

3          In order to meet its initial burden, Ford first argues that Plaintiffs have failed to produce

4   any admissible evidence of benefit-of-the-bargain damages sustained at the time Plaintiffs

5   purchased their vehicles. As explained in the order denying class certification, Plaintiffs' theory of

6   benefit-of-the-bargain damages is that "because Ford failed to disclose known defects in the

7   vehicles' EPAS system to Class members, which put their safety at risk, Ford unlawfully forced

8   Class members to accept a risk they did not bargain for." ECF No. 224, at 38 (quoting Report of

9   Dr. Jonathan Arnold, Ex. 43 to Mot. for Class Certification, at 297). Consistent with the Court's

10  ruling on the motion for class certification, Ford points that Plaintiffs have produced no admissible

11  evidence to quantify Plaintiffs' damages under such a theory. The Court excluded Dr. Arnold's

12  damages report because the report offered "no evidence that could establish what portion of the

13  total amount they paid was supposedly due to deception—which is the material fact that matters

14  with regard to damages." Mot. at 9. Furthermore, since the exclusion of Dr. Arnold's report,

15  Plaintiffs have not pointed to any other evidence – from expert witnesses, lay witnesses, or

16  documents – that could measure the individual Plaintiffs' benefit-of-the-bargain damages.

17         This is sufficient to meet Ford's initial burden to point to a lack of evidence regarding

18  Plaintiffs' damages at the time of purchase. *See McGlinchy*, 845 F.2d at 808 (affirming a district

19  court's grant of summary judgment because the plaintiffs "did not make a showing sufficient to

20  establish the amount, causation, or fact of damages"). As discussed above, Plaintiffs concede the

21  issue of damages, and therefore Plaintiffs have failed to meet their burden of demonstrating

22  "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

23         Ford also argues that Plaintiffs have failed to demonstrate that "the $990 [Plaintiff

24  Colburn] paid to replace the EPAS system in her son's vehicle" qualified as "'out-of-pocket'

25  damages." Mot. at 9. As with alleged damages at the time of purchase, Ford argues that "Plaintiffs

26  have never offered any . . . way they might establish what proportion of any out-of-pocket repair

27

28  Case No. 14-cv-02989-LHK
    ORDER GRANTING SUMMARY JUDGMENT AND DENYING MOTION TO EXCLUDE TESTIMONY AS
    MOOT

United States District Court
Northern District of California

19

1    cost could be attributed to some wrongful act." *Id.* at 10.

2           This is sufficient to meet Ford's initial burden to point to a lack of evidence regarding

3    Plaintiffs' out-of-pocket damages. Here again, however, Plaintiffs make no attempt to argue that

4    Colburn's $990 out-of-pocket payment was the proper measure of damages caused by Ford's

5    alleged misrepresentations. Instead, Plaintiffs concede that they cannot raise a triable issue of fact

6    on the question of damages. Therefore, Plaintiffs have failed to meet their burden to point to

7    "specific facts showing that there is a genuine issue for trial" regarding Plaintiffs' out-of-pocket

8    damages. *Anderson*, 477 U.S. at 250.

9           The Ninth Circuit faced somewhat similar circumstances in *McGlinchy v. Shell Chem. Co.*,

10   845 F.2d 802, 808 (9th Cir. 1988). In *McGlinchy*, the plaintiff asserted claims for breach of

11   contract and tortious interference. *Id.* at 806. The district court excluded plaintiffs' expert damages

12   reports and then granted summary judgment because plaintiffs had not produced any admissible

13   evidence of damages. The Ninth Circuit affirmed because "[i]n the absence of another study

14   besides those the district court had properly excluded, . . . [the plaintiffs] could make no showing

15   about the amount of damages." *Id.* at 808. Thus, by pointing to this absence of expert testimony,

16   defendants had met their initial burden and "the burden was on [the plaintiffs] to come forward

17   with specific facts showing there was a genuine issue for trial." *Id.* at 809. The plaintiffs failed to

18   meet this burden because "they produced no evidence at all to contradict [the] defendants'

19   showing." *Id.*

20          The same is true in the instant case. The Court has excluded Plaintiffs' only expert report

21   regarding damages. In Ford's motion for summary judgment, Ford meets its initial burden by

22   pointing to the lack of any evidence for damages. In response, Plaintiffs offer no evidence of

23   damages. Indeed, Plaintiffs concede that they have no admissible evidence of damages and

24   concede that summary judgment is therefore proper. Thus, as in *McGlinchy*, in the instant case

25   Plaintiffs have not met their burden to demonstrate a triable question of fact on the issue of

26   damages.

27                                                       20

28   Case No. 14-cv-02989-LHK
     ORDER GRANTING SUMMARY JUDGMENT AND DENYING MOTION TO EXCLUDE TESTIMONY AS
     MOOT

<div style="text-align: left; writing-mode: vertical-rl;">United States District Court
Northern District of California</div>

1    As the United States Supreme court held in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

2  (1986), "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate

3  time for discovery and upon motion, against a party who fails to make a showing sufficient to

4  establish the existence of an element essential to that party's case, and on which that party will

5  bear the burden of proof at trial." In the instant case, Plaintiffs bear the burden of proof at trial to

6  prove damages, which are an essential element of each of Plaintiffs' claims. Plaintiffs concede that

7  they have not met this burden, and therefore summary judgment is appropriate.

8    Because damages are an essential element of each of Plaintiffs' claims, the finding that

9  Plaintiffs have not presented a triable question of fact on the issue of damages is sufficient to

10  justify granting Ford's motion for summary judgment in full. Therefore, the Court need not

11  consider Ford's additional arguments for summary judgment. Additionally, because summary

12  judgment is warranted based on the damages issue alone, the Court need not decide Ford's motion

13  to exclude the testimony of Dr. Allise Wachs. The Court finds, and Plaintiffs concede, that

14  summary judgment is proper even without considering Dr. Wachs's expert report, which does not

15  relate to the issue of damages. ECF No. 227. Therefore, the Court DENIES Ford's motion to

16  exclude the testimony of Dr. Wachs as moot.

17  **IV.    CONCLUSION**

18    For the foregoing reasons, the Court GRANTS Ford's motion for summary judgment. ECF

19  No. 228. The Court DENIES Ford's motion to exclude the report and testimony of Dr. Allise

20  Wachs as moot. ECF No. 227.

21  **IT IS SO ORDERED.**

22

23  Dated: February 16, 2017

24  _Lucy H. Koh_
    _____

25  LUCY H. KOH
    United States District Judge

26

27                                    21

28  Case No. 14-cv-02989-LHK
    ORDER GRANTING SUMMARY JUDGMENT AND DENYING MOTION TO EXCLUDE TESTIMONY AS
    MOOT